1 | COURTNEY L. HYLTON (SBN 214929)
chylton@lynberg.com
2 | PANCY LIN (SBN 239684)
plin@lynberg.com
3 | **LYNBERG & WATKINS**
A Professional Corporation
4 | 1100 W. Town & Country Road, Suite #1450
Orange, California 92868
5 | (714) 937-1010 Telephone
(714) 937-1003 Facsimile
6 |
7 | Attorneys for Defendants, PLACENTIA-YORBA LINDA UNIFIED SCHOOL
DISTRICT; YORBA LINDA HIGH SCHOOL; JIM ELSASSER; RICHARD
8 | McALINDIN; LINDA ADAMSON; RICHARD DINH; BIRD POTTER; CARRIE
BUCK; KARIN FREEMAN; MARILYN ANDERSON; DANA GIGLIOTTI;
9 | BRYAN BLOOM; JACLYN CHAVEZ; JOHN DOMEN; MADISON
WALTEMEYER; AMBER FERRIS
10 |

11 | **UNITED STATES DISTRICT COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA**

13 |

| | |
|---|---|
| 14 CHILDREN'S HEALTH DEFENSE-CALIFORNIA CHAPTER, a California 501(c)(3) non-profit corporation, on its own and on behalf of its members CHRIS PALICKE, an individual on behalf of himself and as Guardian Ad Litem for his minor child, AIDAN PALICKE, | Case No,: |
| | **NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441(b) (FEDERAL QUESTION JURISDICTION)** |
| Plaintiff, | [Removed from Orange County Superior Court, Case No. 30-2022-01253908-CU-MC-CJC] |
| vs. | [Federal Question Jurisdiction: 28 U.S.C. §§ 1331; Removal: 28 U.S.C. §§ 1441, 1446; Supplemental Jurisdiction: 28 U.S.C. § 1367] |
| PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, a local educational agency in the County of Orange, YORBA LINDA HIGH SCHOOL, a public school within the Placentia-Yorba Linda Unified School District, JIM ELSASSER, in his official capacity as Superintendent of Placentia-Yorba Linda Unified School District, RICHARD McALINDIN, in his official capacity as Assistant Superintendent of Placentia-Yorba Linda Unified School District, LINDA ADAMSON, in her | [Civil Case Cover Sheet and Certificate of Interested Parties Filed Concurrently Herewith] |
| | *Trial Date:     Not set* |
| | *Complaint filed: April 7, 2022* |

1

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441(b) (FEDERAL QUESTION JURISDICTION)**

official capacity as Assistant Superintendent of Placentia-Yorba Linda Unified School District, RICHARD DINH, in his official capacity as Principal of Yorba Linda High School, BIRD POTTER, in her official capacity as Assistant Principal of Yorba Linda High School, CARRIE BUCK, KARIN FREEMAN and MARILYN ANDERSON, each individual in her official capacity as a member of the School Board of the Placentia Yorba Linda Unified School District, DANA GIGLIOTTI, an individual, BRYAN BLOOM, an individual, JACLYN CHAVEZ, an individual, JOHN DOMEN, an individual, MADISON WALTEMEYER, an individual, AMBER FERRIS, an individual, AND DOES 1-50, inclusive,

Defendants.

**TO THE CLERK OF THE ABOVE-REFERENCED COURT:**

**PLEASE TAKE NOTICE** that based on the allegations in Plaintiffs CHILDREN'S HEALTH DEFENSE-CALIFORNIA CHAPTER'S, CHRIS PALICKE'S, AIDAN PALICKE'S ("Plaintiffs") Complaint for Declaratory and Injunctive Relief and Damages, Defendants PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT; YORBA LINDA HIGH SCHOOL; JIM ELSASSER; RICHARD McALINDIN; LINDA ADAMSON; RICHARD DINH; BIRD POTTER; CARRIE BUCK; KARIN FREEMAN; MARILYN ANDERSON; DANA GIGLIOTTI; BRYAN BLOOM; JACLYN CHAVEZ; JOHN DOMEN; MADISON WALTEMEYER; AMBER FERRIS ("District Defendants" or "Defendants") hereby remove the above-entitled action from the Superior Court of the State of California for the County of Orange to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446. The District Defendants remove this civil action based on the following:

2

1.     On or about April 7, 2022, Plaintiffs commenced this action in the Superior Court of the State of California for the County of Orange, Case No. 30-2022-01253908-CU-MC-CJC, entitled <u>Children's Health Defense-California Chapter, et al. v. Placentia-Yorba Linda Unified School District, et al</u>. A copy of the file-stamped version of the Complaint for Declaratory and Injunctive Relief and Damages filed by Plaintiffs on April 7, 2022, is attached hereto as Exhibit "A." On or about April 28, 2022, the Superior Court issued and filed a Summons on Plaintiffs' Complaint. The Summons is attached hereto as Exhibit "C."

2.     Plaintiffs served the District Defendants on April 29, 2022, by delivering copies of the Summons directed to each of the District Defendants, along with the Complaint, at the Placentia-Yorba Linda Unified School District office.

3.     Plaintiffs' Complaint alleges the following causes of action: 1) Violation of <u>Ed. Code</u> sections 48900 and 48910 (unlawful suspension/expulsion); 2) Violations of <u>Ed. Code</u> sections 48213 and 49451 (fraudulent expulsion); 3) Violations of <u>Ed. Code</u> sections 51746, 51747, 51749.5, 51749.6 (coercion into independent study); 4) Violation of Cal. Constitution – Right to Privacy; 5) Violation of Federal EUA Law; 6) Violation of First Amendment; 7) Violation of Due Process; 8) Violation of <u>Ed. Code</u> sections 51746, 51747, 51749.5, 51749.6 et. al. (Damages); 9) Negligence; 10) Intentional Infliction of Emotional Distress; 11) Negligent Infliction of Emotional Distress; 12) Violation of Cal. Constitution – Right to Education; 13) Violation of Equal Protection; 14) Violation of <u>Cal. Civ. Code</u> 52.1 (Bane Act). (<u>See generally</u>, Complaint, Exhibit "A.")

4.     The first date upon which the District Defendants received service of process was on April 29, 2022, as discussed in Paragraph 2, above. Removal is timely under 28 <u>U.S.C</u>. § 1446(b) because this Notice of Removal was filed within 30 days of April 29, 2022.

5.     This action is a civil action for which this Court has original jurisdiction under 28 <u>U.S.C</u>. § 1331 and is one which may be removed to this Court

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441(b) (FEDERAL QUESTION JURISDICTION)**

by the District Defendants pursuant to the provisions of 28 U.S.C. § 1441 in that it arises under the United States Constitution and federal statutes.  Specifically, Plaintiffs' Complaint seeks relief pursuant to 21 U.S.C. § 360bbb-3 and 42 U.S.C. § 1983 for alleged violations of federal laws and rights secured by the United States Constitution.

6.      Plaintiffs' Fifth Cause of Action is for "Violation of 21 U.S. Code § 360bbb-3" seeking "Declaratory and Injunctive Relief" by "All Plaintiffs against All Defendants."  Specifically, Plaintiffs allege "Under section 564 of the Federal Food, Drug, and Cosmetic Act ("FDCA"), when the Secretary of HHS declares that an emergency use authorization is appropriate, FDA may authorize unapproved medical products or unapproved uses of approved medical products to be used in an emergency to diagnose, treat, or prevent serious or life-threatening diseases or conditions caused by [chemical, biological, radiological, and nuclear] threat agents when certain criteria are met, including there are no adequate, approved, and available alternatives."  (See, Complaint, ¶ 168, Exhibit "A.")  Plaintiffs further allege "Defendants violated 21 U.S. Code § 360bbb–3(e)(1)(A)(ii) (III) by failing to provide the required option to refuse the wearing of masks or certain types of masks and instead enforcing their Mask Policy."  (See, Complaint, ¶ 171, Exhibit "A.") Finally, Plaintiffs' Fifth Cause of Action seeks a judicial declaration that the PYLUSD Mask Policy is a violation of "federal EUA law."  (See, Complaint, ¶ 176, Exhibit "A.")

7.      Also, Plaintiffs assert their Sixth and Seventh Causes of Action against Defendants pursuant to 42 U.S.C. § 1983 for "Violation of the First Amendment – Speech and Associational Rights" and "Violation of the Right to Refuse Unwanted Medical Treatments – Fourteenth Amendment – Substantive Due Process," respectively.  In this regard, Plaintiffs allege "a justiciable controversy exists under the Declaratory Judgment Act, 28 U.S.C. §2201 as to whether Defendants are acting, under color of state law, or have assumed the power, to authorize and

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441(b) (FEDERAL QUESTION JURISDICTION)

facilitate mask mandates and other preventative and restrictive measures imposed on schoolchildren, burdening, restricting and limiting rights of speech, communication, association and privacy protected by the First, Fifth and Fourteenth Amendments to the United States Constitution, giving rise to a right of declaratory and injunctive relief pursuant to 28 U.S.C. §1983, et seq." (Complaint, ¶ 184, Exhibit "A.")

8.      In their Seventh Cause of Action, Plaintiffs further allege "Plaintiffs, including Plaintiff Chris Palicke on behalf of himself and his son Aidan, have a protected Fourteenth Amendment right to life and health, secured by the Due Process Clause of the United States Constitution, which includes the right to refuse non-consensual administration of any objectionable medical product, and/or to be free from the forced administration of medical procedures and devices that Plaintiff Chris Palicke reasonably believes may cause his son harm." (Complaint, ¶ 210, Exhibit "A.")  "As well, or in the alternative, Plaintiffs have protected liberty rights against infringement of liberty interests deemed "fundamental" in nature, which the Defendants' Mask Policy unconstitutionally infringed upon.  These fundamental rights include, but are not limited to: the fundamental right to refuse medical interventions, even those that save one's life, the fundamental right of fit parents to make medical decisions for their children rather than the state or a third party, the fundamental right to a medical exemption from medical devices that a licensed physician has certified may place a person at risk of harm, the fundamental right to refuse medical interventions that are experimental in nature, and the fundamental right to make medical decisions in accordance with one's chosen physician absent state or third-party interference.  As well, Plaintiffs have protected liberty interests, secured by the Due Process Clause of the United States Constitution, international protocols and treaties adopted by and entered into by the United States, and by the laws and regulations of the United States, to informed consent." (Complaint, ¶¶ 211-213, Exhibit "A.")  Plaintiffs conclude, "Plaintiffs respectfully request that the Court, pursuant to 42 U.S.C. § 1983 and other applicable law, enter a declaratory

1  judgment that Defendants' Mask Policy violates Plaintiffs' fundamental rights under

2  the substantive due process clause, issue an order permanently enjoining

3  enforcement of the Mask Policy."  (Complaint, ¶ 229, Exhibit "A.")

4      9.      Plaintiffs' First, Second, Third, Fourth, Eighth, Ninth, Tenth, Eleventh,

5  Twelfth, Thirteenth, and Fourteenth Causes of Action seek relief pursuant to

6  California law.  (See generally, Complaint, Exhibit "A.")  All of these causes of

7  action are removable under the Court's supplemental jurisdiction pursuant to 28

8  U.S.C. § 1367.  See, Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995) ("Pendent

9  jurisdiction over state claims exists when the federal claim is sufficiently substantial

10  to confer federal jurisdiction, and there is 'a common nucleus of operative fact

11  between the state and federal claims….  The decision to retain jurisdiction over state

12  law claims is within the district court's discretion, weighing factors such as

13  economy, convenience, fairness, and comity.") (internal citations omitted).

14      10.     All served Defendants join in and consent to removal.  See, 28 U.S.C. §

15  1446(b)(2)(A).

16      11.     Although the entire action is removable in the circumstances here

17  involved, pursuant to 28 U.S.C. § 1441(c)(2), the Court may sever the claims not

18  within the original or supplemental jurisdiction of the district court (under 28 U.S.C.

19  § 1441(c)(1)), and remand the severed claims to the State Court from which removal

20  was sought and obtained.

21      12.     Removal to this Court is proper under 28 U.S.C. § 1441 because the

22  Complaint was filed in the Superior Court of the State of California for the County

23  of Orange, and this U.S. District Court for the Central District of California is the

24  U.S. District Court for the district and division in which this action is pending.

25      13.     The jurisdictional allegations of this Notice were true at the time the

26  state court action was commenced against the District Defendants and remain true as

27  of the date of filing of this Notice of Removal.

28      14.     A copy of this Notice of Removal will be filed with the Superior Court

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441(b) (FEDERAL QUESTION JURISDICTION)**

of the State of California for the County of Orange and served upon all adverse parties as required by 28 U.S.C. § 1446(d), and an appropriate notice of compliance with 28 U.S.C. Section 1446(d) also shall be served and filed in the above-entitled Court.

15. By virtue of this Notice of Removal, the District Defendants do not waive their rights to assert any claims, defenses, or other motions permitted under the Federal Rules of Civil Procedure. Further, the District Defendants reserve the right to submit additional evidence and assert supplemental grounds in support of removal as appropriate in future circumstances.

16. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other papers or exhibits of every kind filed and/or served on the District Defendants, or otherwise available on the docket in the state court action are attached here, as follows:

- Exhibit "A" – Complaint filed April 7, 2022 (ROA 2);
- Exhibit "B" – Civil Case Cover Sheet filed April 7, 2022 (ROA 3);
- Exhibit "C" – Summon issued and filed April 28, 2022 (ROA 10);
- Exhibit "D" – Application and Order for Appointment of Guardian Ad Litem filed by Palicke, Aidan; Palicke Chris on April 28, 2022;
- Exhibit "E" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on April 29, 2022 (ROA 14);
- Exhibit "F" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 16);
- Exhibit "G" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 18);
- Exhibit "H" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 20);
- Exhibit "I" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 22);

7

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441(b) (FEDERAL QUESTION JURISDICTION)**

- Exhibit "J" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 24);
- Exhibit "K" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 26);
- Exhibit "L" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 28);
- Exhibit "M" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 30);
- Exhibit "N" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 32);
- Exhibit "O" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 34);
- Exhibit "P" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 36);
- Exhibit "Q" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 38);
- Exhibit "R" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 40);
- Exhibit "S" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 42);
- Exhibit "T" – Proof of Personal Service filed by Children's Health Defense-California Chapter, et al. on May 2, 2022 (ROA 44).

17.     Additionally, and pursuant to Central District Local Rule 3.1, a completed Civil Case Cover Sheet and Certificate of Interested Parties have been filed with the Court.

WHEREFORE, the District Defendants respectfully request that this civil action be removed from the Superior Court of the State of California for the County of Orange to the above-entitled court.  Should the Court be inclined to remand this

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441(b) (FEDERAL QUESTION JURISDICTION)

1 │ action, the District Defendants respectfully request the Court first issue an order to

2 │ show cause as to why the case should not be remanded, as an order remanding a

3 │ case to state court is not reviewable.  See, 28 U.S.C. § 1447(d).  Such an order

4 │ would permit the District Defendants the ability to cure any technical defect in this

5 │ Notice of Removal and to submit additional evidence and/or arguments as the Court

6 │ may request in support of removal of the state court action to the Federal District

7 │ Court for the Central District of California.

8 │

9 │ DATED:  May 25, 2022                    Respectfully submitted,
  │                                         **LYNBERG & WATKINS**

10 │                                        A Professional Corporation

11 │

12 │                          By:  _____

13 │                                         **COURTNEY L. HYLTON**
   │                                         **PANCY LIN**

14 │                                         Attorneys for Defendants, PLACENTIA-
   │                                         YORBA LINDA UNIFIED SCHOOL

15 │                                         DISTRICT, et al.

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

27 │

28 │

---

**9**

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441(b) (FEDERAL QUESTION JURISDICTION)**

# EXHIBIT "A"

1 Nicole C. Pearson SBN 265350
Nicole@FLTJLLP.com

2 Rita Barnett-Rose SBN 195801
Rita@FLTJLLP.com

3 Jessica R. Barsotti SBN 209557
Jessica@FLTJLLP.com

4 Nicole Krasny Asch SBN 204409
nkasch@fltjllp.com

5 LAW OFFICES OF NICOLE C. PEARSON

6 3421 Via Oporto, Suite 201
Newport Beach, CA 92663

7 424) 272-5526

8

Attorneys for Plaintiffs

9

10 **SUPERIOR COURT FOR THE COUNTY OF ORANGE**

11 **CENTRAL JUSTICE CENTER**

Assigned for All Purposes
Judge Deborah Servino

12 | **CHILDREN'S HEALTH DEFENSE-** | Case No.: 30-2022-01253908-CU-MC-CJC
**CALIFORNIA CHAPTER,** a California

13 501(c)(3) non-profit corporation, on its own | **COMPLAINT FOR DECLARATORY**
and on behalf of its members, **CHRIS** | **AND INJUNCTIVE RELIEF AND**

14 **PALICKE** an individual on behalf of himself | **DAMAGES**
and as Guardian Ad Litem for his minor child,

15 **AIDAN PALICKE**.

16 Plaintiffs,

17 vs.

18 **PLACENTIA-YORBA LINDA UNIFIED**
**SCHOOL DISTRICT,** a local educational

19 agency in the County of Orange, YORBA
LINDA HIGH SCHOOL, a public school

20 within the Placentia-Yorba Linda Unified
School District, JIM ELSASSER, in his

21 official capacity as Superintendent of Placentia
Yorba Linda Unified School District,

22 RICHARD McALINDIN, in his official
capacity as Assistant Superintendent of

23 Placentia-Yorba Linda Unified School
District, LINDA ADAMSON, in her official

24 capacity as Assistant Superintendent of
Placentia-Yorba Linda Unified School

25 District, RICHARD DINH, in his official
capacity as Principal of Yorba Linda High

26 School, BIRD POTTER, in her official
capacity as Assistant Principal of Yorba Linda

27 High School, CARRIE BUCK, KARIN
FREEMAN, and MARILYN ANDERSON,

28 each individual in her official capacity as a

**1)** **Violation of Ed. Code sections 48900**
**and 48910 (unlawful**
**suspension/expulsion)**

**2)** **Violations of Ed. Code sections 48213**
**and 49451 (fraudulent expulsion)**

**3)** **Violations of Ed. Code sections**
**51746, 51747, 51749.5, 51749.6**
**(coercion into independent study)**

**4)** **Violation of Cal. Constitution - Right**
**to Privacy**

**5)** **Violation of Federal EUA Law**

**6)** **Violation of First Amendment**

**7)** **Violation of Due Process**

**8)** **Violation of Ed. Code sections 51746,**
**51747, 51749.5, 51749.6 et. al.**
**(Damages)**

**9)** **Negligence**

**10)** **Intentional Infliction of Emotional**
**Distress**

**11)** **Negligent Infliction of Emotional**
**Distress**

**12)** **Violation of Cal. Constitution – Right**
**to Education**

**13)** **Violation of Equal Protection**

**14)** **Violation of Cal. Civ. Code 52.1**
**(Bane Act)**

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | member of the School Board of the Placentia Yorba Linda Unified School District,  DANA GIGLIOTTI, an individual, BRYAN BLOOM, an individual, JACLYN CHAVEZ, an individual, JOHN DOMEN, an individual, MADISON WALTEMEYER, an individual, AMBER FERRIS, an individual, AND DOES 1-50, inclusive,<br><br>                    Defendants. | <u>UNLIMITED CIVIL COMPLAINT</u> |

7      Plaintiffs CHILDREN'S HEALTH DEFENSE, CALIFORNIA CHAPTER and CHRIS

8  PALICKE, on behalf of himself and his minor son, AIDAN PALICKE,   complain of Defendants

9  PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT ("PYLUSD"), a local educational

10  agency in the County of Orange, YORBA LINDA HIGH SCHOOL ("YLHS"), a public school within

11  PYLUSD, JIM ELSASSER, in his official capacity as Superintendent of PYLUSD, RICHARD

12  McALINDIN, in his official capacity as Assistant Superintendent of PYLUSD, LINDA ADAMSON,

13  in her official capacity as Assistant Superintendent of PYLUSD, RICHARD DINH, in his official

14  capacity as Principal of YLHS, BIRD POTTER, in her official capacity as Assistant Principal of

15  YLHS, KARIN FREEMAN, CARRIE BUCK, and MARILYN ANDERSON, each in her official

16  capacity as a member of the PYLUSD School Board,  DANA GIGLIOTTI, an individual, BRYAN

17  BLOOM, an individual, JACLYN CHAVEZ, an individual, JOHN DOMEN, an individual,

18  MADISON WALTEMEYER, an individual, AMBER FERRIS, an individual, AND DOES 1-50,

19  inclusive, as follows:

<div align="center"><strong><u>INTRODUCTION</u></strong></div>

21      1.      For the past two years, under guise of a declared "COVID-19" pandemic, a number of

22  California school districts, including Defendants, along with their superintendents, principals,

23  teachers, and other school officials -- individuals and entities with a legal duty to protect the

24  schoolchildren in their care against dangerous conditions, abuse, discrimination, harassment, and

25  violations of their students' Constitutional and statutory rights – instead breached this duty of care and

26  became the enforcers of abusive "COVID-19 health" policies themselves.  They claim they were "just

27  following orders."

28      2.      These school officials' actions in implementing and enforcing these policies damaged

<div align="center">2<br>COMPLAINT</div>

many of their students' health and mental well-being, in-person educations, extracurricular participation, college opportunities, and/or future career prospects.  These actions also destroyed many students' formerly positive views of school and their basic trust in the school officials who wielded such power capriciously, and in spite of the growing evidence of enormous harms resulting from many of these unjustifiably prolonged measures.

3.     On information and belief, much of this abuse occurred due to these districts and school officials' acceptance of millions or even billions of dollars of COVID-19 Relief funding with specific "health and safety" conditions attached.  These conditions were, in fact, wholly detached from students' actual health and well-being.

4.     Defendants were and are among the California districts and school officials perpetuating these abuses and violations of their students' rights by imposing their own localized COVID-19 policies, including a mandatory mask policy ("Mask Policy"), and by unlawfully suspending, expelling, and coercing healthy students who did not comply with these policies into independent study programs against their wishes, and on the fraudulent and defamatory basis that these students were "clear and present" dangers to the PYLUSD community.

5.     Aidan Palicke was one of the students specifically targeted by Defendants for not complying with their dangerous Mask Policy, unlawfully suspended from school, and coerced into an independent study program against his and his parents' wishes, suffering substantial harms as further described herein.

6.     Although Defendants have now temporarily suspended their Mask Policy as of March 12, 2022, Defendants' Mask Policy is capable of being reinstituted at any time, without due process of law for PYLUSD students or their families, and with the renewed threat of suspension, expulsion and involuntary placements into independent study programs for failing to comply with any reimposed Mask Policy. Accordingly, this issue is not moot.  (*See Roman Catholic Diocese v. Cuomo* (2020) 592 U.S. ___, ____, 141 S.Ct. 63, 68 [holding that the lifting of restrictions did not moot the application to enjoin defendants because "the applicants remain under a constant threat" that those restrictions may be reinstated]).

7.     Indeed, Governor Newsom and CDPH officials have already indicated in their

SMARTER Plan an intent to reinstitute masking requirements on K-12 students as they deem fit in the future, and without going through any proper administrative rule-making process to do so.

8.    Defendants in this case took a polite, high-achieving student and athlete who simply wanted to be able to breathe in the mask he was ordered to wear in order to attend in-person schooling, and cruelly destroyed his high school life, his belief in the benevolence of his teachers and school officials, and possibly his opportunity to attend the college of his choice.

9.    Defendants did this while knowing that the Mask Policy it forced on its students was not safe, did not prevent or slow transmission of COVID-19 or any of its variants, and that it imposed these masking measures in order to receive significant federal funding, rather than to protect the health and safety of its students.

10.    Plaintiffs hereby ask this honorable Court to: (1) permanently enjoin Defendants, and each of them, from suspending, expelling or coercing healthy students into independent study programs against their wishes and in violation of California law, and declare that PYLUSD does not have the legal authority to suspend, expel and coerce healthy students into independent study programs against their wishes for alleged failures to comply with their Mask Policy, and (2) declare that Defendants' Mask Policy is violative of PYLUSD students' fundamental constitutional and statutory rights and permanently enjoin Defendants from re-instituting this Mask Policy at a future date. Plaintiffs also seek damages for the intentional, reckless, and negligent actions of Defendants towards Plaintiff Palicke and his son Aidan, as further described herein.

## PARTIES - PLAINTIFFS

11.    PLAINTIFF CHILDREN'S HEALTH DEFENSE, CALIFORNIA CHAPTER ("CHD-CA") is a California 501(c)(3) nonprofit corporation incorporated under the laws of the State of California and headquartered in Ross, California.  CHD-CA was founded in 2020 as the California branch of Children's Health Defense ("CHD"), a national non-profit organization headquartered in Peachtree, Georgia.   CHD-CA has over 7,000 members throughout California consisting predominately of parents whose children have been negatively affected by environmental and chemical exposures and damaging emergency "health" measures including unsafe emergency vaccines, unsafe emergency lockdowns, illegal contact tracing, damaging quarantine and isolation

policies and damaging emergency masking policies, including violations of their rights to medical choice and bodily autonomy. CHD-CA's mission is to end childhood health epidemics by working to end harmful exposures and policies, hold those responsible accountable, and to establish better restrictions and safeguards.  CHD-CA has members who are parents of PYLUSD students who have been negatively impacted by PYLUSD's "2021-2022 Return to School Plan Under COVID-19 Conditions," which specifically includes its Mask Policy (collectively, the "RTS Plan") and PYLUSD's violations of California's independent study requirements and other laws, as well as students who attend PYLUSD schools themselves and who have been negatively impacted by the RTS Plan and Defendants' violation of California's independent study requirements and other laws.  CHD-CA brings this action on behalf of its PYLUSD parent and student members, and plaintiffs individually named for the benefit of all others similarly situated, in support of CHD-CA's mission to protect children's health and to defend medical freedom, the right to informed consent, and the right to refuse unwanted medical treatments, and to hold Defendants' accountable for the violation of Plaintiffs' civil rights.  The interests CHD-CA seek to protect in this action are therefore germane to its fundamental purpose and CHD-CA has members negatively impacted by the RTS Plan and violations of students' fundamental rights, therefore CHD-CA further meets all associational standing requirements for prosecuting this action.

12.    PLAINTIFF CHRIS PALICKE is an individual residing in Orange County, California and is the parent of AIDAN PALICKE, a student within the PYLUSD and former YLHS who was involuntarily removed to Parkview, a home-based independent study program within PYLUSD.

13.    Numerous other PYUSD students object to PYLUSD's COVID-19 Policies, including forced masking, testing, and involuntary placement into independent study or home study programs for the same reasons as Plaintiffs. These students and/or their parents have declined to join this lawsuit for fear of academic, personal, and/or professional retribution by Defendants, including school administrators and faculty, as well as potential harassment and bullying by their peers.

## **PARTIES – DEFENDANTS**

14.    DEFENDANT YORBA-LINDA UNIFIED SCHOOL DISTRICT ("PYLUSD") is a school district and local educational agency established within the County of Orange, as well as an

agency of the state for purposes of implementing the educational requirements of state law within the geographical boundaries of Placentia and Yorba Linda, California.

15.     DEFENDANT YORBA-LINDA HIGH SCHOOL ("YLHS") is a high school located in Yorba Linda, California, which is within the PYLUSD.

16.     DEFENDANT JIM ELSASSER is the Superintendent of the PYLUSD.  As such, he is responsible for the daily operations of the PYLUSD, including during the time periods relevant to this Complaint.  DEFENDANT ELSASSER is the individual vested with the power of enforcement of the RTS Plan, including PYLUSD's Mask Policy, as well as the power of enforcement of PYLUSD's policies and protocols challenged herein.  Defendant Elsasser is sued herein in his official capacity.

17.     DEFENDANT RICHARD MCALINDIN is the Assistant Superintendent of Executive Services at PYLUSD.

18.     DEFENDANT LINDA ADAMSON is the Assistant Superintendent of Educational Services at PYLUSD.

19.      DEFENDANT RICHARD DINH is the Principal of YLHS.

20.     DEFENDANT BIRD POTTER is the Assistant Principal of YLHS.

21.     DEFENDANT CARRIE BUCK is a member of the PYLUSD School Board (the "Board") and is sued in her official capacity as a member of this Board.

22.     DEFENDANT KARIN FREEMAN is a member of the Board and is sued in her official capacity as a member of this Board.

23.     DEFENDANT MARILYN ANDERSON is a member of the Board and is sued in her official capacity as a member of this Board.

24.     Upon information and belief, all members of the Board are residents of Orange County, California.  The Board members collectively possess the legal authority and duty to adopt, amend, revise, rescind, and oversee all policies and procedures of the PYLUSD in a manner consistent with state and federal law.

25.     DEFENDANT DANA GIGLIOTTI is an individual and teacher at YLHS.

26.     DEFENDANT BRYAN BLOOM is an individual and teacher at YLHS.

27.     DEFENDANT JACLYN CHAVEZ is an individual and teacher at YLHS.

28.     DEFENDANT JOHN DOMEN is an individual and teacher at YLHS.

29.     DEFENDANT MADISON WALTEMEYER is an individual and teacher at YLHS.

30.     DEFENDANT AMBER FERRIS is an individual and teacher at YLHS.

31.     DEFENDANTS, DOES 1 through 50, inclusive, are and at all times herein mentioned were, individuals, agents, officials, and/or employees of PYLUSD or YLHS.

32.     The true names and capacities, whether individual, corporate, associate, or otherwise, of DEFENDANTS DOES 1 through 50, inclusive, are unknown to PLAINTIFFS, who therefore sue said DEFENDANTS by such fictitious names.  PLAINTIFFS will ask leave of Court to amend this Complaint to show their true names and capacities when the same have been ascertained. PLAINTIFFS are informed and believe and thereon allege that each of the DEFENDANTS designated herein as DOES 1 through 50, inclusive, is responsible in some manner for the events and happenings referred to herein which caused the damages to PLAINTIFFS hereinafter alleged.

33.     Reference to "Defendants" shall include the named Defendants and the "DOE" Defendants.

## JURISDICTION AND VENUE

34.     This action arises under the applicable California statutes and common law, and the California and United States Constitutions as well as applicable Federal law.

35.     This Court has jurisdiction over complaints for injunctive relief under California Code of Civil Procedure ("CCP") §§ 525 and 526 and jurisdiction over complaints for declaratory relief under CCP § 1060.

36.     Plaintiffs are seeking combined damages in excess of $25,000 and their case is properly classified as an unlimited civil case under CCP §§ 85, 86, and 88.

37.     On February 11, 2022, Plaintiff Chris Palicke, on behalf of his son Aidan, duly served a Notice of Government Tort Claim on Defendant PYLSD pursuant to California Civil Code sections 810-996.6, which was acknowledged as received by Defendants, alleging damages for the harms herein described. A true and correct copy of such Government Tort Claim is attached hereto as **Exhibit A** and incorporated by reference herein. Such claims were denied by Defendant PYLSD on March 9, 2022, thus permitting the instant lawsuit for damages. A true and correct copy of such denial is

attached hereto as **Exhibit B** and incorporated by reference herein.

38.     This Court is the proper venue for this action because the acts, transactions and occurrences giving rise to this action occurred in substantial part in the Cities of Placentia and Yorba Linda, in the County of Orange, in the State of California. Defendants either reside in or maintain business offices in this County, a substantial portion of the transactions and wrongs complained of herein took place in this County, including Defendants' primary participation in the acts detailed herein, and Plaintiffs' injuries occurred in this County.  CCP §§ 15, 393(b), 394(a), and 401(1).

## GENERAL ALLEGATIONS

### Declared SOE and Public Health Mandates

39.     In late February of 2020, a federal state of emergency was announced, due to a declared outbreak of a "novel" coronavirus, COVID-19.

40.     On March 4, 2020, Governor Newsom also declared a "state of emergency" for California on this same basis.  Eventually, many states followed suit.

41.     These declarations of emergency and the hundreds of executive orders and public health mandates that followed thereunder set in motion a devastating and unprecedented chain of events, including the swift imposition of state and federal authoritarian "pandemic safety measures" that impacted every man, woman, and child in the country.

42.     Under these various public health measures, healthy individuals were ordered to "shelter-in-place," businesses were divided into "essential" (liquor stores/corporate chains) versus "non-essential" (dental offices/small stores),[1] and schools, churches, and other places of regular community assembly were all forbidden to operate in person.

43.     Although originally promised that these unprecedented measures would be lifted in a matter of weeks after "slowing the spread," "flattening the curve," and "helping to keep hospitals from becoming overwhelmed," it soon became apparent that many of these authoritarian measures would remain in place for much longer than that. Eventually, the measures imposed became completely detached from the original reasons given for issuing them.

---

[1] This illogical "public health" decision to only allow "essential" businesses to stay open determined that small garden stores selling vegetables, herbs, and fruit trees were non-essential, while strip clubs were allowed to remain open. *See* https://www.cbsnews.com/news/strip-clubs-exempt-covid-rules-judge-san-diego-california/.

44.     To make sure the citizenry was sufficiently terrorized and therefore compliant with these unprecedented impositions on their fundamental rights, video clips showing individuals purportedly infected with "COVID-19" spontaneously collapsing and dying in the streets in Wuhan, as well as World-o-Meter ticker tapes showing the alarming rise in cases, hospitalizations, and deaths due to this novel virus were broadcast incessantly on every mainstream media outlet.

45.     These videos and daily case, hospitalization, and death numbers later turned out to be either entirely false -- or stunningly misleading.[2]

46.     Sadly, this was just the beginning of a seemingly coordinated governmental, public health, and corporate sponsored campaign to mislead the general public about the risks and dangers of this "novel" coronavirus.  This included intentional misrepresentations or omissions about (1) the actual infection fatality rates, (2) the incredible rarity of asymptomatic spread,  (3) the extreme risk stratification (including the fact that healthy people under age 65 were at little risk for severe symptoms), (4) the fact that the PCR tests could not distinguish between COVID-19 or the flu, (5) the existence and availability of early effective treatments, and (6) the fact that nearly all pre-2020 science and global pandemic planning reports agreed that cloth and/or surgical masks would do nothing to stop the spread of a respiratory virus, including "COVID-19."

47.     Consistent with this inversion of previously sound medical advice on nearly everything regarding appropriate measures to protect against a respiratory virus was the 180-degree flip-flop by public health authorities on the appropriateness of masking for the general public. This messaging stunningly morphed from: "masks are not necessary for the general public unless one is symptomatic" to: "Masks are better than vaccines and you wear them to protect others, not yourself!" in a matter of a few weeks, and with no credible science to back it up.

**Dubious Mask Mandates and Emerging Evidence of Harms**

48.     Not surprisingly, given the abrupt flip-flop in public health masking advice, *forcing*

---

[2] It is interesting that not a single COVID-19 death in the United States occurred by someone spontaneously collapsing in the street like the Wuhan man in this original video. It has also never been fully explained how the creators of the "World-O-Meter" daily COVID-19 counts were able to accumulate the global data needed to report case numbers, hospitalizations, and deaths on a daily basis so quickly.  Clearly, an impressive level of co-ordination from world governments, public and private hospitals, and world-wide coroners' offices had to have been immediately activated. *See also, e.g*, https://www.msn.com/en-us/health/medical/cdc-says-it-accidentally-inflated-children-s-covid-death-numbers-in-coding-logic-error/ar-AAVfD63.

330 million people to wear face coverings, rather than giving them credible information to make this crucial decision themselves, met with some resistance.   Mask mandates were immediately controversial, politicized, and divisive.

49.   Nor did there seem to be sufficient scientific justification for the abrupt change in messaging.  In fact, the pre-2020 "science" on cloth or surgical masking to protect against a respiratory virus had almost exclusively gone the other way for decades, with study after study concluding that they did not serve to protect against infection or transmission of a respiratory virus, and in fact, could lead to additional secondary harms, including bacterial and/or fungal infections.[3]

50.   Unfortunately, and contrary to this established literature, as of mid-2020, the Centers for Disease Control ("CDC") was vigorously recommending masks as an effective tool against COVID-19 transmission and infection, and this paved the way for mask mandates across the country.

51.   However, as the months went on and mask harms began accumulating, many informed individuals, including experts in mask science, immunology, pediatrics, virology, OSHA mask safety regulations, childhood speech pathologists, ESL teachers, child psychologists, and even dentists began speaking out about both the rising harms caused by prolonged mask wearing and the lack of credible evidence showing that any claimed benefits outweighed these numerous risks.

52.   Experts also spoke out about the harms to children in particular from prolonged forced mask wearing in schools, harms that included oxygen deprivation, carbon dioxide poisoning, increased anxiety, social development impairments, skin rashes and other skin conditions, speech development delays, mouth and tooth deformation due to mouth breathing, and concerning heart issues like tachycardia.

53.   Adding fuel to the controversy: despite near universal compliance with mask mandates

---

[3] *See e.g.,* MacIntryre et al., *A Cluster Randomised Trial of Cloth Masks Compared with Medical Masks in Healthcare Workers*, BMJ Open (2015) (cautioning against use of cloth masks due to greater risks of infection); World Health Organization, *Advice on the Use of Masks in the Context of COVID-19* (April 6, 2020) ("[T]here is currently no evidence that wearing a mask (whether medical or other types) by healthy persons in the wider community setting, including universal community masking, can prevent them from infection with respiratory viruses, including COVID-19."); Taiwan University Hospital, *The Physiological Impact of N95 Masks on Medical Staff* (Sept. 15, 2005) ("[D]izziness, headache, and short of breath are commonly experience by the medical staff wearing N95 masks. The ability to make correct decisions may be hampered too."); Radonovich et. al., *N95 Respirators vs. Medical Masks for Preventing Influenza Among Health Care Personnel*: *A Randomized Clinical Trial*, JAMA (2019) (no significant difference in the incidence of laboratory-confirmed influenza between N95 and regular medical masks).

in many states, particularly in California, COVID-19 cases continued to skyrocket.[4]

54.     If masks worked, why weren't they working?

55.     Then, in January of 2022, after twenty-two months of forcing or coercing much of society, including schoolchildren, to cover their mouths and noses with cloth masks, the CDC, along with various other "public health" experts, belatedly – and horrifyingly -- admitted that the cloth masks they had forced onto society and on schoolchildren in order to be able to attend school in person were, in fact, no better than "facial decorations," and certainly didn't work against "new variants."[5]

### CDPH Responds to Mask Theatre -- with More Mask Theatre

56.     Over the last two years, Governor Newsom and his California Department of Public Health "("CDPH") have imposed, removed, and then reimposed various masking requirements for both adults and children in K-12 schools without public review and comment, scientific justification, engagement in a meaningful cost benefit analysis, or requesting or receiving the consent of the governed.

57.     Chillingly, in Governor Newsom's "SMARTER" Plan, announced on February 17, 2022, he and CDPH have indicated that they intend to hold onto these emergency powers to force masks on citizens and K-12 children indefinitely, long after the conditions warranting a state of emergency have clearly expired[6] -- and long after CDPH should have been required to once again reinstate the normal rule-making requirements of the California Administrative Procedure Act (the "APA").[7]

---

[4] In fact, significant evidence now exists that suggests that forced masking has had no statistically significant beneficial impact on the rise or fall of COVID-19 cases, hospitalizations, and/or deaths, both in school environments or society-wide – and may have made matters worse.  Indeed, many states and schools that had abandoned forced masking early, like Florida, had performed similarly or even better than states like California and New York, which held on to forced masking the longest.

[5] CDC has not explained whether the particle size of these "new variants" is substantially different than the particle size of the original Alpha strain to explain this sudden inability for cloth masks to stop Omicron but served as essential PPE for earlier variants.

[6] The fact that Los Angeles could host a Superbowl in March and 70,000 maskless fans, including Governor Newsom, Los Angeles Mayor Eric Garcetti, and San Francisco Mayor London Breed could crowd like sardines into a stadium to cheer their chosen sports teams certainly must have led even the most fervent of forever-maskers to give at least momentary pause about the need to continue a "state of emergency" -- with its attendant suspension of the normal functioning of a representative democracy and the three branches of government that presumably serve as "checks and balances" over one another.

[7] See California SMARTER plan (February 2022), available at https://files.covid19.ca.gov/pdf/smarterplan.pdf ("Use of masks should be supported by all who want to use them and should be required in high-risk settings and other public indoor settings during periods of high transmission or when a variant emerges with potentially high virulence.")

58.     Given this penchant for governmental overreach, it is not surprising that in response to the CDC's admission of cloth mask *hygiene theatre*, in January 2022, CDPH once again updated its masking requirements by recommending that Californians, including California schoolchildren, don even more restrictive masks like N95 or KN95 masks or wear triple layers of masks instead. ("Mask Guidance").

59.     CDPH updated its Mask Guidance without conducting any legitimate risk-benefit analysis, including any analysis of whether the prolonged wearing of these more restrictive masks by millions of California school children for six to eight hours each day, five days a week, would negatively impact their health, well-being, or social and educational development two years into an endless "pandemic."   CDPH also failed to explain why the majority of states, rather than suggesting even stricter masking, were abandoning mask requirements entirely, and often with much better results than California.

**PYLUSD's Updated Mask Policy**

60.     Although CDPH's January 2022 Masking Guidance still required that all California school districts have a masking policy in place, the actual contours of each school district's mask policy, including the choice of masks imposed on its students, and the consequences for not wearing a specific type of mask, was specifically left to the individual school districts.

61.     On January 14, 2022, Defendant Superintendent Elsasser announced via email to PYLUSD families an update to the PYLUSD masking policy that suggested that students would now need to choose among the following more restrictive face coverings in order to attend PYLUSD schools: "N95, KN95, double masks, fitted surgical masks, and fabric masks with three or more cloth layers" (The aforementioned "Mask Policy").

62.     Defendant Elsasser's email further stated that "masks with holes and mesh masks are not acceptable."

63.     Before imposing their updated Mask Policy, Defendants failed to conduct (1) any independent analysis or independent review of any studies showing whether any of these options for face coverings would be effective in stopping or slowing COVID-19 or any of its newer variants; (2) any independent analysis or review of credible safety studies regarding whether its updated Mask

Policy and the prolonged use of any of these more restrictive face coverings for 6-8 hours a day would be physically harmful to its students; (3) any independent analysis or review of credible evidence showing numerous other harms to students' mental, emotional, speech, associational, and social well-being from prolonged and more restrictive face coverings; and (4) failed to indicate how much longer PYLUSD students would be expected to cover their two airways in order to attend PYLUSD schools.

64.    On information and belief, Defendants imposed their Mask Policy and other measures contained in its 2021-2022 RTS Plan on PYLUSD students in exchange for the continued flow of millions of dollars in COVID-19 relief ESSER III funding, funding given to school districts with specific strings attached.

65.    Specifically, to receive these substantial ESSER III funds, schools were required to implement specific COVID-19 protocols on its students, including forced masking, testing, data collection, quarantining, and encouragement of COVID-19 vaccination.

66.    Defendants shirked their own independent and statutory duties as a school district and as school officials to determine whether or not their updated Mask Policy would benefit – and certainly not *harm* – their students' overall health and well-being, in exchange for this ESSER III funding.

**Selective Enforcement of Updated Mask Policy Against Aidan Palicke and Engagement in Conduct that Shocks the Conscience**

67.    Defendants also did not uniformly enforce its new Mask Policy against all students, teachers, school employees, or anyone else on YLHS or PYLUSD grounds.

68.    In fact, after the Mask Policy was announced, many individuals within PYLUSD continued to wear cloth or mesh masks – or no masks at all. (*See* photos of PYLUSD students and teachers included in the Govt Tort Claim attached as **Exhibit A**).

69.    Despite this widespread non-compliance with the Mask Policy, Defendants decided to target and make an example of Aidan Palicke, a well-behaved, high achieving junior at YLHS and a team captain of the YLHS track team.

70.    On information and belief, part of this targeting of Aidan Palicke was due to Defendants' unhappiness with Plaintiff Chris Palicke and his wife Shari's conservative values, Catholic faith, and vocal opposition to various PYLUSD school policies, including but not limited to

the COVID-19 RTS Plan at PYLUSD, which included forced masking.

71.     With respect to forced masking, Aidan's parents, Chris and Shari Palicke, rightfully believed that masks would not help stop the spread of a respiratory virus, and they did not believe that making schoolchildren wear masks that blocked children's airways for 6-8 hours a day was a safe or reasonable health response by PYLUSD.  Chris and Shari Palicke made these opinions known during several PYLUSD school board meetings, much to the dismay of several PYLUSD Board Members, including certain named Defendants in this action.

72.     Chris and Shari Palicke nevertheless believed that returning to in-person learning was in the best interests of their three children, particularly after witnessing the severe negative impacts that a year of remote learning had already had on Aidan and their other two children.  This impact included loss of enthusiasm and motivation to attend "remote" school, significantly lower grades, depression, anxiety, and overall angst due to the inability to see, interact, and socialize with their friends and peers, participate on sports teams, and become acquainted with their teachers in real life.  As a result, although they did not want their children to wear any masks, Chris and Shari Palicke determined that a "mesh mask" would allow their children to comply with the PYLUSD masking requirements while hopefully alleviating the more serious health and safety risks to their children that would likely result from more restrictive, less breathable, mask options.

73.     Like many other students, teachers, and school employees and officials, Aidan Palicke and his siblings were all able to wear mesh masks or other more breathable masks without incident for the entire fall quarter of their 2021-2022 school years within PYLUSD.

74.     However, beginning on January 13, 2022, Defendants decided to selectively enforce their updated Mask Policy, and further decided to single out Aidan Palicke for continuing to wear a mesh mask.

75.     This targeted harassment, discrimination, and abuse against Aidan by various Defendants included, but was not limited to:

    a. Defendants, specifically including Defendants Dinh, McAlindin, and Potter, each at various times, having Aidan removed from his classes and sent to Principal Dinh's office for wearing a mesh mask, despite other students, teachers, school employees and school

officials also wearing the same or similar type of mask, or no mask at all;

b. Defendants, specifically including Defendants Dinh, McAlindin, and Potter, sending school employees to wait outside classrooms and/or follow Aidan around school to make Aidan and other students aware that Aidan was being uniquely monitored and targeted;

c. Defendants, specifically including Defendants Dinh, McAlindin, and Potter, suspending Aidan and sending him home multiple times for wearing a mesh mask, despite other students, teachers, and/or school employees and/or officials wearing the same or similar type of mask or no mask at all;

d. Defendants, specifically including Defendants Dinh, McAlindin, Potter, Bloom, Gigliotti, Domen, Waltemeyer, Ferris, and Chavez segregating and/or refusing to allow Aidan to take his finals with the rest of his classmates, despite Aidan having no symptoms of any infectious disease and despite allowing other students wearing the same or similar types of masks or no mask at all to remain in class;

e. Defendants, specifically including Defendants Gigliotti and Chavez, forcing Aidan to drag a desk to take his finals outdoors in the morning cold, unsupervised, for many hours at a time, while being mocked and laughed at by his peers;

f. Defendants, specifically including Defendant Bloom, intentionally destroying Aidan's personal property, including his physics notebook, in order to interfere with Aidan's ability to do his schoolwork or maintain high grades; and

g. Defendants, specifically including Defendants Dinh, McAlindin, Potter, Elsasser, Anderson, Buck, and Freeman, each of them prohibiting or directing others to prohibit Aidan from returning to in-person schooling and stigmatizing Aidan by fraudulently, negligently and recklessly labeling him a "clear and present danger" to the YLHS community, despite him not having an infectious disease at any time, and despite continuing to allow other students, teachers, school employees and/or other school officials to wear the same or similar type of mask or no mask at all.

76.    This targeted harassment and discrimination by Defendants ultimately resulted in

Defendants' expulsion of Aidan from YLHS into home-based independent study against his wishes and in violation of existing state law.

77.     Although Aidan attempted to stay on the track team even after he was prohibited from going back to school, Defendants' encouragement of and participation in further bullying and harassment of Aidan during track meets ultimately resulted in Aidan's anguished decision to give up his place as a team captain on the track team – something he had loved being a part of at YLHS.

78.     Because California law is clear that students cannot be suspended or expelled from in-person education for "defiance," Defendants disingenuously and fraudulently claimed they had the right to remove Aidan from school for being a "clear and present danger" to the health and safety of the rest of the YLHS community purportedly due to Aidan's wearing of a simple mesh mask.

79.     Yet Defendants knew there was no evidence of Aidan suffering from an infectious disease, being in close contact with anyone with an infectious disease, living with anyone with an infectious disease, or that Aidan was a "clear and present" danger in any way.

80.     Instead, Defendants singled out and elected to interfere with Aidan's constitutionally guaranteed right to an in-person public education solely due to Aidan's defiance – i.e., his decision not to comply with Defendants' unsafe, and unlawful updated Mask Policy, as well as due to Defendants' retaliation against Aidan for the vocal opposition to PYLUSD policies by his parents, Plaintiff Chris Palicke and his wife Shari.

**<u>Forcing Students into Remote Study on the Pretense of Being Infectious Is Outrageous Conduct that Shocks the Conscience</u>**

81.     It is now widely acknowledged that the closure of in-person schools due to the "pandemic," which forced students into sub-par remote learning, had an absolutely devastating impact on American school children.[8]

82.     Study after study has shown that school closures and remote learning led to widespread learning losses, losses in motivation, lowered grades, speech and language delays, losses to English language acquisition for ESL learners, losses in needed services for students with disabilities or on

---

[8] *See, e.g.,* Heather Stringer, *Zoom School's Mental Health Toll on Kids*, American Psychological Association (October 13, 2020), https://www.apa.org/news/apa/2020/online-learning-mental-health.

IEPs, as well as losses to students' overall health and well-being due to the lack of in-person school nutritional services, mental health services, athletic programs, extracurricular activities and numerous other school-provided services and benefits that helped children to thrive – and sometimes literally to survive.

83.     Given this widely available information on the detriments of remote learning, Defendants' actions in coercing perfectly healthy students into independent study programs for failing to comply with an unscientific Mask Policy, or any other "health and safety" policy, on the manufactured and provably false basis that an otherwise healthy student is a "clear and present danger to the health and well-being of the school" is cruel, unreasonable, defamatory, punitive and outrageous.

84.     Such actions also directly conflict with, are inconsistent with, and violate existing California statutory law, as well as the U.S. and California constitutions.

85.     In California, although the governing board of a school district generally has broad authority to carry on a program or act in any manner to advance legitimate educational objectives, it must not act in a way that is in conflict with, inconsistent with, or pre-empted by any law. (*See* Ed. Code § 31560).

86.     California law is very clear on when schools may place a child into an independent study program.  None of the applicable provisions allow school districts to force students into independent study or remote learning options for failing to comply with a mask policy or any other general "health" policy absent signs that the student has an actual infectious disease.

87.     Under Education Code section 51749.5(a)(12), a student shall not be forced to enroll in independent study courses.

88.     This prohibition on forced independent study is confirmed and reinforced in title 5, section 11700 of the California Code of Regulations, which states that "independent study is an optional educational alternative in which no pupil may be required to participate," and "a pupil's choice to commence or continue in independent study, must not be coerced."

89.     Under Education Code section 51749.5(a)(9), a local educational agency must develop a plan for students in independent study wishing to return to in-person learning within five days of the

1   request.

2       90.    Under Education Code section 51749.6, a student and a parent or legal guardian must

3   review and approve any independent study plan for any student under 18 years of age before an

4   independent study plan may commence.

5       91.    Education Code section 51747 provides that a local educational agency shall not

6   receive funding for an independent study program unless independent study is an optional educational

7   alternative in which "no pupil may be required to participate." (Ed. Code, § 51747, subd. (g)(8)).  A

8   school may enroll a child in such a program only if there has been a "pupil-parent-educator

9   conference" to determine whether enrollment in independent study is in the best interest of the child

10  (id., § 51747, subd. (h)(2)) and "a signed written agreement for independent study from the pupil, or

11  the pupil's parent or legal guardian if the pupil is less than 18 years of age" (id., § 51747, subd.

12  (f)(9)(F)).

13      92.    Additionally, Education Code section 51746 provides that a child enrolled in a remote

14  learning or independent study program cannot be excluded from school facilities. Rather, the school

15  "shall ensure the same access to all existing services and resources in the school in which the pupil is

16  enrolled ... as is available to all other pupils in the school." (Ed. Code, § 51746).

17      93.    Under Education Code section 48900(k)(1)-(4), students may not be *expelled* for

18  disruption or willful defiance of the valid authority of supervisors, teachers, administrators school

19  officials or other school personnel engaged in the performance of their duties.

20      94.    Under Education Code section 48910, school officials who temporarily suspend a

21  student under Education Code 48900 for willful defiance may not do so for more than five consecutive

22  days and no more than twenty days in a school year.  Schools must also comply with specific attempted

23  corrective protocols prior to suspending students under these provisions. (Ed. Code § 48900.5).

24      95.    Under Education Code section 48213, a school may exclude a student pursuant to

25  section 120230 of the Health and Safety Code or section 49451 of the Education Code if the principal

26  or his/her designee reasonably determines, based on actual evidence, that the student poses a "clear

27  and present danger" to the life, safety, or health of pupil or school personnel.

28      96.    Under Education Code section 49451, a school may temporarily send a child home

only if there is "good reason to believe" that the child is suffering from a recognized or infectious disease and shall not be permitted to return "until the school authorities are satisfied that any contagious or infectious disease does not exist." This requires an objective finding that facts exist demonstrating the presence of infectious disease and danger.

97.    Under Health & Safety Code section 120230, a student who resides where any infectious disease exists or has recently existed and was subject to strict isolation or quarantine of contacts, may not return to school without the written permission of the health officer.

98.    In other words, in order to exclude a student on the basis that they are a "clear and present danger" based on an infectious disease, the school must actually engage in an objective factfinding analysis of whether the student actually has or recently had an infectious disease or come into close contact with someone who has or has actually had an infectious disease and actually poses a legitimate health risk to others in the community.

99.    Claiming that a student has an infectious disease when they do not is cruel, unreasonable, defamatory, punitive and outrageous.

100.    Defendants nevertheless repeatedly removed Aidan Palicke from his classrooms, suspended him from school multiple times, and ultimately weaponized these statutory provisions to wrongfully expel Aidan from school on the provably false basis that Aidan was a "clear and present danger" to others, despite Aidan not having, and never having, any indication of having an infectious disease, living with anyone with an infectious disease, or presenting a health risk or danger to anyone within PYLUSD.

101.    In addition, Defendants repeatedly insisted that Aidan involuntarily enroll in one of two remote learning options offered by PYLUSD - Parkview or Buena Vista independent study options - or be faced with truancy law violations, despite Aidan at all times being willing and desiring to return to in-person school at YLHS, in violation of multiple provisions of California law.

102.    In forcing its Mask Policy upon Aidan and suspending and removing him from in-person learning for failure to comply with it by fraudulently and outrageously claiming that he was a "clear and present danger" to others, Defendants have violated Aidan's fundamental Constitutional, statutory, and common law rights, and have further engaged in intentional, reckless and/or negligent

behavior towards Aidan.

103.    In forcing its Mask Policy upon other similarly situated students, including student members of Plaintiff CHD-CA, and suspending, removing, and coercing such students into independent study by fraudulently and outrageously claiming that these students presented a "clear and present" danger to others, Defendants have violated such students' fundamental Constitutional, statutory, and common law rights, and have further engaged in intentional, reckless, and/or negligent conduct towards students who Defendants each owed a duty to protect.

**California School Children Should Not Be Shields or Perpetual Pawns**

104.    Global data from the last 22 months has shown that children and young adults are extremely unlikely to suffer severe symptoms of COVID-19 or any of its variants, are unlikely to be hospitalized due to COVID-19 or any of its variants and are even less likely to die from the disease. In fact, children are at a statistically zero risk of death from COVID-19.

105.    With a statistically zero risk of death, hospitalization, or severe symptoms of COVID-19 or any of its variants, there is literally no legitimate public health reason or any rational basis to force any experimental face coverings on young healthy students, let alone mandate even more restrictive masks like "K95's, N95's, surgical masks, or multiple layers of masks" two years into a "pandemic."

106.    Moreover, children should not be asked to sacrifice their entire childhoods behind dehumanizing face coverings or in remote learning programs to purportedly protect "at risk" adults. Students must be allowed to attend school in person, to smile and to see smiles, to see and clearly hear their teachers' speaking words to learn to read facial social cues, to learn how to interact with others without the boundary of a face covering, to make friends, to see friends, and to breathe normally. In sum, children deserve a return to *normalcy*.

107.    California courts have given far too much deference to its overreaching executive branch and CDPH for far too long.  It is critical that the judicial branch re-emerges as an active third branch of government to restrain and undo the worst inclinations of those executive branch officials who have been given unprecedented – and purportedly *temporary* – power, and who have thoroughly

abused this temporary grant and declared their intent to continue to do so.[9]

108.    Our courts also cannot allow individual school districts and officials to implement their own localized unscientific health and safety policies and simply point the finger of blame upwards. Although CDPH and other federal and state actors have provided both carrots and sticks for school districts to create and impose these policies at local levels, school districts and school officials, including Defendants, are responsible for their own masking and other "health" policies and the enforcement of such policies.  As such, they have an independent obligation to comply with the law in adopting, enforcing, and implementing these policies and to conduct their own assessment of the risks and benefits of these policies before inflicting them on students.  They also have an ongoing obligation to re-evaluate and abandon such policies in the face of mounting evidence of serious physical, mental, and emotional harms to the students within their care.

109.    Aidan Palicke and all California schoolchildren deserve so much better than the mistreatment they have endured for the last two years.

### **FIRST CAUSE OF ACTION**

**Unlawful Suspension/Expulsion Violations of**

**Education Code Section 48900 and 48910**

**(Declaratory and Injunctive Relief)**

**(*All Plaintiffs against All Defendants*)**

110.    Plaintiffs reallege and incorporate by reference their allegations in each of the preceding paragraphs in this Complaint as if fully set forth herein.

111.    Defendants have been wrongfully and unlawfully suspending and/or expelling PYLUSD students who fail to comply with their Mask Policy or other "safety" measures in their RTS Plan, as further described above, including but not limited to Aidan Palicke, and unless these actions are enjoined and declared to be unlawful, Defendants will continue to do so in the future, causing irreparable harm to PYLUSD students.

---

[9] Specifically, Governor Newsom is under a legal obligation under the California Emergency Services Act to terminate the state of emergency "at the earliest possible date that conditions warrant." (Govt. Code § 8629).  Considering that the Governor has now enjoyed at least two-family vacations in Mexico and Costa Rica, went on a national book tour for his children's book, hosted a maskless dinner at French Laundry, and attended numerous large sporting events maskless during the last two years, it is unclear what conditions will warrant Governor Newsom's self-termination of his emergency powers.

112.    Education Code section 48900 provides the only mechanism for temporarily suspending students for disruption or defiance of school authorities or school rules.  This provision provides, in relevant part, as follows: "A pupil shall not be suspended from school or recommended for expulsion, unless the superintendent of the school district or the principal of the school in which the pupil is enrolled determines that the pupil has committed an act as defined pursuant to any of subdivisions (a) to (r), inclusive: ..."

113.    Education Code sections 48900(k)(1)-(4) of this provision provides that, except as provided in section 48910, School Officials may *temporarily* suspend – *but not expel* – students in grades 8-12 who "disrupted school activities or otherwise willfully defied the valid authority of supervisors, teachers, administrators, school officials, or other school personnel engaged in the performance of their duties..." under certain limited circumstances.

114.    Education Code section 48900 does not even allow suspension of students in the younger grades of kindergarten through eighth grade for such disruption or defiance.

115.    Further, the exception allowing suspensions under Education Code section 48910 is narrow: it only allows "[a] teacher" to temporarily suspend a pupil "for the day of the suspension and the day following" while the principal determines the appropriate discipline. It does not justify the ongoing exclusion of a pupil from the classroom or from the school campus for the inability or refusal to wear a mask or comply with the contours of the Mask Policy.

116.    In fact, schools may only suspend students for a five-day consecutive period and may not suspend students for more than twenty days over the course of a school year. (Ed. Code § 48900.5).

117.    Defendants' policy of suspending and/or expelling healthy students— including those with natural or vaccine-induced immunity to COVID-19 — who do not comply with Defendants' Mask Policy or other measures in its RTS Plan violates Section 48900.

118.    Defendants' policy of mandatory exclusion for any student who refuses to comply with its Mask Policy or other coercive "health" measure and who is then forced into independent study is expulsion in violation of Section 48900.

119.    Defendants' policy of mandatory exclusion for any student who refuses to comply with its Mask Policy or other coercive "health" measures within its RTS Plan at any K–12 school within

PYLUSD also fails to satisfy the Education Code's stringent requirements that must be met *before* excluding a student from school. (*See* generally Educ. Code, §§ 49451, 48213, 76020.)

120.    PYLUSD schoolchildren and their families have suffered and will continue to suffer irreparable harm if Defendants continue to wrongfully suspend or expel students for failing to comply with its Mask Policy or any other coercive "health" measure under its RTS Plan.

121.    A judicial determination of these issues is necessary and appropriate because such a declaration will clarify the parties' rights and obligations, permit them to have certainty regarding those rights and potential liability, and avoid a multiplicity of actions.   An actual and present controversy exists with respect to the disputes between Plaintiffs and Defendants as alleged above (Code Civ. Proc., § 1060).

122.    Plaintiffs have no administrative remedy and have no adequate remedy at law if the Court does not declare that expelling PYLUSD students who fail to comply with their Mask Policy or other "safety" measures in their RTS Plan is a violation of Education Code sections 48900 and 48910. Thus, they seek preliminary and permanent injunctive relief enjoining Defendants from enforcing the PYLUSD Mask Policy now and in the future.

123.    WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION

### Wrongful and Fraudulent Expulsion

### Violations of Education Code Sections 48213 and 49451

### (Declaratory and Injunctive Relief)

### (*All Plaintiffs against All Defendants*)

124.    Plaintiffs reallege and incorporate by reference their allegations in each of the preceding paragraphs in this Complaint as if fully set forth herein.

125.    Defendants have been wrongfully and unlawfully expelling PYLUSD students who fail to comply with their Mask Policy or other "safety" measures in their RTS Plan, as further described above, including but not limited to Aidan Palicke, fraudulently claiming that these healthy students are "clear and present dangers" under Education Code sections 48213 and 49451, and unless these actions are enjoined and declared unlawful, Defendants will continue to do so in the future, causing

irreparable harm to PYLUSD students.

126.    Under Education Code section 48213, a school may only exclude a student pursuant to section 120230 of the Health and Safety Code or section 49451 of the Education Code if the principal or his/her designee determines that the student poses a "clear and present danger" to the life, safety, or health of pupil or school personnel.

127.    Under Education Code section 49451, a school may temporarily send a child home if there is "good reason to believe" that the child is suffering from a recognized or infectious disease and shall not be permitted to return "until the school authorities are satisfied that any contagious or infectious disease does not exist."

128.    Under Health & Safety Code Section 120230, a student who resides where any infectious disease exists or has recently existed and was subject to strict isolation or quarantine of contacts, may not return to school without the written permission of the health officer.

129.    These provisions require an objective finding that facts exist demonstrating the presence of actual infectious or contagious disease, either within that student or where the student resides, prior to excluding such a student from school on this basis.

130.    Defendants' policy of suspending and/or expelling healthy students without any symptoms of an infectious disease — including those with natural or vaccine-induced immunity to COVID-19 — who do not comply with Defendants' Mask Policy or other coercive measures in its RTS Plan weaponizes and unlawfully uses these provisions.

131.    A judicial determination of these issues is necessary and appropriate because such a declaration will clarify the parties' rights and obligations, permit them to have certainty regarding those rights and potential liability, and avoid a multiplicity of actions.  An actual and present controversy exists with respect to the disputes between Plaintiffs and Defendants as alleged above (Code Civ. Proc., § 1060).

132.    PYLUSD schoolchildren and their families have suffered and will continue to suffer irreparable harm if Defendants continue to fraudulently and wrongfully suspend or expel healthy students who do not have an infectious disease and do not reside where there is an infectious disease as "clear and present dangers" for failing to comply with its Mask Policy or any other coercive "health"

measures under its RTS Plan.

133.    Plaintiffs have no administrative remedy and have no adequate remedy at law if the Court does not declare that expelling PYLUSD students who fail to comply with their Mask Policy or other "safety" measures in their RTS Plan is a violation of Education Code sections 48213 and 49451. Thus, they seek preliminary and permanent injunctive relief enjoining Defendants from enforcing the PYLUSD Mask Policy now and in the future.

134.    WHEREFORE, Plaintiffs pray for relief as set forth below.

## THIRD CAUSE OF ACTION

### Violation of Education Code Sections 51746, 51747, 51749.5, 51749.6

### (Declaratory and Injunctive Relief)

### (*All Plaintiffs against All Defendants*)

135.    Plaintiffs reallege and incorporate by reference their allegations in each of the preceding paragraphs in this Complaint as if fully set forth herein.

136.    Under Education Code section 51749.5(a)(12), a student shall not be required to enroll in independent study courses.

137.    This prohibition of forced independent study is confirmed and reinforced in title 5, section 11700 of the California Code of Regulations, which states that "independent study is an optional educational alternative in which no pupil may be required to participate," and "a pupil's choice to commence or continue in independent study, must not be coerced."

138.    Under Education Code section 51749.5(a)(9), a local educational agency must develop a plan for students in independent study wishing to return to in-person learning within five days of the request.

139.    Under Education Code section 51749.6, a student and a parent or legal guardian must review and approve any independent study plan for any student under 18 years of age before an independent study plan may commence.

140.    Education Code Section 51747 provides that a local educational agency shall not receive funding for an independent study program unless independent study is an optional educational alternative in which "no pupil may be required to participate." (Ed. Code, § 51747, subd. (g)(8)).  A

school may enroll a child in such a program only if there has been a "pupil-parent-educator conference" to determine whether enrollment in independent study is in the best interest of the child (id., § 51747, subd. (h)(2)) and "a signed written agreement for independent study from the pupil, or the pupil's parent or legal guardian if the pupil is less than 18 years of age" (id., § 51747, subd. (f)(9)(F)).

141.    Additionally, Education Code Section 51746 provides that a child enrolled in a remote learning or independent study program cannot be excluded from school facilities. Rather, the school "shall ensure the same access to all existing services and resources in the school in which the pupil is enrolled ... as is available to all other pupils in the school." (Ed. Code, § 51746).

142.    A child enrolled in an independent study program always retains the option to return to his or her regular classroom for in-person instruction. The school is required to "transition pupils whose families wish to return to in-person instruction from independent study expeditiously, and, in no case, later than five instructional days." (Ed. Code, § 51747, subd. (f)).

143.    By removing students and placing them into independent study for not wearing the type of mask Defendants included in their updated Mask Policy, including Plaintiffs, Defendants have violated these Education Code provisions in numerous ways.

144.    First, students suspended or expelled from school for not wearing a proper mask under Defendants' Mask Policy and then threatened with weaponized truancy laws if they do not go into an independent study program who then enter independent study programs are not voluntarily entering into an independent study program.  They are being coerced.

145.    Second, students coerced into independent study programs for not wearing a proper mask under Defendants' Mask Policy have not been and are not being given a required "pupil-parent-educator conference" to determine whether enrollment in independent study is in the best interest of the student.

146.    Third, students who have been coerced into an independent study program for failure to comply with Defendants' Mask Policy have not been given any "access to all existing services and resources in the school in which the pupil is enrolled ... as is available to all other pupils in the school." (Ed. Code, § 51746).

147.    Finally, Defendants have not offered students they unlawfully forced into independent study programs for failure to comply with their Mask Policy the opportunity to transition back to in-person services within PYLUSD, despite the temporary cessation of their current Mask Policy.

148.    By violating the express requirements of the Educational Code provisions noted above, Defendants have caused and continue to cause PYLUSD students, including Plaintiffs, irreparable harm.

149.    A judicial determination of these issues is necessary and appropriate because such a declaration will clarify the parties' rights and obligations, permit them to have certainty regarding those rights and potential liability, and avoid a multiplicity of actions.  An actual and present controversy exists with respect to the disputes between Plaintiffs and Defendants as alleged above (Code Civ. Proc., § 1060).

150.    Plaintiffs have no adequate remedy at law and will suffer irreparable harm if the Court does not declare that removing healthy students to independent study involuntarily for failure to comply with Defendants' Mask Policy is unlawful and unconstitutional. Thus, they seek preliminary and permanent injunctive relief enjoining Defendants from enforcing the PYLUSD Mask Policy now and in the future.

151.    WHEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTH CAUSE OF ACTION

### Violation of California Constitution – Right to Privacy

### (Declaratory and Injunctive Relief)

### (*All Plaintiffs against All Defendants*)

152.    Plaintiffs reallege and incorporate by reference their allegations in each of the preceding paragraphs in this Complaint as if fully set forth herein.

153.    Individuals have a right to privacy under the California Constitution.  Article I, Section I of the California Constitution recognizes that "[a]ll people are by nature free and independent and have inalienable rights" including "pursuing and obtaining…privacy."  This state law privacy right, which was added to the California Constitution by voters in 1972, is far broader than the right to privacy under the federal Constitution. It is the broadest privacy right in America and has been

interpreted by the California Supreme Court to protect both the right to informational privacy and to bodily integrity.  (*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 212).

154.    The right to refuse medical treatment is a constitutionally guaranteed right which must not be abridged.  (*Bartling v. Superior Court* (1984) 163 Cal.App.3d 186, 195; *see also Cruzan v. Dir. Mo. Dep't of Health* (1990) 497 U.S. 261, 278). This right is specifically guaranteed by the California Constitution (art. I, § 1). The constitutional right of privacy guarantees to the individual the freedom to choose to reject, or refuse to consent to, intrusions of his bodily integrity.

155.    Moreover, "when receipt of a public benefit is conditioned upon the waiver of a constitutional right, the government bears a heavy burden of demonstrating the practical necessity for the limitation." (*Robbins, supra,* 38 Cal.3d at 213).

156.    Because the Mask Policy impacts fundamental rights, strict scrutiny applies. The US Supreme Court has recognized a "general liberty interest in refusing medical treatment." (*Cruzan v. Dir., Mo. Dep't of Health* (1990) 497 U.S. 261, 278; *Washington v. Harper* (1990) 494 U.S. 210, 223, 229 (further acknowledging in dicta that, outside of the prison context, the right to refuse treatment would be a "fundamental right" subject to strict scrutiny).

157.    PYLUSD children, including Aidan Palicke, had and have a right to refuse unwanted medical "health" measures such as forced masking and a right to prevent the intrusion of bodily integrity. Being forced to comply with all-day mask wearing is a violation of this right to privacy.

158.    By denying PYLUSD children, including Aidan Palicke, the right to refuse all-day mask wearing and by removing Aidan Palicke and others from YLHS and placing them into independent study for not wearing the type of mask Defendants included in their updated Mask Policy, Defendants have violated their right to privacy.

159.    While this Mask Policy has been temporarily halted, both PYLUSD along with Newsom's SMARTER plan, clearly indicate an intent to keep re-imposing this Mask Policy, and unless these actions are enjoined and declared to be unlawful, Defendants will continue to do so in the future, likely without any meaningful notice, causing irreparable harm to PYLUSD students and perpetuating a continuous feeling of anxiety on the part of the PYLUSD children in anticipation of such re-implementation.

160.    PYLUSD students had and have a reasonable expectation of privacy. In addition, Plaintiff Chris Palicke has a right to protect his son Aidan's privacy interests. Plaintiffs' expectation of medical privacy, bodily autonomy, and freedom from bodily invasion is reasonable.

161.    Defendants' Mask Policy and corresponding actions are a serious invasion of the right to privacy and have caused severe damage to PYLUSD students, and Aidan Palicke, in the following ways: (1) Preventing schoolchildren from accessing facial expressions and non-verbal cues as a normal and assumed part of human association; (2) Encouraging and condoning the threats by teachers with disciplinary write-ups if children do not adjust their masks to a "correct" usage; (3) Subjecting children to all day mask wearing, resulting in  discomfort, oxygen deprivation, carbon dioxide poisoning, increased anxiety, normal social development, skin rashes and other skin conditions, speech development delays, mouth and tooth deformation due to continuous mouth breathing, and speech and language developmental delays.

162.    If the Mask Policy is determined to serve a compelling interest, there are feasible and effective alternatives to controlling the spread of COVID-19 that are less restrictive on privacy interests, particularly where credible data suggests that forced masking has had no significant beneficial impact on the rise or fall of COVID-19 cases, hospitalizations, and deaths, both in school environments or society-wide, and may have made matters worse.

163.    Plaintiffs desire a judicial declaration that the PYLUSD Mask Policy is unconstitutional because it violates students' right to privacy under the California Constitution.

164.    A judicial determination of these issues is necessary and appropriate because such a declaration will clarify the parties' rights and obligations, permit them to have certainty regarding those rights and potential liability, and avoid a multiplicity of actions.  An actual and present controversy exists with respect to the disputes between Plaintiffs and Defendants as alleged above (Code Civ. Proc., § 1060) because both PYLUSD along with Newsom's SMARTER plan clearly indicate an intent to keep re-imposing these failed and dystopian "tools" of forced masking.

165.    Plaintiffs have no adequate remedy at law and will suffer irreparable harm if the Court does not declare the PYLUSD Mask Policy unconstitutional. Thus, they seek preliminary and permanent injunctive relief enjoining Defendants from enforcing the PYLUSD Mask Policy now and

in the future.

166.    WHEREFORE, Plaintiffs pray for relief as set forth below.

## FIFTH CAUSE OF ACTION

### Violation of 21 U.S. Code § 360bbb–3

### (Declaratory and Injunctive Relief)

### (*All Plaintiffs against All Defendants*)

167.    Plaintiffs reallege and incorporate by reference their allegations in each of the preceding paragraphs in this Complaint as if fully set forth herein.

168.    "Under section 564 of the Federal Food, Drug, and Cosmetic Act ("FDCA"), when the Secretary of HHS declares that an emergency use authorization is appropriate, FDA may authorize unapproved medical products or unapproved uses of approved medical products to be used in an emergency to diagnose, treat, or prevent serious or life-threatening diseases or conditions caused by [chemical, biological, radiological, and nuclear] threat agents when certain criteria are met, including there are no adequate, approved, and available alternatives."[10]

169.    The relevant portion of the FDCA, found at 21 U.S. Code § 360bbb–3(e)(1)(A)(ii), imposes the following conditions on the dissemination of products that have received emergency use authorization ("EUA"): "Appropriate conditions designed to ensure that individuals to whom the product is administered are informed:

    (I)      that the Secretary has authorized the emergency use of the product;

    (II)     of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and

    (III)    of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks."

170.    The FDA has issued an EUA on face masks for the general public.  On April 24, 2020, the FDA re-issued an EUA to clarify that face masks, including cloth face coverings, that are

---

[10] *Emergency Use Authorization, FDA,* https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/emergency-use-authorization [as of July 21, 2021].

COMPLAINT

authorized by the EUA are only authorized for use by the general public and health care personnel as source control (i.e., preventing the transmission of infection through a person's respiratory secretions which are produced when speaking, coughing, or sneezing).[11]

171.    Defendants violated 21 U.S. Code § 360bbb–3(e)(1)(A)(ii) (III) by failing to provide the required option to refuse the wearing of masks or certain types of masks and instead enforcing their Mask Policy.

172.    PYLUSD children, including Aidan Palicke, have suffered significant harms by being denied the right to refuse EUA "health" measures and products, such as all-day mask wearing at school.

173.    While the PYLUSD Mask Policy has been temporarily halted, both PYLUSD along with Newsom's SMARTER plan, clearly indicate an intent to keep re-imposing this Mask Policy, and unless these actions are enjoined and declared to be unlawful, Defendants will continue to do so in the future, likely without any meaningful notice, causing irreparable harm to PYLUSD students and perpetuating a continuous feeling of anxiety on the part of the PYLUSD children in anticipation of such re-implementation.

174.    Plaintiffs desire a judicial declaration that the PYLUSD Mask Policy is a violation of federal EUA law.

175.    A judicial determination of these issues is necessary and appropriate because such a declaration will clarify the parties' rights and obligations, permit them to have certainty regarding those rights and potential liability, and avoid a multiplicity of actions.   An actual and present controversy exists with respect to the disputes between Plaintiffs and Defendants as alleged above (Code Civ. Proc., § 1060) because both PYLUSD along with Newsom's SMARTER plan clearly indicate an intent to keep re-imposing these failed and dystopian "tools" of forced masking.

176.    Plaintiffs have no adequate remedy at law and will suffer irreparable harm if the Court does not declare the PYLUSD Mask Policy a violation of federal EUA law. Thus, they seek preliminary and permanent injunctive relief enjoining Defendants from enforcing the PYLUSD Mask

---

[11] *FAQs on the Emergency Use Authorization for Face Masks (Non-Surgical)*, https://www.fda.gov/medical-devices/emergency-situations-medical-devices/faqs-emergency-use-authorization-face-masks-non-surgical.

Policy now and in the future.

177.    WHEREFORE, Plaintiffs pray for relief as set forth below.

**SIXTH CAUSE OF ACTION**

**Violation of the First Amendment -**

**Speech and Associational Rights**

**(Brought Pursuant to 42 U.S.C. § 1983)**

**(Declaratory and Injunctive Relief)**

**(*All Plaintiffs against All Defendants*)**

178.    Plaintiffs reallege and incorporate by reference their allegations in each of the preceding paragraphs in this Complaint as if fully set forth herein.

179.    Under Defendants' Mask Policy and practices, schoolchildren who refuse to wear face masks have not been permitted on the premises of their schools or to participate in organized school activities and were required to remain at home for remote learning, losing the opportunity to associate with other students, teachers and staff.

180.    Exceptions to the mask wearing requirement were not available to the general student population including Plaintiffs.

181.    Governor Newsom has not relinquished his emergency powers declared two years ago on March 4, 2020, and instead has indicated that he and his executive agency, the CDPH, intend to reserve the power to reimpose mask mandates and other restrictions via executive order. Such statements also appear in Governor Newsom's document entitled "SMARTER" published February 17, 2022.

182.    Defendants in this action have claimed that they were only "following orders" and will continue to follow these orders and reinstitute their own unlawful Mask Policy if CDPH and Newsom reinstitute these mask requirements for California K-12 schoolchildren.

183.    However, Defendants cannot "just follow orders" and instead have their own independent legal obligations and duties to both obey constitutional and legal limitations and restraints on their exercise of power as school districts and school officials, and to refrain from breaching the duties of care they owe to their students.

184.    Accordingly, a justiciable controversy exists under the Declaratory Judgment Act, 28 U.S.C. §2201 as to whether Defendants are acting, under color of state law, or have assumed the power, to authorize and facilitate mask mandates and other preventative and restrictive measures imposed on schoolchildren, burdening, restricting and limiting rights of speech, communication, association and privacy protected by the First, Fifth and Fourteenth Amendments to the United States Constitution, giving rise to a right of declaratory and injunctive relief pursuant to 28 U.S.C. §1983, *et seq.*

185.    Mandatory wearing of masks by schoolchildren burdens and impairs protected speech rights, inhibiting and preventing communication between students, and between students, teachers and aides.

186.    Mandatory mask wearing prevents the perception and exchange of non-verbal forms of communication vital and material to the exchange of ideas, thoughts, and emotions.

187.    Mandatory wearing of masks burdens and impairs protected associational rights of schoolchildren, inhibiting and preventing the formation and maintenance of relationships and friendships between schoolchildren, and between schoolchildren and teachers and staff.

188.    Covering the face by masking prevents non-verbal exchanges of information and signaling through facial cues and gestures of emotion, humor, approval and disapproval, joy, anger or despair, encouragement or discouragement of friendship and other non-verbal forms of communication.

189.    Such non-verbal communication is necessary and material to normal human associational rights and interests. Such non-verbal forms of communication are a critical and non-severable part of human speech and association. Such non-verbal communication is necessary and material to normal exchanges of ideas and thoughts.

190.    Schoolchildren, like all human beings, require access to facial expressions and non-verbal cues as a normal and assumed part of human association and the deprivation of such by mandatory mask wearing impairs their liberty and privacy interests.

191.    In addition, mandatory mask usage prevents and inhibits basic communication as words are frequently muffled or students are chilled in their willingness to communicate or express

themselves by the barrier presented by face coverings; students are chilled in exercising their speech rights, in part, because masking prevents the feedback of acceptance, disagreement and other non-verbal cues that complete human thought and communication.

192.   In other ways, the state has imposed restrictions on the ordinary and usual communication, socialization and associational relationships between schoolchildren burdening their rights of association speech and privacy.

193.   Children are regularly chastised by teachers if their masks slip below their nose or if masks are not adjusted properly; children are regularly and routinely threatened with disciplinary write-ups if they do not adjust their masks to a "correct" usage.

194.   Anxiety in schoolchildren caused by such continuing chastisement violates the privacy rights of children and burdens and inhibits the exercise of children's speech and associational rights.

195.   Discipline over the use of masks is a new element in the public schools and in the state's educational program that has changed the relationship between students, and between students and teachers, injected anxiety in the student-teacher relationship, violating the right of privacy of the plaintiffs and their children.

196.   The process of mandatory mask wearing causes anxiety as a direct by-product of school attendance further burdening and interfering with their rights of association and privacy. Masks are worn all day, giving rise to a continuing regimen of mask discipline; masks become wet with saliva, causing discomfort, and interfering with a school child's ordinary comfort and function; the forced wearing of such an unnatural article of clothing further violates children's rights of privacy.

197.   The unnatural forced covering of a part of the children's body, their face, that is normally exposed in ordinary social intercourse violates children's rights of privacy; parent Plaintiffs have not consented to the imposition of this unnatural condition upon their children, violating parent plaintiffs' associational and privacy interests.

198.   All such measures impair and burden speech, association and privacy rights of children in the public schools.

199.   No state interest rises to a sufficient level to support the mass imposition of the Mask Policy and other COVID-19 related preventative measures on California schoolchildren.

200.     Children of all ages, including young children, adolescents, and high school students, are not vulnerable in any material way to COVID-19, suffer minimal hospitalization from COVID-19 and have negligible or statistically non-significant morbidity from this disease.

201.     To the extent any state interest exists in protecting adults working in the schools from the risk of transmission from children, the mask mandate and other preventative measures described above are not the least restrictive and intrusive means of achieving said interest when weighed against the loss and impairment of children's fundamental rights and liberties.

202.     Other less intrusive means of protecting school staff who may have a high or unusual sensitivity to transmission due to infirmity or medical condition include voluntary mask wearing by staff or other voluntary isolating measures by such adults, including desk shields or face shields; for any adults who are potentially vulnerable to COVID-19 transmission because they have not developed anti-bodies following a COVID-19 infection or injection, such condition can be confirmed by making anti-body testing available to school staff who can then assume voluntary protective measures. Allowing staff to engage in such measures when medically necessary will promote any state interest in protecting the health of the small number of potentially vulnerable adults in the schools, while minimizing the burden upon and impairment of schoolchildren's fundamental rights and liberties.

203.     No state interest lies in mass mandates imposing harsh and unnatural limitations on millions of schoolchildren when less intrusive measures can adequately protect the very small class of potentially vulnerable school staff without forcing the serious burden of these mandates on the fundamental rights and liberties of California school children.

204.     Neither CDPH nor any of the Defendants have studied or examined the impact of COVID-19 mask mandates on schoolchildren or released such studies; has held no hearings to evaluate such measures on the development or psychology of children; no public comment has been permitted for testimony from lay witnesses or experts as to such impacts; no evaluation has taken place or been released as to the effect of such measures on children, further violating the plaintiffs' rights to privacy and due process, both substantive and procedural.

205.     The re-imposition of mask mandates and COVID-19 preventative measures over schoolchildren under the Governor's claim that he has the power to reinstate such restraints or the

imposition of such restraints by school districts, as now authorized by the Governor and/or the CDPH will violate the First, Fifth and 14th Amendment rights of plaintiffs and others similarly situated for the reasons set forth in this Complaint.

206.    A judicial determination of these issues is necessary and appropriate because such a declaration will clarify the parties' rights and obligations, permit them to have certainty regarding those rights and potential liability, and avoid a multiplicity of actions.  An actual and present controversy exists with respect to the disputes between Plaintiffs and Defendants as alleged above (Code Civ. Proc., § 1060).

207.    Plaintiffs have no adequate remedy at law and will suffer irreparable harm if the Court does not declare the PYLUSD Mask Policy unconstitutional. Thus, they seek preliminary and permanent injunctive relief enjoining Defendants from enforcing the PYLUSD Mask Policy now and in the future.

208.    WHEREFORE, Plaintiffs pray for relief as set forth below.

## SEVENTH CAUSE OF ACTION

**Violation of the Right to Refuse Unwanted Medical Treatments –**

**Fourteenth Amendment – Substantive Due Process**

**(Brought Pursuant to 42 U.S.C. § 1983)**

**(Declaratory and Injunctive Relief)**

***(All Plaintiffs against All Defendants)***

209.    Plaintiffs reallege and incorporate by reference their allegations in each of the preceding paragraphs in this Complaint as if fully set forth herein.

210.    Plaintiffs, including Plaintiff Chris Palicke on behalf of himself and his son Aidan, have a protected Fourteenth Amendment right to life and health, secured by the Due Process Clause of the United States Constitution, which includes the right to refuse non-consensual administration of any objectionable medical product, and/or to be free from the forced administration of medical procedures and devices that Plaintiff Chris Palicke reasonably believes may cause his son harm.

211.    As well, or in the alternative, Plaintiffs have protected liberty rights against infringement of liberty interests deemed "fundamental" in nature, which the Defendants' Mask Policy

unconstitutionally infringed upon.

212.     These fundamental rights include, but are not limited to: the fundamental right to refuse medical interventions, even those that save one's life, the fundamental right of fit parents to make medical decisions for their children rather than the state or a third party, the fundamental right to a medical exemption from medical devices that a licensed physician has certified may place a person at risk of harm, the fundamental right to refuse medical interventions that are experimental in nature, and the fundamental right to make medical decisions in accordance with one's chosen physician absent state or third-party interference.

213.     As well, Plaintiffs have protected liberty interests, secured by the Due Process Clause of the United States Constitution, international protocols and treaties adopted by and entered into by the United States, and by the laws and regulations of the United States, to informed consent.

214.     Defendants' Mask Policy violated and, if reinstituted, may continue to violate several of these related fundamental and internationally protected rights, including but not limited to the right to be free from forced medical experimentation (also referred to as the right to "informed consent" or the right to "bodily integrity").

215.     This right of informed consent and bodily integrity, particularly in the context of experimental products, is not only acknowledged as a fundamental right pursuant to United States Supreme Court jurisprudence but is also recognized as a *jus cogens* norm under the laws of nations.

216.     As set forth more fully above, masks are defined as experimental products and their forced *or coerced* use constitutes unlawful coerced participation in medical experimentation. No government actor can lawfully force or coerce the use of these experimental products without violating the most fundamental international and constitutional rights.

217.     As well, or in the alternative, Plaintiff Chris Palicke has the fundamental right, secured by the Due Process Clause of the Fourteenth Amendment of the United States Constitution, to make medical decisions on behalf of his son. Plaintiff has not been found to be an unfit parent, and thus is vested with the authority to choose between competing medical opinions about what is safest for his son, and whether to consent to allow his son to participate in using an experimental medical product. This right adheres not only to the parent but to the child as well, whose best interest is served by loving

fit parents having control over medical decisions impacting the child.

218.     Defendants violated and are continuing to violate Plaintiff's fundamental parental rights by attempting to usurp Plaintiff Chris Palicke's authority to decide between competing medical opinions and follow the advice of Plaintiff Chris Palicke and his son Aidan's own treating physician.

219.     As well, or in the alternative, the Mask Policy violates the fundamental right to refuse medical interventions. This right has been deemed fundamental by the Supreme Court and is even protected and upheld in circumstances where the intervention will concededly help rather than harm a patient.

220.     Because the Mask Policy impacts fundamental rights, strict scrutiny applies. The US Supreme Court has recognized a "general liberty interest in refusing medical treatment." (*Cruzan v. Dir., Mo. Dep't of Health* (1990) 497 U.S. 261, 278, 110 S. Ct. 2841, 2851, 111 L.Ed.2d 224, 242; *Washington v. Harper* (1990) 494 U.S. 210, 223, 229 (further acknowledging in dicta that, outside of the prison context, the right to refuse treatment would be a "fundamental right" subject to strict scrutiny).

221.     As mandated medical treatments are a substantial burden, Defendants must prove that the Mask Policy is narrowly tailored to meet a compelling interest.

222.     Both facially and as applied, the Mask Policy promulgated and applied by Defendants is not sufficiently narrowly tailored to impose the least amount of harm on fundamental protected rights. Nor does it serve a compelling interest.

223.     No credible evidence exists to show that masks prevent or even slow the spread of COVID-19 or any of its variants.

224.     No credible evidence exists to show that masks on healthy asymptomatic children do anything to prevent or slow the spread of COVID-19 or any of its variants.

225.     Public health will not be imperiled if children are allowed to opt out of the Mask Policy entirely or to wear masks that are of less risk to their health and welfare, as determined by their parents or own treating physicians.

226.     Public health would not have been imperiled if Aidan Palicke had been allowed to opt out of the Mask Policy or to continue to wear the mesh mask that his parents believed would be safest

for him to wear.

227.    Considering the serious rights at stake, and the dearth of evidence to show Defendants' Mask Policy is effective or necessary, there is no rational basis reason to mandate masks in school for any student in K-12.  Inflexibly mandating a child to use an experimental medical device when there are known harms from the device simply shocks the conscience.

228.    Pursuant to the Unconstitutional Conditions Doctrine, Defendants cannot condition receipt of a benefit, such as access to school and educational opportunities, on the waiver of the right to bodily autonomy and privacy.

229.    Plaintiffs respectfully request that the Court, pursuant to 42 U.S.C. § 1983 and other applicable law, enter a declaratory judgment that Defendants' Mask Policy violates Plaintiffs' fundamental rights under the substantive due process clause, issue an order permanently enjoining enforcement of the Mask Policy.

230.    A judicial determination of these issues is necessary and appropriate because such a declaration will clarify the parties' rights and obligations, permit them to have certainty regarding those rights and potential liability, and avoid a multiplicity of actions.  An actual and present controversy exists with respect to the disputes between Plaintiffs and Defendants as alleged above (Code Civ. Proc., § 1060).

231.    Plaintiffs have no adequate remedy at law and will suffer irreparable harm if the Court does not declare the PYLUSD Mask Policy unconstitutional. Thus, they seek preliminary and permanent injunctive relief enjoining Defendants from enforcing the PYLUSD Mask Policy now and in the future.

232.    WHEREFORE, Plaintiffs pray for the relief as set forth below.

### EIGHTH CAUSE OF ACTION

**Violation of Education Code Sections 51746, 51747, 51749.5, 51749.6**

**(Damages)**

***(Plaintiffs Chris Palicke for himself and as***

***Guardian ad Litem for Aidan Palicke against All Defendants)***

233.    Plaintiffs reallege and incorporate by reference their allegations in each of the

preceding paragraphs in this Complaint as if fully set forth herein.

234.    Under Education Code section 51749.5(a)(12), a student shall not be required to enroll in independent study courses.

235.    This prohibition of forced independent study is confirmed and reinforced in title 5, section 11700 of the California Code of Regulations, which states that "independent study is an optional educational alternative in which no pupil may be required to participate," and "a pupil's choice to commence or continue in independent study, must not be coerced."

236.    Under Education Code section 51749.5(a)(9), a local educational agency must develop a plan for students in independent study wishing to return to in-person learning within five days of the request.

237.    Under Education Code section 51749.6, a student and a parent or legal guardian must review and approve any independent study plan for any student under 18 years of age before an independent study plan may commence.

238.    Education Code Section 51747 provides that a local educational agency shall not receive funding for an independent study program unless independent study is an optional educational alternative in which "no pupil may be required to participate." (Ed. Code, § 51747, subd. (g)(8)).  A school may enroll a child in such a program only if there has been a "pupil-parent-educator conference" to determine whether enrollment in independent study is in the best interest of the child (id., § 51747, subd. (h)(2)) and "a signed written agreement for independent study from the pupil, or the pupil's parent or legal guardian if the pupil is less than 18 years of age" (id., § 51747, subd. (f)(9)(F)).

239.    Additionally, Education Code Section 51746 provides that a child enrolled in a remote learning or independent study program cannot be excluded from school facilities. Rather, the school "shall ensure the same access to all existing services and resources in the school in which the pupil is enrolled ... as is available to all other pupils in the school." (Ed. Code, § 51746).

240.    A child enrolled in an independent study program always retains the option to return to his or her regular classroom for in-person instruction. The school is required to "transition pupils whose families wish to return to in-person instruction from independent study expeditiously, and, in

no case, later than five instructional days." (Ed. Code, § 51747, subd. (f)).

241.    By removing Aidan Palicke from YLHS and placing him into independent study for not wearing the type of mask Defendants included in their updated Mask Policy, Defendants have violated these education code provisions in numerous ways.

242.    First, Aidan did not voluntarily go into an independent study program.  In January and February of 2022, Aidan was told by Defendants, including Defendant Dinh and Defendant McAlindin, that Aidan would not be allowed back to school unless he wore an approved mask under Defendants' new Mask Policy.  Aidan was also threatened by Defendants that he would be declared a truant if he did not enroll in independent study or home study.

243.    Because Defendants would not allow Aidan to return to campus without wearing an approved mask and then weaponized truancy laws against Aidan and his family despite Aidan wanting to attend school, Aidan was finally coerced into enrolling in an independent study program so that he could complete his junior year and not fall further behind.

244.    Second, Defendants did not offer or conduct a "pupil-parent-educator conference" with Plaintiff Chris Palicke or his wife Shari to determine whether enrollment in independent study was in the best interest of Aidan.

245.    Third, Defendants did not provide Aidan with any access to all existing services and resources in the school in which the pupil is enrolled ... as is available to all other pupils in the school." (Ed. Code, § 51746).  Rather, Defendants made it quite clear that Aidan was not allowed to return to campus or access in-person services unless he complied with the Mask Policy.

246.    Finally, Defendants have not offered to transition Aidan back to in-person services at YLHS despite the temporary cessation of their current Mask Policy, nor made any assurances to Aidan that they would not involuntarily remove him again should Defendants opt to reinstitute their Mask Policy.

247.    By violating the express requirements of the Educational Code provisions noted above, Defendants has caused and continue to cause Aidan Palicke actual harm.

248.    The actions, policies and determinations made by Defendants in unlawfully removing Aidan into an independent study program against his wishes caused Plaintiff Chris Palicke and his son

Aidan significant harms, as further described hereinabove.

249.    Plaintiff Chris Palicke on behalf of himself and his minor son, Aidan, suffered damages in an amount that will be proved at trial and which exceeds $25,000.

250.    WHEREFORE, Plaintiffs pray for relief as set forth below.

## NINTH CAUSE OF ACTION

### Negligence

### (Damages)

### (*Plaintiffs Chris Palicke for himself and as Guardian ad Litem for Aidan Palicke against All Defendants*)

251.    Plaintiffs reallege and incorporate by reference their allegations in each of the preceding paragraphs in this Complaint as if fully set forth herein.

252.    A special relationship exists between the students of PYLUSD and all Defendants, which arises from the mandatory character of school attendance and comprehensive control over students exercised by school personnel.

253.    A special relationship existed between Aidan Palicke and all Defendants, which arises from the mandatory character of school attendance and comprehensive control over students exercised by school personnel.

254.    Defendants, and each of them, owed a duty to exercise reasonable care in the supervision of Aidan Palicke, a student within their care and custody.

255.    Defendants, and each of them also had a legal obligation and duty to properly follow the statutory requirements of Education Code sections 489000, 48900.5, 48910, 48213, 49451, prior to suspending and/or expelling Aidan Palicke and involuntarily placing him into independent study for failing to comply with their Mask Policy.

256.    Defendants, and each of them, also had a legal obligation and duty to properly follow the statutory requirements of federal emergency use authorization law and provide Aidan the right to refuse experimental mask products. (21 U.S. Code § 360bbb–3).

257.    The consequential ramifications of forcing students to wear masks for extended periods during a school day have known disproportional risks to support any benefits such as:

a. Those who have myopia can have difficulty seeing because the mask fogs their glasses. (This has long been a problem for medical students in the operating room.)

b. Masks can cause severe acne and other skin problems.

c. The discomfort of a mask distracts some students from learning.

d. By increasing airway resistance during exhalation, masks can lead to increased levels of carbon dioxide in the blood.

e. Masks can be vectors for pathogens if they become moist or are used for too long.

f. Masks may exacerbate anxiety or breathing difficulties for some students.

g. Some students compensate for such difficulties by breathing through their mouths. Chronic and prolonged mouth breathing can alter facial development. It is well-documented that children who mouth-breathe because adenoids block their nasal airways can develop a mouth deformity and elongated face.

h. Facial expressions are integral to human connection. Covering a student's face mutes these nonverbal forms of communication and can result in robotic and emotionless interactions, anxiety and depression.

258.   Defendants deliberately disregarded the harmful effects of their Mask Policy on all students, including Aidan Palicke, and therefore breached their duty of care to all students, including Aidan Palicke, by forcing them to comply with their Mask Policy.

259.   Defendants also breached their duty of care to Aidan Palicke by failing to properly follow all necessary Education Code provisions and procedures prior to suspending and expelling Aidan Palicke and for involuntarily placing him into independent study for failing to comply with their Mask Policy.

260.   Defendants also breached their duty of care by fraudulently claiming that Aidan was a "clear and present danger" to others, despite Defendants knowing that Aidan did not have any indication of having an infectious disease, living with anyone with an infectious disease, or presenting a health risk or danger to anyone within PYLUSD at the time he was removed from YLHS for failing to comply with Defendants' Mask Policy.

261.   Defendants, and each of them, breached their duty of care to Aidan Palicke by

harassing, bullying, discriminating against, destroying his property and otherwise retaliating against Aidan Palicke as further described herein.

262.    As a direct result and proximate result of Defendants' acts, as hereinabove alleged, Aidan Palicke has suffered general and special damages.

263.    The actions, policies and determinations made by Defendants, as more fully described in the paragraphs herein, directly and proximately caused personal injury and/or financial damages to Chris and Aidan Palicke as further described hereinabove.

264.    As a proximate result of the breaches of duty described herein, Plaintiff Chris Palicke on behalf of himself and his minor son, was damaged in an amount that will be proved at trial and which exceeds $25,000.

265.    WHEREFORE, Plaintiffs, pray for relief as set forth below.

## TENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Damages)

### (*Plaintiffs Chris Palicke for himself and as Guardian ad Litem for Aidan Palicke against All Defendants*)

266.    Plaintiffs reallege and incorporate by reference their allegations in each of the preceding paragraphs in this Complaint as if fully set forth herein.

267.    Defendants owed a duty to act reasonably towards Plaintiff Chris Palicke and his son Aidan with regard to implementing so-called safety measures at PYLUSD.

268.    Defendants created, implemented, and enforced a Mask Policy without conducting any necessary risk-benefit analysis, including a consideration of whether mandating more restrictive masks required by its new Mask Policy would be detrimental to the health, safety, mental well-being, speech development, associational rights, or basic human dignity rights of the students in their care.

269.    Defendants enforced this Mask Policy abusively and selectively by discriminating against Aidan Palicke for wearing the same mesh mask as many other students, teachers, and school officials had been wearing and continued to wear even after Defendants announced its updated Mask Policy.

270.     Defendants harassed and discriminated against Aidan Palicke by pulling him out of his classrooms, sending him to the office multiple times, segregating him from his peers, forcing him to take his finals outside in the cold for hours, and encouraging others to ridicule, mock, and bully Aidan for not complying with Defendants' updated Mask Policy, all in violation of PYLUSD's own anti-discrimination and bullying policies and California state law. (*See e.g.,* Ed. Codes 48213, 49451, 48900, 48900.5, 48910, 48903, 48911).

271.     Further, Defendant Bloom also engaged in extreme and outrageous retaliatory actions against Aidan and Chris Palicke by intentionally "losing" Aidan's physics notebook, which Defendant Bloom insisted Aidan turn in to him in order to receive his grade in Mr. Bloom's class.  Defendant Bloom later claimed he had "lost" Aidan's notebook, which contained all of Aidan's notes for class for the entire year.  On information and belief, this outrageous behavior by Mr. Bloom was in retaliation for Aidan and Chris Palicke's filing of a claim against Defendants for their wrongful actions against his son and naming Defendant Bloom as one of the offenders.

272.     Defendants ultimately removed Aidan from school against his will and banned him from YLHS campus by fraudulently claiming that he was a "clear and present danger" to the health and safety of the YLHS community, despite Defendants knowing that Aidan did not have any infectious disease, showed no symptoms of having an infectious disease, did not live with anyone with an infectious disease, and was not a "clear and present" danger to the PYLUSD or YLHS community at all.

273.     Defendants engaged in such wrongful actions intentionally and recklessly in order to punish Plaintiff Chris Palicke and his son Aidan and serve as a precautionary tale to all other students at YLHS who might also not want to comply with the Mask Policy or other coercive "health" measures in Defendants' RTS Plan.

274.     Defendants' actions in violating various provisions of the Education Codes noted herein and their targeting, discriminating against, harassing, mocking, segregating and encouraging others to bully Aidan Palicke was extreme and outrageous behavior.

275.     As a result of Defendants' extreme and outrageous behavior, Aidan chose to withdraw from his beloved track team, and has since suffered severe feelings of anxiety, depression, isolation,

confusion, and betrayal.

276.    Defendants knew or should have known that their extreme and unnecessary conduct would cause or be likely to cause severe emotional distress for this young man.

277.    It shocks the conscience that Defendants would predicate the continued enrollment of a student at YLHS on compliance with a more restrictive Mask Policy using experimental medical products that have not been approved by the FDA and that have been shown to be dangerous to children and damaging to their health and well-being.

278.    It shocks the conscience that Defendants would deliberately weaponize a "clear and present" danger provision in the Education Code meant to protect against infectious disease by knowingly and fraudulently labeling healthy students like Aidan Palicke as such in order to remove them to independent study for failing to comply with a Mask Policy.

279.    Plaintiffs Chris Palicke, on behalf of himself and his son Aidan, has been damaged in an amount to be proved at trial, but which exceeds $25,000.

280.    Plaintiffs Chris Palicke, on behalf of himself and his son Aidan, is further entitled to exemplary damages due to the conduct of Defendants as described herein.

281.    WHEREFORE, Plaintiffs pray for relief as set forth below.

## ELEVENTH CAUSE OF ACTION

### Negligent Inflction of Emotional Distress

### (Damages)

### (*Plaintiffs Chris Palicke for himself and as Guardian ad Litem for Aidan Palicke against All Defendants*)

282.    Plaintiffs reallege and incorporate by reference their allegations in each of the preceding paragraphs in this Complaint as if fully set forth herein.

283.    Defendants owed a duty to act reasonably towards Plaintiff Palicke and his son Aidan with regard to implementing so-called safety measures at PYLUSD.

284.    Defendants created, implemented, and enforced a Mask Policy without conducting any necessary risk-benefit analysis, including a consideration of whether mandating more restrictive masks required by its new Mask Policy would be detrimental to the health, safety, mental well-being, speech

development, associational rights, or basic human dignity rights of the students in their care.

285. Defendants enforced this Mask Policy abusively and selectively by discriminating against Aidan Palicke for wearing the same mesh mask as many other students, teachers, and school officials had been wearing and continued to wear even after Defendants announced its updated Mask Policy.

286. Defendants harassed and discriminated against Aidan Palicke by pulling him out of his classrooms, sending him to the office multiple times, segregating him from his peers, forcing him to take his finals outside in the cold for hours, and encouraging others to ridicule, mock, and bully Aidan for not complying with Defendants' updated Mask Policy, all in violation of PYLUSD's own anti-discrimination and bullying policies and California state law. (*See e.g.,* Ed. Codes 48213, 49451, 48900, 48900.5, 48910, 48903, 48911).

287. Further, Defendant Bloom also engaged in extreme and outrageous retaliatory actions against Aidan and Chris Palicke by intentionally "losing" Aidan's physics notebook, which Defendant Bloom insisted Aidan turn in to him to receive his grade in Mr. Bloom's class. Defendant Bloom later claimed he had "lost" Aidan's notebook, which contained all of Aidan's notes for class for the entire year. On information and belief, this outrageous behavior by Mr. Bloom was in retaliation for Aidan and Chris Palicke's filing of a claim against Defendants for their wrongful actions against his son and naming Defendant Bloom as one of the offenders.

288. Defendants ultimately removed Aidan from school against his will and banned him from YLHS campus by fraudulently claiming that he was a "clear and present danger" to the health and safety of the YLHS community, despite Defendants knowing that Aidan did not have any infectious disease, showed no symptoms of having an infectious disease, did not live with anyone with an infectious disease, and was not a "clear and present" danger to the PYLUSD or YLHS community at all.

289. Defendants engaged in such wrongful actions intentionally and recklessly to punish Plaintiff Palicke and his son Aidan and serve as a precautionary tale to all other students at YLHS who might also not want to comply with the Mask Policy or other coercive "health" measures in Defendants' RTS Plan.

290.    Defendants' actions in violating various the Education Codes noted herein and their targeting, discriminating against, harassing, mocking, segregating, and encouraging others to bully Aidan Palicke was extreme and outrageous behavior.

291.    As a result of Defendants' extreme and outrageous behavior, Aidan chose to withdraw from his beloved track team, and has since suffered severe feelings of anxiety, depression, isolation, confusion, and betrayal.

292.    Defendants knew or should have known that their extreme and unnecessary conduct would cause or be likely to cause severe emotional distress for this young man.

293.    It shocks the conscience that Defendants would predicate the continued enrollment of a student at YLHS on compliance with a more restrictive Mask Policy using experimental medical products that have not been approved by the FDA and that have been shown to be dangerous to children and damaging to their health and well-being.

294.    It shocks the conscience that Defendants would deliberately weaponize a "clear and present" danger provision in the Education Code meant to protect against infectious disease by knowingly and fraudulently labeling healthy students like Aidan Palicke as such in order to remove them to independent study for failing to comply with a Mask Policy.

295.    Plaintiff Chris Palicke, on behalf of himself and his son Aidan, has been damaged in an amount to be proved at trial, but which exceeds $25,000.

296.    Plaintiff Chris Palicke, on behalf of himself and his son Aidan, is further entitled to exemplary damages due to the conduct of Defendants as described herein.

297.    Wherefore, Plaintiffs pray for relief as set forth below.

## TWELFTH CAUSE OF ACTION

### Violation of Article IX of the California Constitution

### (Damages)

### (*Plaintiffs Chris Palicke for himself and as Guardian ad Litem for Aidan Palicke against All Defendants*)

298.    Plaintiffs reallege and incorporate by reference their allegations in each of the preceding paragraphs in this Complaint as if fully set forth herein.

299.     Article IX, section 1, of the California Constitution provides: "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the Legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral, and agricultural improvement."

300.     Article IX, section 5 of the California Constitution provides: "The Legislature shall provide for a system of common schools by which a free school shall be kept up and supported in each district at least six months in every year ...."

301.     By violating numerous California statutory provisions regarding the suspension and expulsions of students for "disruption" or "defiance" and by placing Aidan Palicke involuntarily into independent study for his failure to comply with Defendants' Mask Policy,  Defendants, through their decisions and other actions recited herein, have denied Aidan Palicke of his fundamental right to an education that provides a "general diffusion of knowledge and intelligence essential to the preservation of the rights and liberties of the people," ensures the opportunity to become proficient according to the state of California's standards, develop the skills and capacities necessary to achieve economic and social success in our competitive society, and participate meaningfully in political and community life.

302.     By preventing Aidan Palicke from returning to school for in-person instruction for failing to comply with their Mask Policy, and by fraudulently using the "clear and present danger" provision of the Education Code to do so, Defendants, through their decisions and actions recited herein, have interfered, to the detriment of Aidan Palicke, with the state's "system of common schools by which a free school shall be kept up and supported in each district at least six months in every year ...."

303.     The alleged government interest in slowing the spread of the virus that causes COVID-19 does not justify this infringement on Aidan Palicke's constitutional right to a quality education.

304.     Defendants' decisions and other actions recited herein are significantly broader than necessary to serve the alleged government interest in slowing the spread of the virus that causes COVID-19.

305.     Defendants' decisions and other actions recited herein are and were not narrowly

tailored to minimize infringements on students' educational rights.

306.     Defendants' actions resulted in the deprivation of Aidan Palicke's fundamental right to a free public education in violation of the California Constitution, resulting in significant damages to Plaintiff Palicke and his son, Aidan, in an amount to be determined at trial but which exceeds $25,000.

307.     WHEREFORE, Plaintiffs pray for relief as set forth below.

## THIRTEENTH CAUSE OF ACTION

### Equal Protection under the California Constitution

### (Damages)

### (*Plaintiffs Chris Palicke for himself and as Guardian ad Litem for Aidan Palicke against All Defendants*)

308.     Plaintiffs reallege and incorporate by reference their allegations in each of the preceding paragraphs in this Complaint as if fully set forth herein.

309.     Since Defendants are state actors enforcing governmental policies and objectives, they are subject to constitutional limitations and scrutiny.

310.     Under the Equal Protection Clause of the California Constitution, "[a] person may not be ... denied equal protection of the laws." (Cal. Const., Art. I, § 7, subd. (a)). Further, "[a] citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens." (Cal. Const., Art. I, § 7, subd. (b)).

311.     "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. This initial inquiry is not whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the law challenged." (*Cooley v. Super. Ct.* (2002) 29 Cal.4th 228, 253; *Deese v. City of Lodi* (1937) 21 Cal.App.2d 631, 635 [holding health restrictions applicable only to certain industries violated equal protection guarantees]).

312.     The government's exercise of police power "cannot be so used as to arbitrarily limit the rights of one class of people and allow those same rights and privileges to a different class, where the public welfare does not demand or justify such a classification." (*Deese*, *supra*, 21 Cal.App.2d at 640).

313.     Where a rule results in infringement of a fundamental right, such rule is subject to strict scrutiny.  (*Washington v. Harper* (1990) 494 U.S. 210, 223, 229). Strict scrutiny demands that the government actor establish (1) it has a compelling interest that justifies the challenged rule; (2) the rule is necessary to further that interest; and (3) the rule is narrowly drawn to achieve that end.

314.     Although Aidan Palicke wore the same mesh mask as many other students, teachers, and school officials had been wearing and continued to wear even after Defendants announced its updated Mask Policy, Defendants treated him differently, taking numerous punitive measures against him.

315.     Specifically, Defendants targeted Aidan as a "clear and present danger" to others, despite Defendants knowing that Aidan did not have any indication of having an infectious disease, living with anyone with an infectious disease, or presenting a health risk or danger to anyone within PYLUSD at the time he was removed from YLHS for failing to comply with Defendants' Mask Policy. In addition, Defendants harassed and discriminated against Aidan Palicke by pulling him out of his classrooms, sending him to the office multiple times, segregating him from his peers, forcing him to take his finals outside in the cold for hours, and encouraging others to ridicule, mock, and bully Aidan for not complying with Defendants' updated Mask Policy.

316.     Further, Defendant Bloom also engaged in retaliatory actions against Aidan and Chris Palicke by intentionally "losing" Aidan's physics notebook, which Defendant Bloom insisted Aidan turn in to him in order to receive his grade in Mr. Bloom's class.  Defendant Bloom later claimed he had "lost" Aidan's notebook, which contained all of Aidan's notes for class for the entire year.

317.     Defendants engaged in such wrongful actions in order to punish Plaintiff Chris Palicke and his son Aidan and serve as a precautionary tale to all other students at YLHS who might also not want to comply with the Mask Policy or other coercive "health" measures in Defendants' RTS Plan.

318.     By preventing Aidan Palicke from returning to school for in-person instruction for failing to comply with their Mask Policy and coercing Aidan into independent study, while allowing other students, teachers, school employees to continue to wear the same or similar types of masks or no mask at all, Defendants violated Aidan Palicke's right to equal protection under the law.

319.     Defendants' decisions and other actions recited herein are significantly broader than

necessary to serve the alleged government interest in slowing the spread of the virus that causes COVID-19.

320.     Defendants' decisions and other actions recited herein are and were not narrowly tailored to minimize infringements on students' educational rights.

321.     Defendants' actions resulted in the deprivation of Aidan Palicke's fundamental right to equal protection under the Constitution, resulting in significant damages to Plaintiff Chris Palicke and his son, Aidan, in an amount to be determined at trial but which exceeds $25,000.

322.     WHEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTEENTH CAUSE OF ACTION

### Violation of Cal. Civil Code Section 52.1 (Bane Act)

### (Damages)

### (*Plaintiffs Chris Palicke for himself and as Guardian ad Litem for Aidan Palicke against All Defendants*)

323.     Plaintiffs reallege and incorporate by reference their allegations in each of the preceding paragraphs in this Complaint as if fully set forth herein.

324.     The conduct of Defendants in coercing Aidan Palicke into independent study for not complying with Defendants' Mask Policy also violates California Civil Code Section 51.2, known as the Bane Act.

325.     Under the Bane Act, if a person or person, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation or coercion with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or rights secured by the Constitution or laws of California, the individual whose rights have been interfered with, or attempted to be interfered with, may institute and prosecute in their own name and on their own behalf a civil action for damages, injunctive relief, and other appropriate equitable relief to protect the peaceful enjoyment of the right or rights secured. (Cal. Civ. Code 52.1(b)-(c)).

326.     Defendants' have violated Plaintiff Chris Palicke's various constitutional and legal rights as a parent, as well as his son Aidan's rights as an individual citizen of the United States and

the state of California by, *inter alia*, coercing Aidan Palicke into independent study against his and his parents' wishes and denying Aidan his rights to an in-person education under the California Constitution, as well as his rights to privacy, due process, equal protection and the right to refuse unwanted and experimental medical treatments under both state and federal laws.

327.    As a direct and proximate result of Defendants' actions and the aforementioned violations of Plaintiff Chris Palicke's and his son Aidan's rights under both federal and state Constitutions and other federal and state laws, Plaintiff Chris Palicke, on behalf of himself and his son Aidan, have suffered damages to be determined at trial but which exceeds $25,000.

328.    WHEREFORE, Plaintiffs pray for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.    As to the First Cause of Action, that the Court: (a) declare that Defendants' suspending and/or expelling students from in-person schooling for failure to comply with Defendants' Mask Policy is unlawful and in violation of the specific terms for suspension and/or expulsion under Education Code sections 48900 and 48910, and (b) issue a Temporary Restraining Order, Preliminary Injunction, and a Permanent Injunction enjoining Defendants from unlawfully suspending and/or expelling students from in-person schooling for failing to comply with Defendants' Mask Policy.

2.    As to the Second Cause of Action, that the Court: (a) declare that Defendants' suspending, expelling, or otherwise removing a healthy student from in-person schooling using the pretense that the student is a health risk and/or a "clear and present danger" under Education Codes sections 48213 and 49451 is unlawful; and (b) issue a Temporary Restraining Order, Preliminary Injunction, and a Permanent Injunction enjoining Defendants from unlawfully and fraudulently suspending, expelling, or otherwise removing healthy students from in-person schooling on the pretense that such students pose a health and safety risk and/or are a "clear and present danger" under these Education Code provisions, including, but not limited to, the pretense that the student poses a health risk and/or is a "clear and present danger" due to the student's failure to comply with Defendants' Mask Policy.

3.    As to the Third Cause of Action, that the Court: (a) declare that Defendants'

suspending, expelling, or otherwise removing healthy students from in-person schooling and coercing them into independent study programs, including but not limited to coercing them into independent study programs due to a student's failure to comply with Defendants' Mask Policy, is unlawful and in violation of Education Code sections 51746, 51747, 51749.5, 51749.6; and (b) issue a Temporary Restraining Order, Preliminary Injunction, and a Permanent Injunction enjoining Defendants from unlawfully suspending, expelling, or otherwise removing healthy students from in-person schooling and coercing them into independent study programs, including but not limited to, coercing healthy students into independent study programs for the student's failure to comply with Defendants' Mask Policy.

4.      As to the Fourth Cause of Action, that the Court: (a) declare that Defendants' Mask Policy is unlawful and violates a students' Right to Privacy under the California Constitution; and (b) issue a Temporary Restraining Order, Preliminary Injunction, and a Permanent Injunction enjoining Defendants from further enforcing its Mask Policy, now or in the future.

5.      As to the Fifth Cause of Action, that the Court: (a) declare that Defendants' Mask Policy is unlawful and violates a student's federally guaranteed right to refuse an EUA product; and (b) issue a Temporary Restraining Order, Preliminary Injunction, and a Permanent Injunction enjoining Defendants from further enforcing its Mask Policy, now or in the future.

6.      As to the Sixth Cause of Action, that the Court: (a) declare that Defendants' Mask Policy is unlawful and violates a student's First Amendment speech and associational rights; and (b) issue a Temporary Restraining Order, Preliminary Injunction, and a Permanent Injunction enjoining Defendants from further enforcing its Mask Policy, now or in the future.

7.      As to the Seventh Cause of Action, that the Court: (a) declare that Defendants' Mask Policy is unlawful and violates a student's substantive due process rights, including the right to refuse unwanted medical treatments, under the Fourteenth Amendment of the U.S. Constitution; and (b) issue a Temporary Restraining Order, Preliminary Injunction, and a Permanent Injunction enjoining Defendants from further enforcing its Mask Policy, now or in the future.

8.      As to the Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth and Fourteenth Causes of Action, that Plaintiff Chris Palicke, on behalf of himself and his minor son Aidan, be awarded

monetary damages for negligence, negligence infliction of emotional distress, intentional infliction of emotional distress, and the violation of the state and federal laws and Constitutional provisions stated hereinabove in an amount to be proven at trial; and

9.     As to all causes of action, as applicable, for a declaration of this Court of the respective rights and responsibilities and liabilities of and amongst the parties and each of them; and

10.     As to all causes of action, as applicable, for an award of punitive damages to deter future reckless conduct by these Defendants; and

11.     That this Court declare Plaintiffs are a prevailing party and award Plaintiffs the reasonable costs and expenses of this action, including reasonable attorneys' fees as allowed by law and/or contract; and

12.     That the Court find that this action is seeking to enforce an important right affecting the public interest and that Plaintiffs should recover their costs and legal fees under section 1021.5 of the Code of Civil Procedure; and

13.     That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial on matters that may be so tried.

Respectfully submitted,

FACTS LAW TRUTH JUSTICE, LLP

Dated: April 7, 2022

Rita Barnett-Rose
Jessica R. Barsotti
Nicole C. Pearson
Attorney for Plaintiffs

**EXHIBIT A**

PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT
RISK MANAGEMENT
1301 E. ORANGETHORPE AVE.
PLACENTIA, CA 92870
(714) 985-8476

### CLAIM FOR DAMAGES
To Person or Property

(This claim form to be date stamped "Received" by Placentia-Yorba Linda Unified School District)

| INSTRUCTIONS | RESERVE FOR FILING STAMP |
|---|---|
| A. Subject to certain exceptions, a claim relating to a cause of action for death or for injury to person or to personal property must be presented no later than the 180th day after the occurrence (California Gov. Code Sec. 911.2). | Received: |
| B. Subject to certain exceptions, a claim relating to a cause or action not mentioned in instruction A above must be presented no later than one year after the occurrence (California Gov. Code Sec. 911.2). | |
| C. Read the entire claim form before filing. | |
| D. This claim form must be signed. | |
| E. Attach separate sheets, if necessary, to give full details. SIGN EACH ATTACHED SHEET. | |

| | |
|---|---|
| 1. Name of claimant<br><br>Aidan Palicke | 2. Age of claimant  16<br><br>(if parent/guardian is preparing the form) |
| 3. Home address of claimant - Street, City, Zip Code<br>4791 Granada Drive, Yorba Linda, 92886 | 4. Business address of claimant - Street, City, Zip Code |
| 5. Home Telephone Number<br>714 742 3790 | 6. Business Telephone Number |

7.  Give address to which you desire notices or communications to be sent regarding this claim.

4791 Granada Drive, Yorba Linda, 92886

8.  WHEN did INJURY or DAMAGE occur?  Give date and time of day.

1/13/2022 to Present Day

9.  WHERE did INJURY or DAMAGE occur?  Describe fully, and locate on a diagram below or on a separate sheet of paper where appropriate.  Give street names, addresses and measurements from landmarks.

Yorba Linda High School.  See attached document with details.

10.  HOW and under what circumstances did the INJURY or DAMAGE occur?  Give full details.

See attached document with details.

11.  WHAT particular ACTION or OMISSION by the district or its employees caused the alleged INJURY or DAMAGE?  Include name(s) of employee(s), if known.

See attached document with details.

12. WHAT sum do you claim? Include the estimated amount of any prospective loss insofar as it may be known at the time of the presentation of this claim, together with the basis for computation for the amount claimed. Attach estimates or bills. Submit at least two (2) written estimates on property claims.

This claim exceeds $25,000 _____ $ _____

_____ $ _____

Total Amount Claimed $ _____

---

13. LIST insurance payments received, if any, and names of insurance companies.

N/A

---

14. LIST names and addresses of witnesses, doctors and hospitals.

See attached document with details.

---

| 15. Please print or type name of person signing this claim form.<br><br>Chris Palicke | 16. Relationship to Claimant<br><br>Father |
|---|---|
| 17. Signature of Claimant or person filing on his behalf<br><br>*[signature]* | 18. Date<br><br>2/10/2022 |

NOTICE: Section 72 of the California Penal Code provides: Every person who, with intent to defraud, presents for payment to any school district any false or fraudulent claim, is guilty of a felony punishable by fine and/or imprisonment. All claimants may be required to be examined as to their claim under oath.

This form is provided pursuant to Government Code Section 910.4 and shall be used by any person presenting a claim to the district under Government Code Section 900 et seq. If additional space is needed for any of the required information, please attach additional sheets

Ref. California Government Code Sections 910-913.2

CLAIMS MUST BE FILED WITH PUBLIC ENTITY (Government Code Section 915a).

Please return this form to:  Placentia-Yorba Linda Unified School District
Risk Management
1301 E. Orangethorpe Ave.
Placentia, CA 92870

**<u>Government Torts Claim Act Complaint (Gov. Code Section 911.2) against PYLUSD and various school officials</u>**

**<u>Attachment to Government Tort Claim Form</u>**

To: Placentia-Yorba Linda Unified School District ("PYLUSD")

From:  Aidan, Shari, and Chris Palicke

Date:  2-7-22

**Name of PYUSD Employees involved in Incidents:**
      Dr. Elsasser – Superintendent PYLUSD
      Richard McAlindin – Assistant Superintendent Executive Services PYLUSD
      Linda Adamson – Assistant Superintendent Educational Services PYLUSD
      Bird Potter – Vice Principal YL HS (Yorba Linda High School)
      Richard Dinh – Principal YL HS
      John Domen – History Teacher
      Dana Gigliotti – Spanish teacher
      Madison Waltemeyer
      Mr Bloom – Physics Teacher
      Mrs Ferris – AP Language Teacher
      Mrs Chavez – Math Teacher
      David Okamoto – Assistant principal
      Kino Oaxaca – Soccer Coach

**PYLUSD Board Members**
      Marilyn Andersen
      Carrie Buck
      Leandra Blades
      Sean Youngblood
      Karin Freeman

**Name of Claimant:**  Aidan Palicke, (filed by Chris Palicke, on behalf of his minor son, Aidan)
**Date of Birth of Claimant:**  4/22/2005
**Home Address:** 4791 Granada Drive, Yorba Linda, CA 92886
**Address to Which Claimant Desires Notices or Communications to be Sent Regarding Claim: 4791 Granada Drive, Yorba Linda, CA  92886**

**<u>What damages are you claiming</u>**: physical, mental/emotional pain and suffering, medical and mental health expenses, attorneys' fees and costs, any other relief deemed just and proper.

1

**Date and Time of Incidents**:  Beginning January 13, 2022 and ongoing.

**January 13, 2022**

**Yorba Linda High School**

On January 13, 2022, Aidan Palicke went to Yorba Linda High School ("YLHS") wearing a mask similar in kind to other mesh and/or breathable masks that many students and teachers were and had been wearing without incident throughout the 2021-2022 school year at PYLUSD.  However, on this day, after 4th period and after lunch during the passing period Aidan Palicke was requested by Keno Oaxaca, to go to the principal's office. Bird Potter (Vice Principal) arrived shortly after and said that she had requested Aidan to come to the office.

Bird Potter notified Aidan that he was not wearing a proper mask and that he needed to take it off. She offered to give him one from her office (non-medical surgical disposable mask). Aidan told her that he was not allowed to take off that mask according to his parents. Aidan was then placed in a waiting room instead of being able to go back to class.

At approximately 1:05pm, Chris & Shari Palicke called Principal Dinh and had a lengthy conversation about Aidan's mask choice. Mr. Dinh indicated that they had been given a directive from the district that a mask "cannot be porous." Chris asked Mr. Dinh to define porous and reminded him that all masks are porous in nature. Otherwise, it would not be possible to breathe through them at all.

After coming to an agreement with Mr. Dinh that Aidan could return to class, Chris asked for Aidan to come to the phone and directed Aidan to go back to class right now as he was supposed to. At this point Aidan had missed approximately 25 minutes of academic time.

Shortly after Aidan was directed to go back to class, Mr. Dinh indicated that Richard McAlindin gave a verbal directive that mesh masks are not allowed. But Mr. Dinh had said he had not seen in anything writing. "I have not seen a policy of what types of masks are allowable in our district," Dinh stated.

Chris Palicke explained to Mr. Dinh that what the school is doing was very scary and intimidating, both to the Palicke family and to Aidan in particular.  Chris explained that it was very uncomfortable and inappropriate, and that they felt the school officials were singling Aidan out in particular, by humiliating him and discriminating against him to make an example of him.
Chris asked for Aidan to be put back on the phone please and told Aidan you have a right to an education. Please go back to class.

Dinh said he would put in writing and email to Chris and Shari that the school wouldn't let Aidan go to class because they did not approve of the type of mask Aidan was wearing. Dihn indicated he would state in writing to Chris and Shari that he could not show the mask policy because he was unaware of one.   Dinn further stated that the Superintendent, Richard McAlindin, would be calling Chris to discuss the issue.

Aidan went back to class and stayed but only received about 5 minutes of academic time as class was almost over. After his class he left the classroom and said there were staff people standing outside of his classroom from the office looking at him. Aidan felt intimidated and thought it was "creepy."

**January 13, 2022. 5:25pm**
**Chris Palicke and Richard McAlindin Conversation:**

Chris Palicke had a call with Richard McAlindin and informed McAlindin that Aidan had a constitutional right to an education and that if PYLUSD was going to deny him this right over masks, they needed to provide a PYLUSD policy which clearly indicated which mask Aidan and others must wear, and why it was safe and effective for children to wear such masks for extended hours each day.

Richard agreed that PYLUSD does not have a policy but claimed that PYLUSD did not need a policy. McAlindin stated that they could do whatever was required so as to "maintain safety."

This call ended abruptly when McAlidin hung up on Chris. Chris Palicke believes that much of the singling out and disparate treatment of Aidan stems from: (1) the Palickes' vocal opposition and public participation at school board meetings to PYUSD Covid-19 policies, and critical race theory policies, and (2) the fact that the Palickes are Catholic and conservative. Many other students wear the same exact mesh masks as Aidan without any problems whatsoever.

**January 14, 2022 at Yorba Linda High School.**

The next day Aidan went back to school. However, at approximately 8am he received an YLHS request for student slip from Vice Principal Bird Potter with the "Now Please" option checked.

Chris and Shari were waiting in the office to talk with Mr. Dinh about what had occurred on 1/13/2022 when Aidan arrived at the office. Chris had a discussion with Dihn, Potter and eventually McAlindin (he was called and put on speaker phone).

**McAlindin's Comments on The School/District "Mask" Policy:**

McAlindin indicated that PYLUSD did not need any written mask policy and claimed that "school districts have broad authority to establish practices on a campus to prohibit unsafe conditions without any need to put any such policy in writing." McAlindin then indicated his opinion that Aidan's breathable mesh mask was "unsafe" because "air can pass through it." However, McAlindin did not provide any scientific data or evidence for the safety of any other masks that the school would find acceptable, indicated that he was not aware of any of the mask data, and claimed that he did not need to do so. He also said that if Aidan was "defiant" of the recommended mask guidelines, that "consequences" would happen. He indicated that Aidan had two choices: wear a disposable surgical mask or go home. McAlindin indicated that the person making these mask rules was Dr. Elsasser.

Chris Palicke indicated that he felt that the school was bullying and intimidating families into wearing unsafe masks, and also singling out his son in particular. Chris then asked Superintendent McAlindin to specifically indicate which masks were safe for children to wear all day long and that would protect against Covid-19. Chris Palicke also stated the following:

- Please put in writing what mask PYLUSD wants Aidan to wear so he can get an education.

- Please show PYLUSD policy showing what mask is safe and effective for our son.

- You are intimidating and bullying families. You are denying children an education and you do not even have a policy. Please tell me what type of mask that is safe to wear for 7-8 hours a day for anyone, including our son.

Superintendent McAlindin's reiterated that PYLUSD did not have to have any written mask policy to deny in-person education to Aidan.

**McAlindin then specifically indicated that Aidan would not be allowed to return to school unless he complied with PYLUSD's new unwritten mask requirements.**

McAlindin finally indicated that he would put in writing that the masks that PYLUSD was requiring students to wear were safe and effective to wear for extended hours each day, but to date has still not provided this written endorsement of the masks. Aidan then left the school with his parents and was told he could not come back to school until he put on the "proper" mask.

The Palickes do not believe that surgical masks or masks that restrict the ability to breathe air freely are safe and effective for anyone, particularly children, who are asked to wear them for 6-8 hours a day, five days a week. They have done significant research into the physical, social, communicative, and emotional harms that prolonged mask wearing has caused and continues to cause schoolchildren. They also believe that individuals have a fundamental right to choose what medical interventions they want to accept or refuse.

**January 14, 2022 at 6:03pm**
That evening, after Aidan was thrown out of school and told not to return, the following school-wide email was sent from Dr. Elsasser:

***Masks***

*We have received several questions regarding face masks. Per the CDPH's COVID-19 Public Health Guidance for K-12 Schools in California for the 2021-22 school year, schools must develop and implement local protocols to enforce the mask requirements. Accordingly, the district's* Return to School Plan *for the 2021-2022 school year, which was shared back in August, outlines the mask requirements for students and staff in the Placentia-Yorba Linda Unified School District (PYLUSD) courtesy of the California Department of Public Health.*

*Masks are optional outdoors for all students and staff in school settings. Students and staff are required to wear a mask indoors, with exemptions per* CDPH's face mask guidance. *Disposable*

4

*face masks are available to students and staff if a personal one is lost or not brought to campus. The document also references CDPH's "*Get the Most out of Masking*" guidance, which states the following of masks:*

*"An effective mask has both good fit and good filtration. A well fitted mask has no gaps between the face and mask, such as above the nose or at the sides. With gaps, air that has virus particles can easily leak in or out around the sides of the mask. Good fit forces the air that you breathe out and breathe in to go through the mask and be filtered. Good filtration blocks the virus particles from going through the mask itself. You can get good filtration with the right materials and by using more layers."*

**It should also be noted that masks with holes and mesh masks are <u>not</u> acceptable.** *Mask material should block the light when held up to a bright light source and it should ensure that any particles coming from a person's mouth are contained within the mask. Masks that do not fit these parameters are not acceptable when inside any school or district facility. Anyone wearing a mask with holes or a mesh mask that does not comply with the CDPH masking guidance above will be provided a compliant mask to wear.*

*CDPH outlines the following masks as acceptable for use in indoor public settings to provide the best protection from COVID-19—N95, KF94, KN95, double masks, fitted surgical masks, surgical masks, and fabric masks with three or more cloth layers.*

<u>**January 14, 2022 7pm - Yorba Linda High School Gym**</u>

That night, even after the mask message was sent, and Aidan was thrown out of school for wearing a mesh mask, Yorba Linda High School Basketball played Esperanza High School in the YLHS indoor gym.   Principal Dinh was present along with other PYLUSD administrators.   A number of adults in the building interacting with Principal Dinh were not wearing masks, and a **majority present at this indoor game were not wearing any masks at all.**

5



Dinn in a mask the game



Principal Dinh at game with other adults (in purple) not wearing a mask


Students at the game, with most not wearing a mask.

**Between January 17th and January 31st, a series of emails were exchanged with both Principal Dinh and Superintendent McAlindin over Aidan's inability to attend in-person school and need to take his finals and keep up with his classes/grades**.

**January 18, 2022-January 19th**
A series of emails were exchanged from Chris Palicke to Superintendent McAlindin about the unwritten mask policy and Aidan's desire to attend school. Chris Palicke begs PYLUSD and Superintendent McAlindin to allow Aidan to come back to school and to stop singling out Aidan and depriving him of an education. Superintendent McAlindin suggests that Aidan wear a "gaiter" type mask, which YLHS would accept. (Note: "gaiters" are not permissible at nearby Esperanza High School). McAlindin also states that "your son is being asked to follow the same rules as any other student when entering a classroom or school building." However, as shown by the photographs in this attachment, where many adults and students are wearing no masks at all, this is not true. Aidan Palicke is being uniquely singled out for undisclosed reasons.

**January 19, 2022 at 7:19am**

Leandra Blades and Shawn Youngblood, PYLUSD Board Trustees quoted from a meeting dated January 19, 2022, and quoted in an article on the <u>VoiceofOC.org</u> dated January 25, 2022

*"Blades, at the impromptu town hall, claimed Chau has not issued a statement about mesh masks not being allowed on school campuses in OC.*
*Chau did not respond to a request for comment Thursday.*
*She also said some staff and students have been called out for wearing mesh masks, while students without masks weren't.*
*At the meeting,* ***Blades also showed a picture of district students in a gym watching a basketball game hunched up together without masks on and questioned why one kid that same day was pulled out for wearing a mesh mask.***
*Youngblood said there needs to be a clear and concise policy on masks and what's not allowed"*

Leandra Blades, PYLUSD Board Trustee provided <u>Americanfaith.com</u> a lenghtly published statement that included the following;

*"She (Buck) has also made a recent mask rule unilaterally, between herself and the superintendent, without the board's knowledge or vote.*
*The community is appalled at her and the superintendent making unilateral decisions. The community is appalled that some students are being denied an education due to their mask choice. She didn't want to hear the negative opinions and also the legal arguments from attorneys who were coming and planning to speak.* ***We have allowed mesh masks and sports masks on campus for the last year and a half. To decide unilaterally to impose a rule, but only enforce the rule on some students, and remove them from campus not only violates the education code, but it also violates the California Constitution and the student's rights to an in-person education.*** *I am appalled at the treatment of these students and am trying whatever means possible to get them back into the classroom. I get emails and texts daily from parents, students, staff and teachers reporting that they are still wearing mesh and sports masks, however only certain students are targeted."*

**January 20, 2022 (series of emails exchanged)**

Aidan has now been kept from attending school for 7 days.  Chris Palicke emails Principal Dinh asking him for options for Aidan to take his finals, which were to be held the following week. Dihn says he will coordinate with each teacher to give Aidan his options.  Dihn then suggests that Aidan consider remote schooling through Buena Vista School.   However, Aidan does not want to go to independent study or remote learning. He wants to stay in school.

Dihn ultimately provides a chart of "options" for Aidan to take his finals outside of the classrooms. The options are for Aidan to take his finals in the school office or outside of the regular classroom. The Palickes assume "outside" the regular classroom meant that Aidan would need to take his tests in another room outside of the regular classroom, not literally OUTDOORS.

8

**January 21, 2022-January 24th (series of emails exchanged)**
Chris Palicke emails Richard Dinh about the need for Aidan to be provided options to make up his classroom since Dihn and McAlindin will not allow Aidan back to attend school until he wears a "proper" mask.   Dihn sends a final table listing the "options" for Aidan to take his finals.   Chris Palicke informs Dihn that many other students who are allowed to attend classes and take finals normally are wearing the exact same mesh mask as Aidan, without any segregation or punishment.  Dihn ignores this information about disparate treatment of students.

**January 25, 2022 (emails)**
Chris Palicke asks Dihn to please get back to him on Aidan's options to make-up the work he has missed due to Dihn/McAlindin's refusal to allow Aidan to attend school since January 14th. Chris wants to make sure his son is not going to have his grades reduced due to his inability to attend classes as he would like.  Dihn tells Chris that Aidan must contact the individual teachers to find out about the work he has missed.

**January 25, 2022**
Aidan takes his finals at Yorba Linda High School.

6:45am test.  Aidan takes his history final alone in a classroom, segregated from other students by the teacher, Mr. John Domen.

8:00am test.  Aidan tries to take his Spanish final. The teacher is Mrs. Dana Gigliotti.

Other kids are present in the classroom.  At the beginning of class, Mrs. Gigliotti decides to isolate and segregate Aidan, telling him to "move a desk outside" of the classroom.   She tells Aidan to sit outside of the school building and says to him "that's what they want us to do." Aidan is shocked to find out that "outside" the regular classroom does not mean in another adjacent or nearby room, but literally <u>outdoors</u>.    Embarrassed, Aidan complies and drags a desk outdoors to take his exam.   It was 46 degrees when he started his test.

Aidan states:
- It was really embarrassing in front of my class.
- I had to drag the desk outside in front of my class.
- It was super cold and my hands hurt and it was hard to think.
- I was freezing.  All I had on was a hoodie.
- I knew this final was super important and I had to do well. I had to finish it.
- The kids on the inside of the classroom kept looking and starring at me.
- I was outside for about 1.5 hours.





In the afternoon Aidan received a phone call from his friend group.  They asked him about sitting outside, then proceeded to laugh and make fun of him, calling him an idiot.  Aidan feels ostracized for trying to do the right thing.

**January 26, 2022**
Chris Palicke asks Dinh to allow Aidan to come back to school and expresses how upset he is with how the school is handling Aidan's situation.  He explains how damaging this treatment is to his son.

**January 26, 2022**
Aidan's finals at Yorba Linda High School.

8:00am Aidan tries to take his physics test.  Teacher – Madison Waltemeyer.  Aidan states the following:
- Aidan went to the main office.
- The main office sent Aidan to the counseling office.
- Bird Potter handed Aidan his test and then directed two teachers to take Aidan to a test room.
- Aidan sits at a desk in the test room.  It was quiet.  A couple of other students also entered the room to take tests.
- Around 8:30am, Aidan starts his test.
- 10 min into his test Aidan both teachers went outside the room. When they came back in they disrupted Aidan's test and said that other students needed to take tests and that he needed to move to another spot.  Aidan noticed that the other kids in the room had not started taking tests yet.  He was already into his test and the others hadn't started.  It didn't make sense that he had to move.
- Aidan is moved to the hallway outside of the quiet room to a small folding desk which was smaller and shorter than a students' desk, making it hard for him to sit. The hallway was very loud as it close to the band practicing.  There was a student teacher coming and going who checked on him.  This hallway was on the second floor but all of the noise and kids talking from the surrounding area was very loud and disruptive.
- This test took over the course of about 2.5 hours.
- Aidan covered his ears with his hands to help dimmish the noise so he could focus.



Aidan isolated from his classmates.

12:30am Aidan tries to take his Math Final. Teacher – Mrs. Chavez.
- When Aidan gets to class, he asks his teacher do I have to go outside, rather to just another room.  She says "Yes."
- The teacher moves the desk outdoors.
- Aidan states the following
  - It was cold and I only had a t-shirt on.
  - At times it was very windy and I had to hold my papers with my hands so they wouldn't blow away.
  - I was embarrassed.
  - People were walking the hallway looking and staring at me.
  - After 10 minutes of me being outside the teacher left for lunch to get Jersey Mikes.  She was gone for about 45 minutes to an hour.  During that time I was left alone.
  - I was outdoors by myself for about 4 hours.
  - My hands were cold.  it has really hard to focus with the wind and cold.



WEATHER UNDERGROUND | Sensor Network | Maps & Radar | Severe Weather | News & Blogs | Mobile Apps | More | Search Locations

Popular Cities: San Francisco, CA 50 °F Partly Cloudy | Manhattan, NY 22 °F Sunny | Schiller Park, IL (60176) 31 °F Partly Cloudy | Boston, MA 21 °F Partly Cloudy | Houston, TX 66 °F Sunny | St James's, England, United Kingdom 44 °F Cloudy

33.89 °N, 117.83 °W

Yorba Linda, CA Weather History

64° JOHN WAYNE AIRPORT STATION | CHANGE

TODAY | HOURLY | 10-DAY | CALENDAR | HISTORY | WUNDERMAP

Daily | Weekly | Monthly

January | 26 | 2022 | View

## Daily Observations

| Time | Temperature | Dew Point | Humidity | Wind | Wind Speed | Wind Gust | Pressure | Precip. | Condition |
|---|---|---|---|---|---|---|---|---|---|
| 12:53 AM | 52 °F | 20 °F | 28 % | ESE | 3 mph | 0 mph | 30.08 in | 0.0 in | Fair |
| 1:53 AM | 52 °F | 22 °F | 31 % | CALM | 0 mph | 0 mph | 30.08 in | 0.0 in | Fair |
| 2:53 AM | 51 °F | 25 °F | 36 % | CALM | 0 mph | 0 mph | 30.07 in | 0.0 in | Fair |
| 3:53 AM | 50 °F | 24 °F | 36 % | CALM | 0 mph | 0 mph | 30.05 in | 0.0 in | Fair |
| 4:53 AM | 49 °F | 25 °F | 39 % | CALM | 0 mph | 0 mph | 30.04 in | 0.0 in | Fair |
| 5:53 AM | 50 °F | 26 °F | 39 % | CALM | 0 mph | 0 mph | 30.06 in | 0.0 in | Mostly Cloudy |
| 6:53 AM | 51 °F | 24 °F | 35 % | CALM | 0 mph | 0 mph | 30.07 in | 0.0 in | Mostly Cloudy |
| 7:53 AM | 52 °F | 26 °F | 37 % | VAR | 5 mph | 0 mph | 30.08 in | 0.0 in | Mostly Cloudy |
| 8:53 AM | 56 °F | 26 °F | 32 % | CALM | 0 mph | 0 mph | 30.09 in | 0.0 in | Cloudy |
| 9:53 AM | 58 °F | 28 °F | 32 % | SW | 3 mph | 0 mph | 30.10 in | 0.0 in | Cloudy |
| 10:53 AM | 60 °F | 30 °F | 32 % | SW | 8 mph | 0 mph | 30.07 in | 0.0 in | Cloudy |
| 11:53 AM | 65 °F | 24 °F | 21 % | CALM | 0 mph | 0 mph | 30.04 in | 0.0 in | Cloudy |
| 12:53 PM | 67 °F | 25 °F | 21 % | CALM | 0 mph | 0 mph | 30.02 in | 0.0 in | Cloudy |
| 1:53 PM | 67 °F | 24 °F | 20 % | W | 3 mph | 0 mph | 30.01 in | 0.0 in | Cloudy |
| 2:53 PM | 69 °F | 24 °F | 18 % | CALM | 0 mph | 0 mph | 30.00 in | 0.0 in | Cloudy |
| 3:53 PM | 68 °F | 28 °F | 22 % | ENE | 5 mph | 0 mph | 30.00 in | 0.0 in | Cloudy |
| 4:53 PM | 68 °F | 27 °F | 21 % | CALM | 0 mph | 0 mph | 30.00 in | 0.0 in | Mostly Cloudy |
| 5:53 PM | 65 °F | 31 °F | 28 % | SSW | 7 mph | 0 mph | 30.00 in | 0.0 in | Mostly Cloudy |
| 6:53 PM | 62 °F | 41 °F | 46 % | SSW | 3 mph | 0 mph | 30.01 in | 0.0 in | Mostly Cloudy |
| 7:53 PM | 62 °F | 40 °F | 44 % | CALM | 0 mph | 0 mph | 30.02 in | 0.0 in | Partly Cloudy |
| 8:53 PM | 58 °F | 43 °F | 58 % | CALM | 0 mph | 0 mph | 30.03 in | 0.0 in | Partly Cloudy |
| 9:53 PM | 56 °F | 43 °F | 62 % | CALM | 0 mph | 0 mph | 30.03 in | 0.0 in | Fair |
| 10:53 PM | 54 °F | 40 °F | 59 % | NNE | 3 mph | 0 mph | 30.03 in | 0.0 in | Fair |
| 11:53 PM | 53 °F | 38 °F | 57 % | CALM | 0 mph | 0 mph | 30.03 in | 0.0 in | Fair |

**January 27, 2022**

Chris Palicke sends email to PYLUSD regarding Aidan horrible treatment during finals, and rightfully complains about Aidan's discriminatory, disparate, and abusive treatment.

**February 8, 2022**

Aidan Palicke makes the very difficult decision to drop out of the track team, something that has brought him much happiness and a feeling of belonging. The constant harassment, isolation, bullying, and abuse he has received from PYLUSD teachers, administrators, and students, even those he thought would stand by him, simply for taking a stand against illegal mask policies, has

taken a huge toll on his mental and physical health.  He now feels coereced and bullied by PYLUSD, Principal Dinh, and Superintendent McAlindin, into a remote learning program that he does not want, just to complete his education.



Yorbal Linda High School Event 1/15/2022



Yorba Linda High School Event 1/15/2022



Pic of student at PYLUSD school with no mask. 1/15/2022.



Pic of students and adults at PYLUSD school with no mask. 1/25/2022.



 **San Fernando Wrestling** is at **Esperanza High School**.

January 30 at 4:13 PM · Anaheim · 🌐

1st place today at Esperanza, girls had some good matches. Time to fine tune some basics and get them ready for post season 2 champs, 2 2nd places and 1 3rd.



Pic of students at PYLUSD and staff with no masks. 1/30/2022.



**Yorba Linda High School**
January 30 at 5:42 PM · 🌐

Congratulations to our varsity cheer and song squads! Both took first place at the Cheer Pros State Championships at the Ontario Convention Center this past Saturday. Varsity cheer won in the small intermediate division and varsity song won in the large jazz division. Go Mustangs!

Pic of students with no mask. 1/30/2022.



Posted 2/6/2022 students and coaches.



Signing day at YL HS during school hours..  2/2/2022.



Pic of students and staff at Yorba Linda High School at signing event with no masks. During school hours.  2/2/2022.



Pic of students at Yorba Linda High School signing event  with no mask. During school hours. 2/2/2022.



Pic of students at Yorba Linda High School signing event with no mask. During school hours. 2/2/2022.



Pic of students and adults at Yorba Linda High School signing event with no mask. During school hours. 2/2/2022.



**Yorba Linda High School**
February 2 at 2:21 PM · 🌐

We were proud to celebrate nine of our YLHS student athletes during our National Signing Day ceremony today! We are excited for them to continue their academic and athletic careers at the next level!

Congratulations to:
Eleni Katsivalis - Columbia University
Kassidy - Utah Valley University... See more

71

👍 Like        💬 Comment        ➤ Share

Pic of students Yorba Linda High School signing event with no mask.  During school hours. 2/2/2022.



Gina Agular – PYLUSD Director of High School talking with Keith Carmona and Nancy Blade. This is during a short break at the PYLUSD Public Board Meeting which was canceled multiple times for improper masking. They are all indoors and in close proximity to one another. Date of pic 2/8/2022 9:53pm.



Nancy Blade – PYLUSD Director of Personnel talking with Keith Carmona and Gina Agular. This is during a short break at the PYLUSD Public Board Meeting which was canceled multiple times for improper masking.  They are all indoors and in close proximity to one another.  Date of pic 2/8/2022 9:53pm.



Keith Carmona – PYLUSD Director of Middle School talking with Nancy Blade and Gina Agular.  This is during a short break at the PYLUSD Public Board Meeting which was canceled multiple times for improper masking.  They are all indoors and in close proximity to one another. Date of pic 2/8/2022 9:53pm.

**Legal Causes of Action:**

The incidents described in this Claim could give rise to a number of State law causes of action under the following legal principles and legal theories:

1. The Bane Act – Civil. Code 52.1(b), including but not limited to, constitutional violations based on:
   a. First Amendment – freedom of speech violations;
   b. First Amendment – violation of the free exercise of religion clause;
   c. Equal Protection under the California Constitution and the federal Constitution;
   d. Right to Privacy – bodily autonomy and the right to refuse unwanted medical interventions under the California Constitution.
2. Violations of California Ed. Code section 49005.8(3) (enforcing mask rules that impede a pupil's respiratory airway);
3. Violations of California Ed. Code section 48900(r)(1) (bullying);
4. Violations of California Penal Code section 273(a) and 273(d) (child endangerment);
5. Violations of California Ed. Code 51101(a)(7) and 49076;
6. Violations of the California Constitution's Declaration of Rights, Article I, sec. 7(a);
7. Violation of the California Constitution, Article IX (right to public education);
8. Violation of California's Independent Study Requirements (Title 17 Cal. Code Regulations section 6025, Education Codes section 51746, 51747, 51749.5(a)(9), 51749.5(a)(12), 51749.6, and title 5, section 11700 of the California Code of Regulations);
9. Violation of California's Protection of Human Subjects in Experimentation Act, Cal. Health & Safety Code section 24170 *et seq.*;
10. Violations of the Child Abuse and Neglect Reporting Act section 11165.9 and 11165.12 (willful harming and endangerment of child);
11. Negligence – Breach of Duty of Care;
12. Negligent Failure to Supervise;
13. False Imprisonment;
14. Assault and Battery;
15. Intentional Infliction of Emotional Distress;
16. Negligent Infliction of Emotional Distress;
17. Violations of California Civil Code section 51, 51.7, 52, 52.1, 54, and 54.1 *et seq*.
18. Violations of PYLUSD's own anti-discrimination, harassment, and retaliation school policies;
19. Violations of the Nuremberg Code and other principles of bioethics, codified under California law; and
20. Any and all other causes of action reasonably inferable from the facts and circumstances of the case, the age or condition of the Claimant, or any other facts, as reflected in the documents and records on file at present or from facts not yet known; and
21. Violations of any and all statutes whose purpose is to protect citizens from unequal treatment or discrimination.

The incidents described in this Claim could also give rise to Federal law claims under the following principles and legal theories:

1. 42 U.S.C. 1983, 1985, 1988, and 12132 *et seq*. and
2. Federal Emergency Use Authorization Law (right to informed consent and right to refuse EUA products – all masks for purposes of allegedly stopping or slowing the spread of COVID-19 are EUA products).

3.  Any and all other causes of action reasonably inferable from the facts and circumstances of the case, as reflected in the documents and records on file at present or from facts not yet known.

The amount of this claim exceeds $25,000.

# U.S. Postal Service™
# CERTIFIED MAIL® RECEIPT
## Domestic Mail Only

For delivery information, visit our website at *www.usps.com®*.

Yorba Linda, CA 92886

OFFICIAL USE

| Certified Mail Fee | $3.75 | |
|---|---|---|
| $ | $3.05 | 0462 10 |

Extra Services & Fees *(check box, add fee as appropriate)*

☐ Return Receipt (hardcopy) $ $0.00
☐ Return Receipt (electronic) $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required $ $0.00
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage $2.36

$

Total Postage and Fees $9.16

$

02/10/2022

Sent To RICHARD DINH

Street and Apt. No., or PO Box No. 19900 BASTANCHURY ROAD

City, State, ZIP+4® YORBA LINDA, CA, 92886

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7021 1640 0000 5756 5423

# U.S. Postal Service™
# CERTIFIED MAIL® RECEIPT
## Domestic Mail Only

**For delivery information, visit our website at www.usps.com®.**

Placentia, CA 92870

OFFICIAL USE

0462
10

Certified Mail Fee **$3.75**

$ $3.05

Extra Services & Fees *(check box, add fee as appropriate)*

☐ Return Receipt (hardcopy)  $ $0.00
☐ Return Receipt (electronic)  $ $0.00
☐ Certified Mail Restricted Delivery  $ $0.00
☐ Adult Signature Required  $ $0.00
☐ Adult Signature Restricted Delivery  $ 

Postmark
Here

Postage  $2.36

$

Total Postage and Fees  $9.16

$

02/10/2022

Sent To RICHARD MCALINDIN

Street and Apt. No., or PO Box No. 1301 E ORANGETHORPE AVE

City, State, ZIP+4® PLACENTIA CA 92870

PS Form 3800, April 2015 PSN 7530-02-000-9047  See Reverse for Instructions

7019 2970 0000 6699 4795

**EXHIBIT B**



**PLACENTIA-YORBA LINDA
UNIFIED SCHOOL DISTRICT**

1301 E. Orangethorpe Avenue
Placentia, CA 92870
www.pylusd.org

James Elsasser, Ed.D.
Superintendent

Board of Education
Marilyn Anderson
Leandra Blades
Carrie Buck
Karin Freeman
Shawn Youngblood

March 9, 2022

Parents of Aidan Palicke
4791 Granada Dr.
Yorba Linda, CA 92886-2814

**RE:   Aidan Palicke vs. Placentia-Yorba Linda USD**
         Keenan File No: 603229
         Date of Loss:  01/13/2022

Dear Mr. Palicke:

Notice is hereby given that the claim you presented to the Placentia-Yorba Linda USD on February 11, 2022 was rejected on March 8, 2022 by Placentia-Yorba Linda USD.

### WARNING

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action in the State of California on this claim.  See Government Code section 945.6.

This time limitation applies only to causes of action arising under California law for which a claim is mandated by the California Government Tort Claims Act, Government Code sections 900 et seq.  Other causes of action, including those arising under federal law, may have shorter time limitations for filing.

You may seek the advice of an attorney of your choice in connection with this matter.  If you desire to consult an attorney, you should do so immediately.

Sincerely,

David Giordano
Assistant Superintendent, Business Services

cc: Lisa Larriva, Keenan & Associates

Preparing Every Student For Success Now And In The Future

# EXHIBIT "B"

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Nicole C. Pearson (265350); Rita Barnett-Rose (195801); Jessica Barostti (204409)<br>Law Office of Nicole C. Pearson<br>3421 Via Oporto Ste. 201<br>Newport Beach, CA 92663<br>TELEPHONE NO.: (424) 272-5526     FAX NO.:<br>ATTORNEY FOR *(Name):* | **FOR COURT USE ONLY** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana CA 92702
BRANCH NAME: Central Justice Center

CASE NAME:
Children's Health Defense et al. v. Placentia-Yorba Linda Unified School District, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ✓ **Unlimited**    ☐ **Limited**<br>(Amount      (Amount<br>demanded     demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ **Counter**    ☐ **Joinder**<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 30-2022-01253908-CU-MC-CJC<br>JUDGE: Judge Deborah Servino<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) |     condemnation (14) |     above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) |     types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☒ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☒ punitive

4. Number of causes of action *(specify):* 14 COA, including Violations of Ed. Code 48900, 48910, 48213, 51746, First Amendment, Due process,

5. This case ☐ is ☒ is not a class action suit. etcetera.,

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 4/7/2022

Nicole C. Pearson              ▶
_____        _____
(TYPE OR PRINT NAME)                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

# EXHIBIT "C"

Case 8:22-cv-01518-JWH-KES Document 1-4 Filed 08/17/22 Page 64 of 117 Page ID #:108
30-2022-01253908-CU-MC-CJC - ROA # 10 - DAVID H. YAMASAKI, Clerk of the Court By Ann Dang, Deputy Clerk.
Electronically Filed by Superior Court of California, County of Orange, 04/28/2022 11:59:00 AM.

**SUM-100**

# SUMMONS
## *(CITATION JUDICIAL)*

| | |
|---|---|
| | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, a local educational agency
in the County of Orange, **[See Additional Parties Attachment attached]**

**YOU ARE BEING SUED BY PLAINTIFF:**    CHILDREN'S HEALTH DEFENSE-CALIFORNIA
*(LO ESTÁ DEMANDANDO EL DEMANDANTE)*CHAPTER, a California 501(c)(3) non-profit
corporation, on its own and on behalf of its members, CHRIS PALICKE an individual on behalf of himself and
as Guardian Ad Litem for his minor child, AIDAN PALICKE.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | Orange County Superior Court<br>700 Civic Center Drive West<br>Santa Ana CA 92701 | CASE NUMBER: *(Número del Caso):*<br>30-2022-01253908-CU-MC-CJC<br>Judge Deborah Servino |
|---|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Nicole C. Pearson SBN 265350 LAW OFFICES OF NICOLE C. PEARSON; 3421 Via Oporto, Suite 201 Newport Beach, CA 92663; (424) 272-5526

| DATE: 04/28/2022<br>*(Fecha)* | David H. Yamasaki, Clerk of the Court | Clerk, by<br>*(Secretario)* | A. DANG<br>, Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

    under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

**Page 1 of 1**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |
|---|---|---|

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**    [Print this form]  [Save this form]    [Clear this form]

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| CHD, Chris Palicke by and through his GAL v. Placentia-Yorba Linda Unified School District et al. | 30-2022-01253908-CU-MC-CJC |

**INSTRUCTIONS FOR USE**

■ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

■ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff ☒ Defendant ☐ Cross-Complainant ☐ Cross-Defendant

YORBA LINDA HIGH SCHOOL, a public school within the Placentia-Yorba Linda Unified School District, JIM ELSASSER, in his official capacity as Superintendent of Placentia Yorba Linda Unified School District, RICHARD McALINDIN, in his official capacity as Assistant Superintendent of Placentia-Yorba Linda Unified School District, LINDA ADAMSON, in her official capacity as Assistant Superintendent of Placentia-Yorba Linda Unified School District, RICHARD DINH, in his official capacity as Principal of Yorba Linda High School, BIRD POTTER, in her official capacity as Assistant Principal of Yorba Linda High School, CARRIE BUCK, KARIN FREEMAN, and MARILYN ANDERSON, each individual in her official capacity as a member of the School Board of the Placentia Yorba Linda Unified School District,  DANA GIGLIOTTI, an individual, BRYAN BLOOM, an individual, JACLYN CHAVEZ, an individual, JOHN DOMEN, an individual, MADISON WALTEMEYER, an individual, AMBER FERRIS, an individual,

AND DOES 1-50, inclusive,

Page __2__ of __2__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

[ Print this form ] [ Save this form ] [ Clear this form ]

# EXHIBIT "D"

**CIV-010**

| | |
|---|---|
| ATTORNEY *(Name, State Bar number, and address):*<br>Nicole C. Pearson, State Bar No. 265350<br>Law Offices of Nicole C. Pearson<br>3421 Via Oporto, Suite 201, Newport Beach CA 92663<br><br>TELEPHONE NO.: (424) 272-5526 FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional)* Nicole@FLTJLLP.com<br>ATTORNEY FOR *(Name):* Chris Palicke; Aidan C. Palicke, by and through GAL | *FOR COURT USE ONLY* |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    Orange

STREET ADDRESS: 700 Civic Center Drive West

MAILING ADDRESS:

CITY AND ZIP CODE: Santa Ana CA 92701

BRANCH NAME: Central Justice Center

PLAINTIFF/PETITIONER: Chris Palicke; Aidan Palicke by and through GAL

DEFENDANT/RESPONDENT: Yorba Linda High School, et al.

| APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL<br>[x] EX PARTE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |
|---|---|

> **NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.**

1. Applicant *(name):* Aidan Palicke        is
   a. [ ] the parent of *(name):*
   b. [ ] the guardian of *(name):*
   c. [ ] the conservator of *(name):*
   d. [ ] a party to the suit.
   e. [x] the minor to be represented *(if the minor is 14 years of age or older).*
   f. [ ] another interested person *(specify capacity):*

2. This application seeks the appointment of the following person as guardian ad litem *(state name, address, and telephone number):*

   Chris Palicke 4791 Granada Drive, Yorba Linda California 92886; (714) 742-3790

3. The guardian ad litem is to represent the interests of the following person *(state name, address, and telephone number):*

   Aidan Palicke 4791 Granada Drive, Yorba Linda California 92886; (714) 742-3790

4. The person to be represented is:
   a. [x] a minor *(date of birth):* 4/22/2005
   b. [ ] an incompetent person.
   c. [ ] a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. [x] the person named in item 3 has a cause or causes of action on which suit should be brought *(describe):*

   Civil Suit against Yorba Linda High School; Placentia-Yorba Linda Unified School District and others; Claims for damages exceeds $25,000

[ ] *Continued on Attachment 5a.*

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010 [Rev. January 1, 2008] | **APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL** | Code of Civil Procedure,<br>§ 372 et seq. |

CIV-010

| | |
|---|---|
| PLAINTIFF/PETITIONER: Chris Palicke; Aidan Palicke by and through his GAL<br>DEFENDANT/RESPONDENT: Yorba Linda High School, et al. | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

c. ☐ the person named in item 3 has no guardian or conservator of his or her estate.

d. ☒ the appointment of a guardian ad litem is necessary for the following reasons *(specify):*

File Civil Complaint for Damages, exceeding $25,000

☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:

a. ☒ related *(state relationship):*   Father

b. ☐ not related *(specify capacity):*

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. *(If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):*

☐ Continued on Attachment 7.

Nicole C. Pearson
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

Aidan Palicke
_____
(TYPE OR PRINT NAME)

▶ *See next Page Please*
_____
(SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.

Date:

Chris Palicke
_____
(TYPE OR PRINT NAME)

▶ *See Next Page Please*
_____
(SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

## ORDER ☒ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that *(name):*   Chris Palicke

is hereby appointed as the guardian ad litem for *(name):* Aidan Palicke
for the reasons set forth in item 5 of the application.

Date: 4/28/2022

_____
JUDICIAL OFFICER
Judge Layne H. Melzer
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

| | | |
|---|---|---|
| CIV-010 [Rev. January 1, 2008] | **APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL** | Page 2 of 2 |

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

[ Print this form ]  [ Save this form ]  [ Clear this form ]

5. b. more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

c. ☐ the person named in item 3 has no guardian or conservator of his or her estate.

d. ☒ the appointment of a guardian ad litem is necessary for the following reasons *(specify)*:
File Civil Complaint for Damages, exceeding $25,000

☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
   a. ☒ related *(state relationship):*  Father
   b. ☐ not related *(specify capacity):*

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. *(If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):*

☐ Continued on Attachment 7.

Nicole C. Pearson
(TYPE OR PRINT NAME)                          (SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 4/18/2022

Aidan Palicke
(TYPE OR PRINT NAME)                          (SIGNATURE OF APPLICANT)

**CONSENT TO ACT AS GUARDIAN AD LITEM**

I consent to the appointment as guardian ad litem under the above petition.
Date: 4/18/2022

Chris Palicke
(TYPE OR PRINT NAME)                          (SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

**ORDER** ☒ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that *(name):*  Chris Palicke
is hereby appointed as the guardian ad litem for *(name):* Aidan Palicke
for the reasons set forth in item 5 of the application.

Date: _____                          _____
                                               JUDICIAL OFFICER

# EXHIBIT "E"

Electronically Filed by Superior Court of California, County of Orange, 04/29/2022 04:26:00 PM.
30-2022-01253908-CU-MC-CJC - ROA # 14 - DAVID H. YAMASAKI, Clerk of the Court By eflinguser, Deputy Clerk.

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | FOR COURT USE ONLY |
|---|---|
| Nicole C. Pearson (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br>TELEPHONE NO.: (424) 272-5526<br>EMAIL ADDRESS: Michelle@fltjllp.com<br>ATTORNEY FOR: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
  STREET ADDRESS: 700 Civic Center Drive
  MAILING ADDRESS: 700 Civic Center Drive
  CITY AND ZIP CODE: Santa Ana, 92701
  BRANCH NAME: Central Justice Center

| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

1.    At the time of service I was at least 18 years of age and not a party to this action.

2.    I served copies of:
    f.  other (specify documents):
    SUMMONS, COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT "A - B", CIVIL
    CASE COVER SHEET, NOTICE OF HEARING CASE MANAGEMENT CONFERENCE, CLERK'S CERTIFICATE OF
    SERVICE BY MAIL

3.    a.    Party served:
        JIM ELSASSER, IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF PLACENTIA YORBA LINDA UNIFIED
        SCHOOL DISTRICT

    b.    Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
        item 5b on whom substituted service was made):
        MARTHA SUAREZ / ADMINISTRATIVE SECRETARY OF HUMAN RESOURCES

4.    Address where the party was served:
    1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5.    I served the party
    a.    **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive
        service of process for the party on 4/29/2022 at 12:41 pm

6.    The "Notice to the Person Served" (on the summons) was completed as follows:
    a.    as an individual defendant.
    d.    On behalf of: JIM ELSASSER, IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF PLACENTIA YORBA
        LINDA UNIFIED SCHOOL DISTRICT
        under the following Code of Civil Procedure section:
           other: SUPERINTENDENT

Judicial Council of California
POS-010 [Rev. January 1, 2007]
Form adopted by rule 982.9

**PROOF OF SERVICE OF SUMMONS**

Job Number ACA-2022002613

| | |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL., <br> DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER: <br> 30-2022-01253908-CU-MC-CJC |

7. **Person who served papers**
   a. Name: D. LANEAUX
      Firm: AAA Attorney Services II, Inc.
   b. **Address:** P.O. Box 2309, Orange, CA 92859
   c. Telephone number: (714) 633-4167
   d. **The fee** for the service was: $39.85
   e. I am:
      (3) a registered California process server:
         (i)   employee
         (ii)  Registration No.: P.S.#1032
         (iii) County: Orange County

8. **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____          ▶  _____
         D. LANEAUX
     (NAME OF PERSON WHO SERVED PAPERS)                              (SIGNATURE)

**Page 2 of 2**

# EXHIBIT "F"

Electronically Filed by Superior Court of California, County of Orange, 05/02/2022 08:00:00 AM.
30-2022-01253908-CU-MC-CJC - ROA # 18 - DAVID H. YAMASAKI, Clerk of the Court By ehlinguser, Deputy Clerk.

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY:<br>Nicole C. Pearson  (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br> TELEPHONE NO.: (424) 272-5526<br> EMAIL ADDRESS: Michelle@fltjllp.com<br> ATTORNEY FOR: | *FOR COURT USE ONLY* |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br> STREET ADDRESS: 700 Civic Center Drive<br> MAILING ADDRESS: 700 Civic Center Drive<br> CITY AND ZIP CODE: Santa Ana, 92701<br> BRANCH NAME: Central Justice Center | |

| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA<br> CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT<br> CORPORATION, ON ITS OWN AND ON BEHALF OF ITS<br> MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL<br> DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE<br> COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   f. other (specify documents):
   SUMMONS, COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT "A - B", CIVIL
   CASE COVER SHEET, NOTICE OF HEARING CASE MANAGEMENT CONFERENCE, CLERK'S CERTIFICATE OF
   SERVICE BY MAIL

3. a. Party served:
   LINDA ADAMSON, IN HER OFFICIAL CAPACITY AS ASSISTANT SUPERINTENDENT OF PLACENTIA-YORBA
   LINDA UNIFIED SCHOOL DISTRICT

   b. Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
   item 5b on whom substituted service was made):
   MARTHA SUAREZ / ADMINISTRATIVE SECRETARY OF HUMAN RESOURCES

4. Address where the party was served:
   1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive
   service of process for the party on 4/29/2022 at 12:41 pm

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. as an individual defendant.
   d. On behalf of: LINDA ADAMSON, IN HER OFFICIAL CAPACITY AS ASSISTANT SUPERINTENDENT OF
   PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT
   under the following Code of Civil Procedure section:
   other: ASSISTANT SUPERINTENDENT

Judicial Council of California
POS-010 [Rev. January 1, 2007]
Form adopted by rule 982.9

**PROOF OF SERVICE OF SUMMONS**

Job Number ACA-2022002616

| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL., <br> DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER: <br> 30-2022-01253908-CU-MC-CJC |
| --- | --- |

7. **Person who served papers**
   a. Name: D. LANEAUX
      Firm: AAA Attorney Services II, Inc.
   b. Address: P.O. Box 2309, Orange, CA 92859
   c. Telephone number: (714) 633-4167
   d. **The fee** for the service was: $39.85
   e. I am:
      (3) a registered California process server:
          (i) employee
          (ii) Registration No.: P.S.#1032
          (iii) County: Orange County

8. **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 4/29/2022

_____
D. LANEAUX
(NAME OF PERSON WHO SERVED PAPERS)

▶ _____
(SIGNATURE)

Judicial Council of California
POS-010 [Rev. January 1, 2007]
Form adopted by rule 982.9

**PROOF OF SERVICE OF SUMMONS**            Job Number ACA-2022002616

# EXHIBIT "G"

**POS-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:**<br>Nicole C. Pearson  (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br>  TELEPHONE NO.: (424) 272-5526<br>  EMAIL ADDRESS: Michelle@fltjllp.com<br>  ATTORNEY FOR: | **FOR COURT USE ONLY** |

| |
|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>  STREET ADDRESS: 700 Civic Center Drive<br>  MAILING ADDRESS: 700 Civic Center Drive<br>  CITY AND ZIP CODE: Santa Ana, 92701<br>  BRANCH NAME: Central Justice Center |

| | |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA<br>            CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT<br>            CORPORATION, ON ITS OWN AND ON BEHALF OF ITS<br>            MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL<br>            DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE<br>            COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

1.   At the time of service I was at least 18 years of age and not a party to this action.

2.   I served copies of:
     f.   other (specifiy documents):
     SUMMONS, COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT "A - B", CIVIL
     CASE COVER SHEET, NOTICE OF HEARING CASE MANAGEMENT CONFERENCE, CLERK'S CERTIFICATE OF
     SERVICE BY MAIL

3.   a.   Party served:
          AMBER FERRIS, AN INDIVIDUAL

     b.   Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
          item 5b on whom substituted service was made):
          MARTHA SUAREZ / AGENT FOR SERVICE,  SECRETARY OF HUMAN RESOURCES

4.   Address where the party was served:
     1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5.   I served the party
     a.   **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive
          service of process for the party on 4/29/2022 at 12:41 pm

6.   The "Notice to the Person Served" (on the summons) was completed as follows:
     a.   as an individual defendant.

Judicial Council of California
POS-010 [Rev. January 1, 2007]
Form adopted by rule 982.9

**PROOF OF SERVICE OF SUMMONS**                 Job Number ACA-2022002625

| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL.,<br><br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |
| --- | --- |

7. **Person who served papers**
   a.  Name: D. LANEAUX
       Firm: AAA Attorney Services II, Inc.
   b.  Address: P.O. Box 2309, Orange, CA 92859
   c.  Telephone number: (714) 633-4167
   d.  **The fee** for the service was: $39.85
   e.  I am:
       (3)  a registered California process server:
            (i)    employee
            (ii)   Registration No.: P.S.#1032
            (iii)  County: Orange County

8. **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  4/29/2022

_____
D. LANEAUX
(NAME OF PERSON WHO SERVED PAPERS)

▶ _____
(SIGNATURE)

Judicial Council of California
POS-010 [Rev. January 1, 2007]
Form adopted by rule 982.9

**PROOF OF SERVICE OF SUMMONS**     Job Number ACA-2022002625

# EXHIBIT "H"

**POS-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:**<br>Nicole C. Pearson  (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br>  TELEPHONE NO.: (424) 272-5526<br>  EMAIL ADDRESS: Michelle@fltjllp.com<br>  ATTORNEY FOR: | **FOR COURT USE ONLY** |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>  STREET ADDRESS: 700 Civic Center Drive<br>  MAILING ADDRESS: 700 Civic Center Drive<br>  CITY AND ZIP CODE: Santa Ana, 92701<br>  BRANCH NAME: Central Justice Center | |
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA<br>          CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT<br>          CORPORATION, ON ITS OWN AND ON BEHALF OF ITS<br>          MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL<br>          DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE<br>          COUNTY OF ORANGE | **CASE NUMBER:**<br>30-2022-01253908-CU-MC-CJC |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

1.    At the time of service I was at least 18 years of age and not a party to this action.

2.    I served copies of:
     f.   other (specifiy documents):
     SUMMONS, COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT "A - B", CIVIL
     CASE COVER SHEET, NOTICE OF HEARING CASE MANAGEMENT CONFERENCE, CLERK'S CERTIFICATE OF
     SERVICE BY MAIL

3.    a.   Party served:
         MARILYN ANDERSON, INDIVIDUAL IN HER OFFICIAL CAPACITY AS A MEMBER OF THE PLACENTIA YORBA
         LINDA UNIFIED SCHOOL DISTRICT

     b.   Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
         item 5b on whom substituted service was made):
         MARTHA SUAREZ / AGENT FOR SERVICE ,  SECRETARY OF HUMAN RESOURCES

4.    Address where the party was served:
     1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5.    I served the party
     a.   **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive
         service of process for the party on 4/29/2022 at 12:41 pm

6.    The "Notice to the Person Served" (on the summons) was completed as follows:
     a.   as an individual defendant.
     d.   On behalf of: MARILYN ANDERSON, INDIVIDUAL IN HER OFFICIAL CAPACITY AS A MEMBER OF THE
         PLACENTIA YORBA LINDA UNIFIED SCHOOL DISTRICT
         under the following Code of Civil Procedure section:
             other: MEMBER OF SCHOOL BOARD

Judicial Council of California<br>POS-010 [Rev. January 1, 2007]<br>Form adopted by rule 982,9

**PROOF OF SERVICE OF SUMMONS**

Job Number ACA-2022002636

| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL., <br> DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER: <br> 30-2022-01253908-CU-MC-CJC |
|---|---|

7.  **Person who served papers**
    a.  Name: D. LANEAUX
        Firm: AAA Attorney Services II, Inc.
    b.  Address: P.O. Box 2309, Orange, CA 92859
    c.  Telephone number: (714) 633-4167
    d.  **The fee** for the service was: $39.85
    e.  I am:
        (3)  a registered California process server:
            (i)   employee
            (ii)  Registration No.: P.S.#1032
            (iii) County: Orange County

8.  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  4/29/2022

_____
D. LANEAUX
(NAME OF PERSON WHO SERVED PAPERS)

▶ _____
(SIGNATURE)

**Page 2 of 2**

# EXHIBIT "I"

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | FOR COURT USE ONLY |
|---|---|
| Nicole C. Pearson  (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br>TELEPHONE NO.: (424) 272-5526<br>EMAIL ADDRESS: Michelle@fltjllp.com<br>ATTORNEY FOR: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 Civic Center Drive
MAILING ADDRESS: 700 Civic Center Drive
CITY AND ZIP CODE: Santa Ana, 92701
BRANCH NAME: Central Justice Center

| | CASE NUMBER: |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA<br>CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT<br>CORPORATION, ON ITS OWN AND ON BEHALF OF ITS<br>MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL<br>DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE<br>COUNTY OF ORANGE | 30-2022-01253908-CU-MC-CJC |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   f. other (specify documents):
   SUMMONS, COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT "A - B", CIVIL
   CASE COVER SHEET, NOTICE OF HEARING CASE MANAGEMENT CONFERENCE, CLERK'S CERTIFICATE OF
   SERVICE BY MAIL

3. a. Party served:
      DANA GIGLIOTTI, AN INDIVIDUAL

   b. Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
      item 5b on whom substituted service was made):
      MARTHA SUAREZ / AGENT FOR SERVICE,  SECRETARY OF HUMAN RESOURCES

4. Address where the party was served:
   1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5. I served the party
   a. **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive
      service of process for the party on 4/29/2022 at 12:41 pm

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. as an individual defendant.

Page 1 of 2

**PROOF OF SERVICE OF SUMMONS**

Job Number ACA-2022002620

| | |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |

7.    **Person who served papers**
    a.   Name: D. LANEAUX
        Firm: AAA Attorney Services II, Inc.
    b.   Address: P.O. Box 2309, Orange, CA 92859
    c.   Telephone number: (714) 633-4167
    d.   **The fee** for the service was: $39.85
    e.   I am:
        (3)  a registered California process server:
            (i)    employee
            (ii)   Registration No.: P.S.#1032
            (iii)  County: Orange County

8.    **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  4/29/2022

| | |
|---|---|
| _____<br>D. LANEAUX<br>(NAME OF PERSON WHO SERVED PAPERS) | ▶ _____<br>(SIGNATURE) |

Judicial Council of California<br>POS-010 [Rev. January 1, 2007]<br>Form adopted by rule 982.9

**PROOF OF SERVICE OF SUMMONS**      Job Number ACA-2022002620

# EXHIBIT "J"

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY:<br>Nicole C. Pearson  (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br>TELEPHONE NO.: (424) 272-5526<br>EMAIL ADDRESS: Michelle@fltjllp.com<br>ATTORNEY FOR: | *FOR COURT USE ONLY* |
| --- | --- |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 Civic Center Drive
MAILING ADDRESS: 700 Civic Center Drive
CITY AND ZIP CODE: Santa Ana, 92701
BRANCH NAME: Central Justice Center

| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA<br>CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT<br>CORPORATION, ON ITS OWN AND ON BEHALF OF ITS<br>MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL<br>DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE<br>COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |
| --- | --- |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   f. other (specify documents):
   SUMMONS, COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT "A - B", CIVIL
   CASE COVER SHEET, NOTICE OF HEARING CASE MANAGEMENT CONFERENCE, CLERK'S CERTIFICATE OF
   SERVICE BY MAIL

3. a. Party served:
   BRYAN BLOOM, AN INDIVIDUAL

   b. Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
   item 5b on whom substituted service was made):
   MARTHA SUAREZ / AGENT FOR SERVICE,  SECRETARY OF HUMAN RESOURCES

4. Address where the party was served:
   1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive
   service of process for the party on 4/29/2022 at 12:41 pm

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. as an individual defendant.

Judicial Council of California
POS-010 [Rev. January 1, 2007]
Form adopted by rule 982.9

**PROOF OF SERVICE OF SUMMONS**

Job Number ACA-2022002621

| | |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |

7. **Person who served papers**
   a. Name: D. LANEAUX
      Firm: AAA Attorney Services II, Inc.
   b. Address: P.O. Box 2309, Orange, CA 92859
   c. Telephone number: (714) 633-4167
   d. **The fee** for the service was: $39.85
   e. I am:
      (3)  a registered California process server:
           (i)    employee
           (ii)   Registration No.: P.S.#1032
           (iii)  County: Orange County

8. **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  4/29/2022

_____
D. LANEAUX
(NAME OF PERSON WHO SERVED PAPERS)

▶  _____
(SIGNATURE)

**Page 2 of 2**

# EXHIBIT "K"

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | FOR COURT USE ONLY |
|---|---|
| Nicole C. Pearson  (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br>TELEPHONE NO.: (424) 272-5526<br>EMAIL ADDRESS: Michelle@fltjllp.com<br>ATTORNEY FOR: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 Civic Center Drive
MAILING ADDRESS: 700 Civic Center Drive
CITY AND ZIP CODE: Santa Ana, 92701
BRANCH NAME: Central Justice Center

| | CASE NUMBER: |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA<br>CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT<br>CORPORATION, ON ITS OWN AND ON BEHALF OF ITS<br>MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL<br>DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE<br>COUNTY OF ORANGE | 30-2022-01253908-CU-MC-CJC |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   f. other (specify documents):
   SUMMONS, COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT "A - B", CIVIL
   CASE COVER SHEET, NOTICE OF HEARING CASE MANAGEMENT CONFERENCE, CLERK'S CERTIFICATE OF
   SERVICE BY MAIL

3. a. Party served:
      JOHN DOMEN, AN INDIVIDUAL

   b. Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
      item 5b on whom substituted service was made):
      MARTHA SUAREZ / AGENT FOR SERVICE,  SECRETARY OF HUMAN RESOURCES

4. Address where the party was served:
   1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive
      service of process for the party on 4/29/2022 at 12:41 pm

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. as an individual defendant.

Judicial Council of California
POS-010 [Rev. January 1, 2007]
Form adopted by rule 982.9

PROOF OF SERVICE OF SUMMONS

Job Number ACA-2022002623

| | |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL.,<br><br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |

7.   **Person who served papers**
   a.   Name: D. LANEAUX
        Firm: AAA Attorney Services II, Inc.
   b.   Address: P.O. Box 2309, Orange, CA 92859
   c.   Telephone number: (714) 633-4167
   d.   **The fee** for the service was: $39.85
   e.   I am:
        (3)   a registered California process server:
              (i)   employee
              (ii)  Registration No.: P.S.#1032
              (iii) County: Orange County

8.   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   4/29/2022

_____
        D. LANEAUX
   (NAME OF PERSON WHO SERVED PAPERS)

▶ _____
                    (SIGNATURE)

**Page 2 of 2**

**PROOF OF SERVICE OF SUMMONS**   Job Number ACA-2022002623

# EXHIBIT "L"

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY:<br>Nicole C. Pearson  (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br>  TELEPHONE NO.: (424) 272-5526<br>  EMAIL ADDRESS: Michelle@fltjllp.com<br>  ATTORNEY FOR: | *FOR COURT USE ONLY* |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>  STREET ADDRESS: 700 Civic Center Drive<br>  MAILING ADDRESS: 700 Civic Center Drive<br>  CITY AND ZIP CODE: Santa Ana, 92701<br>  BRANCH NAME: Central Justice Center | |
|---|---|

| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA<br>    CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT<br>    CORPORATION, ON ITS OWN AND ON BEHALF OF ITS<br>    MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL<br>    DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE<br>    COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |
|---|---|

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

1.   At the time of service I was at least 18 years of age and not a party to this action.

2.   I served copies of:
    f.  other (specify documents):
    Summons; Complaint; Civil Case Sheet; EXHIBIT "A - B",  NOTICE OF HEARING CASE MANAGEMENT
    CONFERENCE, CLERK'S CERTIFICATE OF SERVICE BY MAIL

3.   a.  Party served:
        PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL AGENCY IN THE COUNTY OF ORANGE

    b.  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
       item 5b on whom substituted service was made):
       MARTHA SUAREZ / ADMINISTRATIVE SECRETARY OF HUMAN RESOURCES

4.   Address where the party was served:
    1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5.   I served the party
    a.  **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive
       service of process for the party on 4/29/2022 at 12:41 pm

6.   The "Notice to the Person Served" (on the summons) was completed as follows:
    d.  On behalf of: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL AGENCY IN THE COUNTY OF
       ORANGE
       under the following Code of Civil Procedure section:
          416.50 (public entity)

Judicial Council of California
POS-010 [Rev. January 1, 2007]
Form adopted by rule 982.9

**PROOF OF SERVICE OF SUMMONS**

Job Number ACA-2022002610

| | |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |

7.   **Person who served papers**
   a.   Name: D. LANEAUX
       Firm: AAA Attorney Services II, Inc.
   b.   Address: P.O. Box 2309, Orange, CA 92859
   c.   Telephone number: (714) 633-4167
   d.   **The fee** for the service was: $109.85
   e.   I am:
      (3)   a registered California process server:
         (i)     employee
         (ii)    Registration No.: P.S.#1032
         (iii)   County: Orange County

8.   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   4/29/2022

_____
D. LANEAUX
(NAME OF PERSON WHO SERVED PAPERS)

▶ _____
(SIGNATURE)

**Page 2 of 2**

**PROOF OF SERVICE OF SUMMONS**   Job Number ACA-2022002610

# EXHIBIT "M"

Electronically Filed by Superior Court of California, County of Orange, 05/02/2022 08:00:00 AM.
30-2022-01253908-CU-MC-CJC - ROA # 30 - DAVID H. YAMASAKI, Clerk of the Court By eilinguser, Deputy Clerk.
Case 8:22-cv-01777 Document 1-8 Filed 09/29/22 Page 140 of 161 Page ID #:139

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | *FOR COURT USE ONLY* |
|---|---|
| Nicole C. Pearson  (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br>TELEPHONE NO.: (424) 272-5526<br>EMAIL ADDRESS: Michelle@fltjllp.com<br>ATTORNEY FOR: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 Civic Center Drive
MAILING ADDRESS: 700 Civic Center Drive
CITY AND ZIP CODE: Santa Ana, 92701
BRANCH NAME: Central Justice Center

| | CASE NUMBER: |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA<br>CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT<br>CORPORATION, ON ITS OWN AND ON BEHALF OF ITS<br>MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL<br>DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE<br>COUNTY OF ORANGE | 30-2022-01253908-CU-MC-CJC |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   f. other (specifiy documents):
   SUMMONS, COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT "A - B", CIVIL
   CASE COVER SHEET, NOTICE OF HEARING CASE MANAGEMENT CONFERENCE, CLERK'S CERTIFICATE OF
   SERVICE BY MAIL

3. a. Party served:
   MADISON WALTEMEYER, AN INDIVIDUAL

   b. Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
      item 5b on whom substituted service was made):
      MARTHA SUAREZ / AGENT FOR SERVICE,  SECRETARY OF HUMAN RESOURCES

4. Address where the party was served:
   1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5. I served the party
   a. **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive
      service of process for the party on 4/29/2022 at 12:41 pm

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. as an individual defendant.

Judicial Council of California
POS-010 [Rev. January 1, 2007]
Form adopted by rule 982.9

**PROOF OF SERVICE OF SUMMONS**

Job Number ACA-2022002624

| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |
| --- | --- |

7.  **Person who served papers**
    a.   Name: D. LANEAUX
         Firm: AAA Attorney Services II, Inc.
    b.   Address: P.O. Box 2309, Orange, CA 92859
    c.   Telephone number: (714) 633-4167
    d.   **The fee** for the service was: $39.85
    e.   I am:
         (3)   a registered California process server:
               (i)     employee
               (ii)    Registration No.: P.S.#1032
               (iii)   County: Orange County

8.   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   4/29/2022

_____
D. LANEAUX
(NAME OF PERSON WHO SERVED PAPERS)

▶ _____
(SIGNATURE)

Page 2 of 2

# EXHIBIT "N"

**POS-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:**<br>Nicole C. Pearson  (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br>  TELEPHONE NO.: (424) 272-5526<br>  EMAIL ADDRESS: Michelle@fltjllp.com<br>  ATTORNEY FOR: | **FOR COURT USE ONLY** |

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>  STREET ADDRESS: 700 Civic Center Drive<br>  MAILING ADDRESS: 700 Civic Center Drive<br>  CITY AND ZIP CODE: Santa Ana, 92701<br>  BRANCH NAME: Central Justice Center | |

| | |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA<br>          CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT<br>          CORPORATION, ON ITS OWN AND ON BEHALF OF ITS<br>          MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL<br>           DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE<br>           COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   f. other (specify documents):
   SUMMONS, COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT "A - B", CIVIL
   CASE COVER SHEET, NOTICE OF HEARING CASE MANAGEMENT CONFERENCE, CLERK'S CERTIFICATE OF
   SERVICE BY MAIL

3. a. Party served:
      RICHARD DINH, IN HIS OFFICIAL CAPACITY AS PRINCIPAL OF YORBA-LINDA HIGH SCHOOL

   b. Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
      item 5b on whom substituted service was made):
      MARTHA SUAREZ / ADMINISTRATIVE SECRETARY OF HUMAN RESOURCES

4. Address where the party was served:
   1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5. I served the party
   a. **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive
      service of process for the party on 4/29/2022 at 12:41 pm

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. as an individual defendant.
   d. On behalf of: RICHARD DINH, IN HIS OFFICIAL CAPACITY AS PRINCIPAL OF YORBA-LINDA HIGH SCHOOL
      under the following Code of Civil Procedure section:
         other: PRINCIPAL

**Page 1 of 2**

**PROOF OF SERVICE OF SUMMONS**                    Job Number ACA-2022002617

| | |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL.,<br><br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |

7. **Person who served papers**
   a.   Name: D. LANEAUX
        Firm: AAA Attorney Services II, Inc.
   b.   Address: P.O. Box 2309, Orange, CA 92859
   c.   Telephone number: (714) 633-4167
   d.   **The fee** for the service was: $39.85
   e.   I am:
        (3)   a registered California process server:
              (i)     employee
              (ii)    Registration No.: P.S.#1032
              (iii)   County: Orange County

8.   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   4/29/2022

_____
D. LANEAUX
(NAME OF PERSON WHO SERVED PAPERS)

▶ _____
(SIGNATURE)

**Page 2 of 2**

# EXHIBIT "O"

**POS-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:**<br>Nicole C. Pearson  (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br>  TELEPHONE NO.: (424) 272-5526<br>  EMAIL ADDRESS: Michelle@fltjllp.com<br>  ATTORNEY FOR: | **FOR COURT USE ONLY** |

| |
|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>  STREET ADDRESS: 700 Civic Center Drive<br>  MAILING ADDRESS: 700 Civic Center Drive<br>  CITY AND ZIP CODE: Santa Ana, 92701<br>  BRANCH NAME: Central Justice Center |

| | |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA<br>          CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT<br>          CORPORATION, ON ITS OWN AND ON BEHALF OF ITS<br>          MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL<br>          DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE<br>          COUNTY OF ORANGE | **CASE NUMBER:**<br>30-2022-01253908-CU-MC-CJC |

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

1.   At the time of service I was at least 18 years of age and not a party to this action.

2.   I served copies of:
     f.   other (specify documents):
     SUMMONS, COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT "A – B", CIVIL
     CASE COVER SHEET, NOTICE OF HEARING CASE MANAGEMENT CONFERENCE, CLERK'S CERTIFICATE OF
     SERVICE BY MAIL

3.   a.   Party served:
          CARRIE BUCK, INDIVIDUAL IN HER OFFICIAL CAPACITY AS A MEMBER OF THE PLACENTIA YORBA LINDA
          UNIFIED SCHOOL DISTRICT

     b.   Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
          item 5b on whom substituted service was made):
          MARTHA SUAREZ / ADMINISTRATIVE SECRETARY OF HUMAN RESOURCES

4.   Address where the party was served:
     1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5.   I served the party
     a.   **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive
          service of process for the party on 4/29/2022 at 12:41 pm

6.   The "Notice to the Person Served" (on the summons) was completed as follows:
     a.   as an individual defendant.
     d.   On behalf of: CARRIE BUCK, INDIVIDUAL IN HER OFFICIAL CAPACITY AS A MEMBER OF THE PLACENTIA
          YORBA LINDA UNIFIED SCHOOL DISTRICT
          under the following Code of Civil Procedure section:
              other: MEMBER OF SCHOOL BOARD

Judicial Council of California
POS-010 [Rev. January 1, 2007]
Form adopted by rule 982.9

**PROOF OF SERVICE OF SUMMONS**         Job Number ACA-2022002619

| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL.,<br><br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |
| --- | --- |

7.   **Person who served papers**
   a.   Name: D. LANEAUX
        Firm: AAA Attorney Services II, Inc.
   b.   Address: P.O. Box 2309, Orange, CA 92859
   c.   Telephone number: (714) 633-4167
   d.   **The fee** for the service was: $39.85
   e.   I am:
        (3)   a registered California process server:
              (i)    employee
              (ii)   Registration No.: P.S.#1032
              (iii)  County: Orange County

8.   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   4/29/2022

_____
D. LANEAUX
(NAME OF PERSON WHO SERVED PAPERS)

▶ _____
(SIGNATURE)

**Page 2 of 2**

Judicial Council of California
POS-010 [Rev. January 1, 2007]
Form adopted by rule 982,9

**PROOF OF SERVICE OF SUMMONS**        Job Number ACA-2022002619

# EXHIBIT "P"

**POS-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:**<br>Nicole C. Pearson  (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br>  TELEPHONE NO.: (424) 272-5526<br>  EMAIL ADDRESS: Michelle@fltjllp.com<br>  ATTORNEY FOR: | **FOR COURT USE ONLY** |

| |
|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>  STREET ADDRESS: 700 Civic Center Drive<br>  MAILING ADDRESS: 700 Civic Center Drive<br>  CITY AND ZIP CODE: Santa Ana, 92701<br>  BRANCH NAME: Central Justice Center |

| | |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA<br>          CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT<br>          CORPORATION, ON ITS OWN AND ON BEHALF OF ITS<br>          MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL<br>          DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE<br>          COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

1.  At the time of service I was at least 18 years of age and not a party to this action.

2.  I served copies of:
    f.  other (specify documents):
    SUMMONS, COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT "A - B", CIVIL
    CASE COVER SHEET, NOTICE OF HEARING CASE MANAGEMENT CONFERENCE, CLERK'S CERTIFICATE OF
    SERVICE BY MAIL

3.  a.  Party served:
        KARIN FREEMAN,INDIVIDUAL IN HER OFFICIAL CAPACITY AS A MEMBER OF THE PLACENTIA YORBA
        LINDA UNIFIED SCHOOL DISTRICT

    b.  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
        item 5b on whom substituted service was made):
        MARTHA SUAREZ / ADMINISTRATIVE SECRETARY OF HUMAN RESOURCES

4.  Address where the party was served:
    1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5.  I served the party
    a.  **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive
        service of process for the party on 4/29/2022 at 12:41 pm

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
    a.  as an individual defendant.
    d.  On behalf of: KARIN FREEMAN,INDIVIDUAL IN HER OFFICIAL CAPACITY AS A MEMBER OF THE PLACENTIA
        YORBA LINDA UNIFIED SCHOOL DISTRICT
        under the following Code of Civil Procedure section:
            other: MEMBER OF SCHOOL BOARD

**Page 1 of 2**

**PROOF OF SERVICE OF SUMMONS**

Job Number ACA-2022002635

| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL., DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER: 30-2022-01253908-CU-MC-CJC |
|---|---|

7. **Person who served papers**
   a.   Name: D. LANEAUX
        Firm: AAA Attorney Services II, Inc.
   b.   Address: P.O. Box 2309, Orange, CA 92859
   c.   Telephone number: (714) 633-4167
   d.   **The fee** for the service was: $39.85
   e.   I am:
        (3)  a registered California process server:
             (i)   employee
             (ii)  Registration No.: P.S.#1032
             (iii) County: Orange County

8.   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   4/29/2022

_____
D. LANEAUX
(NAME OF PERSON WHO SERVED PAPERS)

▶ _____
(SIGNATURE)

**Page 2 of 2**

# EXHIBIT "Q"

**POS-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:** <br> Nicole C. Pearson  (265350) <br> LAW OFFICE OF NICOLE C. PEARSON <br> 3421 Via Oporto, Suite 201 <br> Newport Beach, CA 92663 <br><br> TELEPHONE NO.: (424) 272-5526 <br> EMAIL ADDRESS: Michelle@fltjllp.com <br> ATTORNEY FOR: | ***FOR COURT USE ONLY*** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
STREET ADDRESS: 700 Civic Center Drive
MAILING ADDRESS: 700 Civic Center Drive
CITY AND ZIP CODE: Santa Ana, 92701
BRANCH NAME: Central Justice Center

| | |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA <br> CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT <br> CORPORATION, ON ITS OWN AND ON BEHALF OF ITS <br> MEMBERS, ET AL., <br> DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL <br> DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE <br> COUNTY OF ORANGE | CASE NUMBER: <br> 30-2022-01253908-CU-MC-CJC |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   f. other (specifiy documents):
   SUMMONS, COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT "A – B", CIVIL
   CASE COVER SHEET, NOTICE OF HEARING CASE MANAGEMENT CONFERENCE, CLERK'S CERTIFICATE OF
   SERVICE BY MAIL

3. a. Party served:
   RICHARD MCALINDIN, IN HIS OFFICIAL CAPACITY AS ASSISTANT SUPERINTENDENT OF PLACENTIA-
   YORBA LINDA UNIFIED SCHOOL DISTRICT

4. Address where the party was served:
   1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive
   service of process for the party on 4/29/2022 at 12:41 pm

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. as an individual defendant.
   d. On behalf of: RICHARD MCALINDIN, IN HIS OFFICIAL CAPACITY AS ASSISTANT SUPERINTENDENT OF
   PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT
   under the following Code of Civil Procedure section:
   other: ASSISTANT SUPERINTENDENT

**Page 1 of 2**

**PROOF OF SERVICE OF SUMMONS** — Job Number ACA-2022002615

| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |
| --- | --- |

7.  **Person who served papers**
    a.  Name: D. LANEAUX
        Firm: AAA Attorney Services II, Inc.
    b.  Address: P.O. Box 2309, Orange, CA 92859
    c.  Telephone number: (714) 633-4167
    d.  **The fee** for the service was: $39.85
    e.  I am:
        (3)  a registered California process server:
             (i)    employee
             (ii)   Registration No.: P.S.#1032
             (iii)  County: Orange County

8.  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  4/29/2022

_____
D. LANEAUX
(NAME OF PERSON WHO SERVED PAPERS)

▶ _____
(SIGNATURE)

**Page 2 of 2**

# EXHIBIT "R"

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | FOR COURT USE ONLY |
|---|---|
| Nicole C. Pearson  (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br>TELEPHONE NO.: (424) 272-5526<br>EMAIL ADDRESS: Michelle@fltjllp.com<br>ATTORNEY FOR: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
  STREET ADDRESS: 700 Civic Center Drive
  MAILING ADDRESS: 700 Civic Center Drive
  CITY AND ZIP CODE: Santa Ana, 92701
  BRANCH NAME: Central Justice Center

| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA<br>CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT<br>CORPORATION, ON ITS OWN AND ON BEHALF OF ITS<br>MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL<br>DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE<br>COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   f.  other (specify documents):
   SUMMONS, COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT "A – B", CIVIL
   CASE COVER SHEET, NOTICE OF HEARING CASE MANAGEMENT CONFERENCE, CLERK'S CERTIFICATE OF
   SERVICE BY MAIL

3. a.  Party served:
      JACLYN CHAVEZ, AN INDIVIDUAL

   b.  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
       item 5b on whom substituted service was made):
       MARTHA SUAREZ / AGENT FOR SERVICE,  SECRETARY OF HUMAN RESOURCES

4. Address where the party was served:
   1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5. I served the party
   a.  **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive
       service of process for the party on 4/29/2022 at 12:41 pm

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a.  as an individual defendant.

Judicial Council of California
POS-010 [Rev. January 1, 2007]
Form adopted by rule 982.9

**PROOF OF SERVICE OF SUMMONS**    Job Number ACA-2022002622

| | |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |

7. **Person who served papers**
   a. Name: D. LANEAUX
      Firm: AAA Attorney Services II, Inc.
   b. Address: P.O. Box 2309, Orange, CA 92859
   c. Telephone number: (714) 633-4167
   d. **The fee** for the service was: $39.85
   e. I am:
      (3)  a registered California process server:
          (i)    employee
          (ii)   Registration No.: P.S.#1032
          (iii)  County: Orange County

8. **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  4/29/2022

_____
D. LANEAUX
(NAME OF PERSON WHO SERVED PAPERS)

▶ _____
(SIGNATURE)

Judicial Council of California
POS-010 [Rev. January 1, 2007]
Form adopted by rule 982,9
**PROOF OF SERVICE OF SUMMONS**          Job Number ACA-2022002622

# EXHIBIT "S"

Case 8:22-cv-01518-JWH-KES Document 26-8 Filed 09/15/22 Page 153 of 161 Page ID #:157
Electronically Filed by Superior Court of California, County of Orange, 05/02/2022 08:00:00 AM.
30-2022-01253908-CU-MC-CJC - ROA # 42 - DAVID H. YAMASAKI, Clerk of the Court By efilinguser, Deputy Clerk.

**POS-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:**<br>Nicole C. Pearson  (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br>  TELEPHONE NO.: (424) 272-5526<br>  EMAIL ADDRESS: Michelle@fltjllp.com<br>  ATTORNEY FOR: | **FOR COURT USE ONLY** |

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>  STREET ADDRESS: 700 Civic Center Drive<br>  MAILING ADDRESS: 700 Civic Center Drive<br>  CITY AND ZIP CODE: Santa Ana, 92701<br>  BRANCH NAME: Central Justice Center | |

| | |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA<br>      CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT<br>      CORPORATION, ON ITS OWN AND ON BEHALF OF ITS<br>      MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL<br>      DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE<br>      COUNTY OF ORANGE | **CASE NUMBER:**<br>30-2022-01253908-CU-MC-CJC |

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   f. other (specifiy documents):
   Summons; Complaint; Civil Case Sheet; EXHIBIT "A - B",  NOTICE OF HEARING CASE MANAGEMENT
   CONFERENCE, CLERK'S CERTIFICATE OF SERVICE BY MAIL

3. a. Party served:
      YORBA LINDA HIGH SCHOOL, A PUBLIC SCHOOL WITHIN THE PLACENTIA-YORBA LINDA UNIFIED SCHOOL
      DISTRICT

   b. Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
      item 5b on whom substituted service was made):
      MARTHA SUAREZ / ADMINISTRATIVE SECRETARY OF HUMAN RESOURCES

4. Address where the party was served:
   1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5. I served the party
   a. **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive
      service of process for the party on 4/29/2022 at 12:41 pm

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   d. On behalf of: YORBA LINDA HIGH SCHOOL, A PUBLIC SCHOOL WITHIN THE PLACENTIA-YORBA LINDA
      UNIFIED SCHOOL DISTRICT
      under the following Code of Civil Procedure section:
           416.50 (public entity)

**Page 1 of 2**

**PROOF OF SERVICE OF SUMMONS** Job Number ACA-2022002611

| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL., DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER: 30-2022-01253908-CU-MC-CJC |
|---|---|

7. **Person who served papers**
   a.   Name: D. LANEAUX
        Firm: AAA Attorney Services II, Inc.
   b.   Address: P.O. Box 2309, Orange, CA 92859
   c.   Telephone number: (714) 633-4167
   d.   **The fee** for the service was: $39.85
   e.   I am:
        (3)  a registered California process server:
             (i)    employee
             (ii)   Registration No.: P.S.#1032
             (iii)  County: Orange County

8.   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  4/29/2022

_____
      D. LANEAUX
(NAME OF PERSON WHO SERVED PAPERS)

▶ _____
                              (SIGNATURE)

**Page 2 of 2**

# EXHIBIT "T"

Case 8:25-cv-00457-SB-DFM Document 28-10 Filed 05/15/25 Page 150 of 161 Page ID #:160

Electronically Filed by Superior Court of California, County of Orange, 05/02/2022 08:00:00 AM.
30-2022-01253908-CU-MC-CJC - ROA # 44 - DAVID H. YAMASAKI, Clerk of the Court By eFilingUser, Deputy Clerk.

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | *FOR COURT USE ONLY* |
|---|---|
| Nicole C. Pearson (265350)<br>LAW OFFICE OF NICOLE C. PEARSON<br>3421 Via Oporto, Suite 201<br>Newport Beach, CA 92663<br><br>TELEPHONE NO.: (424) 272-5526<br>EMAIL ADDRESS: Michelle@fltjllp.com<br>ATTORNEY FOR: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
  STREET ADDRESS: 700 Civic Center Drive
  MAILING ADDRESS: 700 Civic Center Drive
  CITY AND ZIP CODE: Santa Ana, 92701
  BRANCH NAME: Central Justice Center

| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

1.    At the time of service I was at least 18 years of age and not a party to this action.

2.    I served copies of:
    f.  other (specifiy documents):
    SUMMONS, COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, EXHIBIT "A - B", CIVIL
    CASE COVER SHEET, NOTICE OF HEARING CASE MANAGEMENT CONFERENCE, CLERK'S CERTIFICATE OF
    SERVICE BY MAIL

3.    a.    Party served:
          BIRD POTTER, IN HER OFFICIAL CAPACITY AS ASSISTANT PRINCIPAL OF YORBA LINDA HIGH SCHOOL

    b.    Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made):
          MARTHA SUAREZ / ADMINISTRATIVE SECRETARY OF HUMAN RESOURCES

4.    Address where the party was served:
    1301 E. ORANGETHORPE AVE., PLACENTIA, CA 92870

5.    I served the party
    a.    **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive
        service of process for the party on 4/29/2022 at 12:41 pm

6.    The "Notice to the Person Served" (on the summons) was completed as follows:
    a.    as an individual defendant.
    d.    On behalf of: BIRD POTTER, IN HER OFFICIAL CAPACITY AS ASSISTANT PRINCIPAL OF YORBA LINDA
        HIGH SCHOOL
        under the following Code of Civil Procedure section:
          other: ASSISTANT PRINCIPAL

**Page 1 of 2**

| | |
|---|---|
| PLAINTIFF: CHILDREN'S HEALTH DEFENSE- CALIFORNIA CHAPTER, A CALIFORNIA 501(C)(3) NON-PROFIT CORPORATION, ON ITS OWN AND ON BEHALF OF ITS MEMBERS, ET AL.,<br>DEFENDANT: PLACENTIA-YORBA LINDA UNIFIED SCHOOL DISTRICT, A LOCAL EDUCATIONAL AGENCY IN THE COUNTY OF ORANGE | CASE NUMBER:<br>30-2022-01253908-CU-MC-CJC |

7.  **Person who served papers**
    a.  Name: D. LANEAUX
        Firm: AAA Attorney Services II, Inc.
    b.  Address: P.O. Box 2309, Orange, CA 92859
    c.  Telephone number: (714) 633-4167
    d.  **The fee** for the service was: $39.85
    e.  I am:
        (3)  a registered California process server:
            (i)   employee
            (ii)  Registration No.: P.S.#1032
            (iii) County: Orange County

8.  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  4/29/2022

_____
D. LANEAUX
(NAME OF PERSON WHO SERVED PAPERS)

▶ _____
(SIGNATURE)

**Page 2 of 2**

**PROOF OF SERVICE OF SUMMONS**

Job Number ACA-2022002618